1  Stanley D. Saltzman, Esq. (SBN 090058)
   William A. Baird, Esq. (SBN 192675)
2  Tina Mehr, Esq. (SBN 275659)
   MARLIN & SALTZMAN, LLP
3  29229 Canwood Street, Suite 208
   Agoura Hills, California 91301
4  Telephone:      (818) 991-8080
   Facsimile:      (818) 991-8081
5  ssaltzman@marlinsaltzman.com
   tbaird@marlinsaltzman.com
6  tmehr@marlinsaltzman.com

7  Carolyn Hunt Cottrell (SBN 166977)
   Nicole N. Coon (SBN 286283)
8  SCHNEIDER WALLACE
   COTTRELL KONECKY WOTKYNS LLP
9  2000 Powell Street, Suite 1400
   Emeryville, California 94608
10 Telephone:      (415) 421-7100
   Facsimile:      (415) 421-7105
11 ccottrell@schneiderwallace.com
   ncoon@schneiderwallace.com
12
   Walter Haines, Esq. (SBN 71075)
13 UNITED EMPLOYEES LAW GROUP, P.C.
   5500 Bolsa Ave., Suite 201
14 Huntington Beach, California 92649
   Telephone:      (888) 474-7242
15 Facsimile:      (562) 256-1006

16 Attorneys for Plaintiffs
   and the Settlement California Class and FLSA Class
17

18                **UNITED STATES DISTRICT COURT**

19               **NORTHERN DISTRICT OF CALIFORNIA**

20 EDGAR VICERAL and DAVID          )  **CASE NO. 3:15-cv-02198-EMC**
   KRUEGER, individually and on behalf of )  **(Assigned to Hon. Edward M. Chen)**
21 all others similarly situated,        )
                                         )  **CLASS ACTION**
22              Plaintiffs,              )
                                         )  **PLAINTIFFS' NOTICE OF MOTION AND**
23          v.                           )  **MOTION FOR PRELIMINARY APPROVAL**
                                         )  **OF CLASS AND COLLECTIVE ACTION**
24 MISTRAS GROUP, INC.; and DOES 1-50,   )  **SETTLEMENT**
   inclusive,                            )
25                                       )  DATE:        August 18, 2016
                Defendant.               )  TIME:        1:30 p.m.
26                                       )  CTRM:        5
                                         )
27                                       )
                                         )
28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     SUMMARY OF THE LITIGATION ........................................................................... 1

        A.      Defendant and The Hourly, Non-exempt Technicians, Inspectors and
                Examiners ............................................................................................................ 1

        B.      Procedural History and Classes ........................................................................... 2

        C.      Plaintiffs' Investigation ...................................................................................... 3

        D.      Settlement Negotiations ...................................................................................... 5

III.    THE TERMS OF THE SETTLEMENT ........................................................................ 7

IV.     THE SETTLEMENT SHOULD BE PRELIMININARILY APPROVED AS TO THE
        CALIFORNIA CLASS AND FINALLY APPROVED AS TO THE FLSA CLASS
        BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE ...................................... 14

        A.      The Settlement Resulted from Arm's-Length Negotiations .................................. 15

        B.      The Settlement Has No Obvious Deficiencies. ..................................................... 17

V.      NATURE AND METHOD OF CLASS NOTICE .......................................................... 18

VI.     CLAIMS ADMINISTRATION ..................................................................................... 19

VII.    ATTORNEYS' FEES AND COSTS .............................................................................. 19

VIII.   ENHANCEMENT AWARD FOR NAMED PLAINTIFFS ............................................. 19

IX.     THE PROPOSED SETTLEMENT CALIFORNIA CLASS SHOULD BE
        PRELIMINARILY CERTIFIED FOR THE FOR PURPOSES OF SETTLEMENT ........ 21

        A.      Fed.R.Civ.P. 23 (a) Requirements Are Met for the Settlement Class ..................... 21

                1.      Numerosity ............................................................................................... 21

                2.      Commonality ............................................................................................ 21

                3.      Typicality ................................................................................................. 22

                4.      The Adequacy Requirements Are Satisfied ................................................ 22

        B.      The Fed.R.Civ.P 23(b) Standards Are Satisfied .................................................. 23

                1.      Common Issues Predominate ..................................................................... 23

                2.      The Class Action Device Is Superior to Other Adjudication. ....................... 24

                3.      No Manageability Issues Preclude Certification ......................................... 24

        C.      The Court Should Finally Approve the Settlement as to the FLSA Class. ............. 24

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

X.      PLAINTIFFS' CO-LEAD COUNSEL SHOULD BE APPOINTED AS "SETTLEMENT CLASS COUNSEL".....................................................................25

XI.     CONCLUSION ..................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*Armstrong v. Davis*
    275 F.3d 849 (9th Cir. 2001) ...............................................................21

*Boyd v. Bechtel Corp.*
    485 F.Supp. 610 (N.D. Cal. 1979) ....................................................5, 16

*Brewer v. Gen. Nutrition Corp.*
    No. 11-CV-3587 YGR, 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014)..................15

*Brinker Restaurant Corp. v. Superior Court*
    53 Cal.4th 1004 (2012) .....................................................................23

*Churchill Village, LLC v. General Electric*
    361 F.3d 566 (9th Cir. 2004) ...............................................................18

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) .............................................................15

*Comcast Corp. v. Behrend*
    133 S. Ct. 1426 (2013) ......................................................................23

*Cook v. Niedert*
    142 F.3d 1004 (7th Cir. 1998) .............................................................20

*Entin v. Barg*
    412 F.Supp. 508 (E.D. Pa. 1976) ..........................................................9

*Gatreaux v. Pierce*
    690 F.2d 616 (7th Cir. 1982) ...............................................................15

*Grant v. Capital Mgmt. Servs., L.P.*
    2013 WL 6499698 (S.D. Cal. 2013) .......................................................25

*Guifi Li v. A Perfect Day Franchise Inc.*
    2012 WL 2236752 (N.D. Cal. 2012) .......................................................11

*H&R Block Stores, Inc. v. Visa U.S.A., Inc.*
    396 F.3d 96 (2d Cir. 2005)..................................................................16

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ........................................14, 15, 21, 24

*Holmes v. Continental Can Co.*
    706 F.2d 1144 (11th Cir.1983) .............................................................9

*Ikonen v. Hartz Mountain Corp.*
    122 F.R.D. 258 (S.D. Cal. 1988) ...........................................................21

*In Re Armored Car Antitrust Litig.*
    472 F.Supp. 1357 (N.D. Ga.1979) .........................................................9

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement
CASE NO. 3:15-cv-02198-EMC

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*
    789 F.Supp.2d 935, 2011 WL 2204584 (N.D.Ill. 2011) ............................................9

*In Re Four Seasons Secs. Laws Litig.*
    58 F.R.D. 19 (W.D. Okla.1972) ...................................................................................9

*In re Heritage Bond Litigation*
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................................................14

*In re Linerboard Antitrust Litig.*
    2004 WL 1221350 (E.D. PA. June 2, 2004) ............................................................20

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ......................................................................................8

*In Re Sunrise Secs. Litig.*
    131 F.R.D. 450 (E.D. Pa. 1990) ..................................................................................9

*In re Surebeam Corp. Secs. Litig.*
    2004 WL 5159061 (S.D. Cal. 2004) .........................................................................23

*In re Warfarin Sodium Antitrust Litig.*
    212 F.R.D. 231 (D. Del. 2002) ....................................................................................8

*Joel A. v. Giuliani*
    218 F.3d 132 (2d Cir. 2000) ......................................................................................14

*Kirkorian v. Borelli*
    695 F. Supp. 446 (N.D. Cal. 1988) ...........................................................................16

*Kress v. PricewaterhouseCoopers, LLP*
    263 F.R.D. 623 (E.D. Cal. Nov. 25, 2009) ...............................................................24

*Lazarin v. Pro Unlimited, Inc.*
    2013 WL 3541217 (N.D. Cal. 2013) .........................................................................24

*Lewis v. Starbucks Corp.*
    2008 WL 4196690 (E.D. Cal. Sept. 11, 2008).............................................................5

*Leyva v. Medline Indus.*
    716 F.3d 510 (9th Cir. 2013) .....................................................................................23

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) ...................................................................................17

*McElmurry v. U.S. Bank Nat'l Ass'n*
    495 F.3d 1136 (9th Cir. 2007) ...................................................................................24

*Mullane v. Cent. Hanover Bank & Trust Co.*
    339 U.S. 306 (1950)....................................................................................................18

*Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................15

v

Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement
CASE NO. 3:15-cv-02198-EMC

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*
    688 F.2d 615 (9th Cir. 1982) ........................................................8, 15, 17

*Rodriguez v. West Publ. Corp.*
    563 F.3d 948 (9th Cir. 2009) ............................................................20, 22

*Rodriguez v. West Publ'g Corp.*
    2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ........................8, 15, 16, 20

*Romero v. Producers Dairy Foods, Inc.*
    235 F.R.D. 474 (E.D. Cal. 2006) ................................................................21

*Silber v. Mabon*
    18 F.3d 1449 (9th Cir. 1994) ......................................................................18

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ......................................................................19

*Thiessen v. GE Capital Corp.*
    267 F.3d 1095 (10th Cir. Kan. 2001)..........................................................24

*Thurman v. Bayshore Transit Mgmt., Inc.*
    203 Cal.App.4th 1112 (2012) ....................................................................11

*Tierno v. Rite Aid Corp.*
    2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ..........................................22

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*
    593 F.3d 802 (9th Cir. Cal. 2010) ..............................................................21

*Van Vranken v. Atl. Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................................20

*Williams v. Vukovich*
    720 F.2d 909 (6th Cir.1983) ......................................................................16

**Statutes**

California Business and Professions Code § 17200 ................................................3, 9, 11

California Labor Code § 203 ........................................................................................11

California Labor Code § 226 ........................................................................................11

California Labor Code § 1194 ......................................................................................11

California Labor Code § 2699 ......................................................................................11

California Private Attorney General Act § 2698 ..............................................................3

vi

Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement
CASE NO. 3:15-cv-02198-EMC

**<u>Other Authorities</u>**

*Manual of Complex Litigation*, Fourth (2004)............................................................14, 16

*Newberg on Class Actions* (4th Ed. & Supp. 2002)............................................................16

**<u>Rules</u>**

Federal Rules of Civil Procedure, Rule 23 ................................................................. *passim*

<u>**TO: ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**</u>

PLEASE TAKE NOTICE that on August 18, 2016, at 1:30 p.m., the matter can be heard in Courtroom No. 5 in the above entitled courthouse located at Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs Edgar Viceral and David Krueger  "Plaintiffs" will move this Court for an order:

<u>***As to the California Class:***</u>

(1) Preliminarily and Conditionally Certifying a Settlement California Class;

(2) Preliminarily Approving the Class and Collective Action Settlement embodied in the Settlement Agreement as to the California Class;

(3) Approving and Directing Distribution of the Notice of Class and Collective Action Settlement to the California Class; and,

(4) Setting a Final Approval Hearing.

<u>***As to the FLSA Class:***</u>

(1) Certifying a Settlement FLSA Class;

(2) Finally Approving the Class and Collective Action Settlement embodied in the Settlement Agreement as to the FLSA Class;

(3) Finally Approving and Directing Distribution of the Notice of Class and Collective Action Settlement to the FLSA Class;

(4) Finally Approving the Proposed Schedule for Completing the Settlement Process as to the FLSA Class;

(5) Finally Approving and Appointing Schneider Wallace Cottrell Konecky Wotkyns LLP and Marlin & Saltzman, LLP as Counsel for the FLSA Class for Purposes of the Settlement; and

(6) Finally Appointing and Approving the Named Plaintiffs as Class Representatives for the FLSA Class for Purposes of the Settlement.

Defendant Mistras Group, Inc. ("Defendant") does not oppose this Motion.

Said Motion shall be based upon this Notice of Motion, the accompanying Memorandum of Points & Authorities filed herewith, the declarations of Stanley Saltzman and Carolyn Hunt Cottrell, the

1   Settlement Agreement and Stipulation entered into by the Parties, and upon such further evidence, both

2   documentary and oral, as may be presented at the hearing of said motion.

3
4   DATED:  July 19, 2016                          SCHNEIDER WALLACE
                                                    COTTRELL KONECKY WOTKYNS LLP

5                                                   By:  _/s/_ *Carolyn Hunt Cottrell*

6                                                   MARLIN & SALTZMAN, LLP

7                                                   UNITED EMPLOYEES LAW GROUP, P.C.

8                                                   Attorneys   for   Plaintiffs   and   the
                                                    Settlement California Class and FLSA
9                                                   Class

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.    **INTRODUCTION**

Plaintiffs Edgar Viceral and David Krueger ("Plaintiffs") and Defendant Mistras Group, Inc. ("Defendant") (collectively, the "Parties") present this proposed settlement after an extensive mediation and additional negotiations.  It is submitted herein that the Settlement is fair, reasonable, and the product of serious, informed, non-collusive negotiations.  Under this Settlement, the asserted wage and hour claims of both a California  Class and a National Fair Labor Standards Act ("FLSA") Collective Action of approximately 4,800 Examiners, Technicians, and Inspectors who presently or formerly worked for Defendant during the applicable class periods, will be settled for Six Million Dollars ($6,000,000).  The Settlement is non-reversionary and thus, the entire Settlement amount will be paid out.  Prior to reaching the Settlement, the Parties: exchanged multiple sets of written requests for discovery; deposed Plaintiff David Krueger; travelled to New Jersey to take multiple 30(b)(6) depositions; produced numerous documents including, Plaintiffs' personnel files, wage statements, time records, and employment policies; reviewed and analyzed, with the assistance of experts, numerous class members' payroll and time records, including punch-in and punch-out times; engaged in informal investigation and conducted telephonic interviews/surveys of numerous class members; researched applicable law and briefed issues; and extensively analyzed damages. Consequently, Plaintiffs now move this Court for an Order (1) preliminarily approving the Settlement as to the California Class and finally approving the Settlement as to the FLSA Class (the Joint Stipulation of Settlement and Release is attached as **Exhibit "1"** to the Declaration of Stanley D. Saltzman, "Saltzman Decl."); (2) preliminarily and conditionally certifying a Settlement Class and Collective Action; (3) Approving and Directing distribution of the Notice of Class and Collective Action Settlement (attached as **Exhibits "1" & "2"** to Settlement Agreement Saltzman Decl.); and (4) Setting a Final Approval Hearing.

II.   **SUMMARY OF THE LITIGATION**

A.    **Defendant and The Hourly, Non-exempt Technicians, Inspectors and Examiners**

Defendant Mistras is a global provider of technology-enabled asset protection solutions used to evaluate the structural integrity of critical energy, industrial, and public infrastructure.  Mistras provides standard and innovative non-destructive testing, inspection, and engineering services for its customers.  As pertinent to this case, Mistras operates approximately sixty offices nationwide, also referred to as

1   labs, each of which may provide discrete services to multiple customers at multiple work locations. The

2   customer services provided by each lab are generally performed by non-destructive examiners, generally

3   categorized as examiners, inspectors, technicians and/or technicians' assistants (collectively "NDTs").

4   Most work performed by NDTs occurs on customers' jobsites. Some (although Defendant contends

5   many) NDTs who are assigned to a customer site generally commute directly between their homes and

6   the customer site on which they are working. (Saltzman Decl. ¶ 2).

7        Plaintiff Viceral was employed by Mistras as a Level II NDT Technician from about October

8   2009 to November 2014. Viceral worked at the Dow Chemical Plant in Pittsburgh, California, and was

9   later transferred to the Valero Refinery in Martinez, California. Viceral also worked at several other

10  Mistras jobsites as needs arose. Viceral was paid at the rate of $27.00 per hour. Plaintiff Krueger was

11  employed by Mistras as a Technician in North Dakota and California from about August 2013 to

12  October 2014. Mistras paid Plaintiff $23.00 per hour. In North Dakota, Krueger worked out of

13  Mistras's office in Minot for its customer Hess Oil. (*Id.* at ¶ 3).

14       **B.    Procedural History and Classes**

15       On April 13, 2015, Plaintiff Edgar Viceral filed a class and collective action complaint against

16  Defendant Mistras Group, Inc.in the San Francisco County Superior Court, entitled *Edgar Viceral, et al.*

17  *v. Mistras Group, Inc., et al.*, No. CGC-15-545291. (Cal. Super. Ct., San Francisco filed April 13, 2015)

18  ("*Viceral*"). Defendant removed the *Viceral* action to the United States District Court for the Northern

19  District of California, on May 15, 2015. Thereafter Defendant filed a Notice of Other Action or

20  Proceeding on May 27, 2015, alerting the Court and parties of a related class action: *David Krueger v.*

21  *Mistras Group, Inc.,* No. 2:15-cv-01069 (E.D. Cal. 2015) proceeding in the United States District Court

22  for the Eastern District of California ("*Krueger*"), which action had been filed on April 10, 2015, in the

23  Kern County Superior Court, only three days prior to the *Viceral* action. Subsequently, Plaintiffs

24  Viceral and Krueger and Defendant (hereafter "the Parties") met and conferred and agreed to coordinate

25  the two actions. On November 20, 2015, Plaintiffs filed the Consolidated First Amended Complaint

26  ("FAC") in this case that included the *Krueger* claims, parties, and counsel. (Saltzman Decl. ¶ 4).

27       The FAC alleges nine causes of action, including claims under the federal Fair Labor Standards

28  Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the California Labor Code, applicable Industrial Welfare

Commission ("IWC") Wage Orders, and California Business and Professions Code §§ 17200, *et seq.* ("UCL").  Plaintiffs assert the first cause of action on behalf of themselves and the FLSA Class for failure to compensate all hours worked, including training and overtime hours.  Plaintiffs assert the remaining eight causes of action under California law, namely: (2) failure to compensate for all hours worked, including but not limited to attending pre-work meetings, completing required training programs, traveling to and from Mistras's offices to worksites, and engaging in other off-the-clock work; (3) failure to pay overtime wages; (4) failure to authorize, permit, and/or make available meal periods; (5) failure to authorize, permit, and/or make available rest periods; (6) failure to provide accurate itemized wage statements; (7) failure to timely pay all earned wages at the end of employment; (8) violation of the UCL for unlawful, unfair, and/or fraudulent business acts/practices; and (9) penalties pursuant to § 2698, *et seq.* of the California Private Attorney General Act ("PAGA"). (*Id.* at ¶ 5).

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), Plaintiffs seek to represent the following California Class: "All persons employed by any of the Defendants as hourly, non-exempt Technicians, Inspectors and Examiners within the State of California during any part of the time period beginning April 10, 2011 up to the date of Final Approval ("California Class")."  In addition, Plaintiffs seek to represent a national Collective group of Defendant's employees under the FLSA, defined as follows: "All persons who were employed as hourly, non-exempt Technicians, Inspectors and Examiners in the United States, or anywhere else the FLSA governs, by any of the Defendant during any part of the time period beginning April 10, 2012 through the date of Final Approval ("FLSA Class")."[1] (*Id.* at ¶ 6).

## C.    Plaintiffs' Investigation

Prior to filing the suits, Class Counsel in both actions independently investigated and researched the facts and circumstances underlying the issues raised in the cases, and the law applicable thereto. Following the filing of the lawsuits, Plaintiffs prepared and served extensive written discovery.  The Parties conducted numerous meet and confer sessions regarding the discovery.  These efforts resulted in the production of additional documents and supplemental interrogatory responses.  Class Counsel spent

---

[1] The Parties executed a Limited Tolling Agreement on December 31, 2015.

1    many hours preparing discovery, reviewing and categorizing the produced documents, and reviewing the

2    written discovery produced by Defendant.  In addition, Plaintiffs  responded to written discovery;

3    deposed Defendant pursuant to F.R.C.P. 30(b)(6), including taking the depositions of Julie Marini

4    (Mistras Group Vice President of Human Resources)[2] and Dennis Bertolotti (Mistras President of Group

5    Services/Interim CEO)[3]. Plaintiff Krueger was also deposed on March 10, 2016.[4]  Plaintiff Viceral was

6    noticed for deposition, had conducted the initial pre-deposition preparation, and then the case proceeded

7    to mediation before he was actually deposed.  (Saltzman Decl. ¶ 7).

8           In response to Plaintiffs' discovery requests, Defendant produced the California Class and FLSA

9    Class lists on January 15, 2016, and February 19, 2016, respectively. There are 1,253 California Class

10   Members. There are approximately 3,615 additional FLSA employees for a total of 4,723 FLSA Clas

11   Members. To date, 13 employees have opted in to the case and filed their respective forms with the

12   Court.[5] (*Id.* at ¶ 8).

13          In addition, Defendant has produced: (1) the two Named Plaintiffs' timekeeping documents,

14   wage statements, training logs, and personnel files; (2) a list of the Mistras offices throughout the U.S.;

15   AWS documents; and (3) numerous handbooks and policies, including: its U.S. Employee Handbook,

16   job descriptions, document retention polices, California meal and rest break policies, payroll policies,

17   dispute resolution policy, meal period waiver, and examples of training materials; and numerous

18   complaints filed against Mistras. Defendant also produced a sampling of information and documents for

19   California Class and FLSA Class Members. Defendant produced: a sample of training logs, the number

20   of hours worked by day, the number of days worked by year, and payroll data for California Class and

21   FLSA Class Members;[6] and examples of weekly time summaries, handwritten timecards, pre-EPIP

22

23   _____

24   [2] This deposition took place on March 23, 2016.
     [3] This deposition took place on March 22, 2016.

25   [4] The deposition of Plaintiff Viceral was scheduled for March 3, 2016; however, Defendant cancelled it.
     [5] In light of the tolling agreement that is in place, the filing of opt-in forms in this case is not time sensitive.
     [6] Data Reviewed

26   Mistras 001933 - FLSA EE Training                      Date Range: 4/11/2012 -  3/15/2016
     Mistras 001934 - FLSA EE hours by day                  Date Range: 4/2/2012 - 3/13/2016

27   Mistras 001935 - FLSA EE days worked by year           Date Range: 2011 - 2016
     Mistras 001936 - CA EE Training                        Date Range: 4/11/2011 - 3/15/2016

28                  (footnote continued)

1   reports by employees, weekly payroll reports, timecard reports, punch cards, Mistras daily work reports,

2   Mistras non-billable timesheets, earning statements, weekly customer timecards, weekly timesheets,

3   vacation/PTO notification, Mistras weekly T&M reports, and training logs. (*Id.* at ¶ 9).

4       As a part of Plaintiffs' investigation, both before and after filing suit, Class Counsel conducted

5   numerous in-depth interviews with class members to validate the merits of the case as indicated in the

6   initial interviews of the Representative Plaintiffs.   These interviews covered topics such as the

7   uniformity of the job duties, daily work descriptions, pay policies and practices, overtime policies and

8   practices, off the clock policies and practices, meal and rest break policies and practices, as well as other

9   relevant areas of inquiry. Class Counsel's investigation also included many hours researching applicable

10   issues and reviewing numerous time records.  (*Id.* at ¶ 10).

11       Overall, the breadth of discovery, both formal and informal, permitted a thorough and detailed

12   analysis of the viability of certification, as well as evaluations of the merits of the claims and

13   Defendant's defenses, as well as Defendant's potential exposure for the damages at issue in this

14   litigation. (*Id.* at ¶ 11).[7]

15       **D.    Settlement Negotiations**

16       After analysis of the responsive discovery as well as other gathered data, and believing that this

17   case was appropriate for consensual resolution given the high level of risk present for both sides, the

18   Parties agreed to attend mediation.   Thereafter, the Parties engaged in further in-depth informal

19   discussions in anticipation of the mediation.   To facilitate mediation, as set forth above, Defendant

20   agreed to produce and did produce specific Class Member payroll and financial information, as well as,

21   time records.   In particular, Defendant provided Plaintiffs with state-by-state information for the

22

23   Mistras 001937 - CA EE hours by day                    Date Range:  4/1/2011 - 3/13/2016
     Mistras 001938 - CA EE days worked by year             Date Range:  2011 - 2016
24   MISTRAS008540 Combined Payroll Data 2011-2015   Date Range: 1/7/2011 - 12/31/2015
     MISTRAS008541 Payroll Data_Mistras_ 2012-2015_FLSA   Date Range: 1/6/2011 - 12/31/2015
25   California Class List
     FLSA Collective Class List
26   [7]    The amount of discovery completed prior to reaching a settlement is important to determining its
     reasonableness because it bears on whether the Parties and the Court have sufficient information before them
27   to assess the merits of the claims.  See *Lewis v. Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept.
     11, 2008); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979).

28

1   statutory period(s) regarding the total number of California Class and FLSA Class Members, their work

2   locations, the number of weeks worked cumulatively by the California Class and FLSA Class Members,

3   and their average hourly rate.  Defendant further provided payroll and timekeeping data for Plaintiffs

4   and all other Class Members.  As a result of this professionally handled cooperation, Class Counsel was

5   able to reach a comfort level that they were able to properly and thoroughly evaluate both liability and

6   damage issues prior to the mediation.  This mediation related information, coupled with the prior

7   discovery and employee interviews, provided Plaintiffs with more than sufficient data to accurately

8   estimate both liability and damages for the class.  For its part, Defendant had engaged in extensive class

9   member interviews, and prior to mediation had gathered well over 500 declarations from its employees

10   in support of its intended vigorous defense of the claims asserted, and the class allegations.  (*Id.* at ¶ 12).

11        On April 5, 2016 the Parties attended a formal mediation in San Francisco with Mark S. Rudy,

12   Esq.  ("Mr. Rudy" or "Mediator") – a well-respected mediator who specializes in wage and hour class

13   actions.  After over 10 hours of extensive negotiations, the mediation concluded without a settlement,

14   but with clear progress having been made.  Thereafter, through Mr. Rudy's ongoing efforts, the Parties

15   continued to discuss possible resolution of the Action.  After over a month of such discussions, the

16   Parties eventually agreed to broad settlement terms**.**  The Parties then began to work through the drafting

17   of a Settlement Agreement, which was finally executed by the Parties shortly

18   before this motion was filed.   (*Id.* at ¶ 13).

19        The final Settlement is the product of extensive negotiations between the Parties conducted at

20   arms-length and is free from collusion.  The Parties on both sides are represented by experienced class

21   action attorneys with specialized knowledge of both class action and employment law.  In order to reach

22   the final Settlement, the Parties debated, discussed, and resolved many difficult legal and factual issues.

23   Moreover, during the process the Parties were both required to make reasonable compromises in light of

24   the facts, issues, and risks presented in this Action.  In particular, in reaching the Settlement, Class

25   Counsel considered the uncertainty and risks of further litigation, and the difficulties inherent in such

26   litigation. Class Counsel also considered the burdens of proof necessary to achieve certification of the

27   case, and then to establish liability against Defendant and to defeat its defenses.  All of these factors

28   indicated that the best interests of the Class Members would be served by a settlement of this Action in

6

Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement
CASE NO. 3:15-cv-02198-EMC

1  the manner and upon the terms set forth in the Settlement Agreement.  (*Id.* at ¶ 14).

2  ## III.   THE TERMS OF THE SETTLEMENT

3        The terms of the Settlement are set forth in the Settlement Agreement, which is attached to the

4  Saltzman Declaration at ¶ 15 and is incorporated herein by reference and includes the following

5  principal terms[8]:

6        **California Class**:  The California Class is comprised of all current and former hourly, non-

7  exempt Technicians, Inspectors, and Examiners employed by Defendant in California at any time

8  between April 10, 2011 up through the date of Final Approval.  (*Id.* at ¶ 16).

9        **FLSA Class**:  The FLSA Class is comprised of all current and former hourly, non-exempt

10  Technicians, Inspectors and Examiners who were employed by Defendant in the United States at any

11  time between April 10, 2012 through the date of Final Approval. (*Id.*).

12        **Maximum Settlement Amount**:  The Maximum Settlement Amount ("MSA") that Defendant

13  will pay is Six Million Dollars ($6,000,000).  This sum includes payments made to Class Members,

14  Enhancement Payments to Plaintiffs, Administration Costs, a Fee and Expense Award, and a PAGA

15  payment.  (*Id.* at ¶ 17).

16        **Non-Reversionary**:  No portion of the Maximum Settlement Amount will revert to Defendant

17  under any circumstances.  (*Id.* at ¶ 18).

18        **Service  Payment to Plaintiffs**:  An Enhancement Payment of Seven Thousand Five Hundred

19  Dollars ($7,500.00) will be requested for Plaintiff Edgar Viceral, and a payment of One Thousand

20  Dollars ($1,000.00) will be requested for Plaintiff David Krueger,  subject to the approval of the Court,

21  for their  roles in initiating this Action and acting as the Class Representatives, for services provided in

22  furtherance of this Action, for the risks undertaken for payment of costs in the event this Action was

23  unsuccessful, for any stigma they may suffer going forward due to the public information available (i.e.,

24

25  _____

26  [8] In addition to these terms, paragraph 63 of the Settlement also provides: "Prior to Plaintiffs' Counsel filing a
Motion for Preliminary Approval of the Settlement as to the California Class and Final Approval as to the
FLSA Class, Defendant will submit to Plaintiffs' Counsel a declaration signed by a corporate representative

27  attesting that Mistras will use reasonable efforts to maintain legally compliant employment practices to ensure
compliance with wage and hour laws." Defendant provided Plaintiffs with the declaration on July 18, 2016.

28

1   via the internet) of their  having filed a class action against an employer, and for their agreement to

2   provide a release of claims.  Counsel is requesting a larger amount for Mr. Viceral as the settlement

3   provides for a full release of claims, while Mr. Krueger is requesting a lesser amount and retaining his

4   right to continue his previously filed separate lawsuit for other claims not included in the class action.

5   (*Id.* at ¶ 19).

6         **PAGA Payment**:  The Settlement allocates Twenty Thousand Dollars ($20,000.00) to settle  the

7   portion of the case brought under the California Labor Code's Private Attorney General Act of 2004

8   ("PAGA").   Seventy-Five percent (75%) of the total PAGA Payment (Fifteen Thousand Dollars

9   ($15,000.00) will be paid to the California Labor & Workforce Development Agency.  The remainder of

10  the PAGA payment, twenty-five percent (25%) or Five Thousand Dollars ($5,000.00), shall be included

11  in the California Class Fund.  (*Id.* at ¶ 20).

12        **Fee and Expense Award**:  The Class Counsel shall seek an award not to exceed 33 1/3%  of the

13  MSA as the Fee Award, plus reimbursement of reasonable and actual expenses, currently estimated to be

14  $42,000.00, as the Expense Award.  (*Id.* at ¶ 21).

15        **Administration Costs**:  means the actual and direct costs reasonably charged by the Settlement,

16  which are not to exceed $50,000.00[9].  (*Id.* at ¶ 22).

17        **Payroll Taxes**: The Maximum Settlement Amount does not include the employer's side of the

18  Payroll Taxes, which shall be paid by Defendant separate and apart from the Maximum Settlement

19  Amount.  The Payroll Taxes will be computed by the Settlement Administrator based on the amounts

20  paid to the Claimants.  The Settlement Administrator shall be responsible for making all necessary

21  payments and government filings in connection with such payments.  (*Id.* at ¶ 23).

22        **Net Settlement Amount ("NSA") and Allocation Of Amount[10]**:  The funds remaining from

23  _____

24  [9]    Simpluris currently estimates administration costs to be about $41,000.00 plus $2,500.00 for Class Action Fairness
       Act ("CAFA") notice. (Cottrell Decl. ¶ 15, fn. 2).
25  [10]   In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the
       estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.*,213
26  F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum
       potential recovery. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 623
27  (9th Cir. 1982). *See also Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007)
       (approving 30% of damages); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002)
28                    (footnote continued)

1    the Maximum Settlement Amount following deductions of the Court-approved awards for the following

2    items:  (1) the Administration Costs (not to exceed $50,000.00), (2) the Fee and Expense Award

3    ($2,000,000.00 and $42,000.00, respectively), (3) the Enhancement Payments to Plaintiffs ($8,500.00),

4    and (4) the PAGA Payment ($15,000.00).  (*Id.* at ¶ 24).

5        The NSA is estimated to be $3,888,559.65[11].  65% of the NSA will be allocated to the California

6    Class Fund and 35% will be allocated to the FLSA Class Fund.[12] Settlement awards will be distributed

7    to Settlement Class Members on a proportional basis based on the amount of weeks each Class Member

8    worked.  Pursuant to this formula a <u>California Class Member</u> will receive approximately <u>$1,248.00</u> for

9    each year worked (estimated $24.00 per week multiplied by 52 work weeks per year) for each year

10   worked.  Thus, a California Class Member that was employed the entire class period of 5.5 years stands

11   to recover <u>$6,864.00</u>.  An  <u>FLSA Class Member</u> will receive approximately <u>$263.00</u> for each year

12   worked (estimated $5.06 per week multiplied by 52 work weeks per year) and if employed for the entire

13   class period of 4.5 years stands to receive <u>$1,183.00</u>.  (*Id.* at ¶ 25).[13]

14   _____

15   (approving 33% of damages); *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving
     20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements
16   with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514
     (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D.
17   Okla.1972) (approving 8% of damages).
     [11]    This approximate amount is based on Simpluris's total current estimate.
18   [12]    A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.*,
     706 F.2d 1144, 1148 (11th Cir.1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation*, 789
19   F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D.Ill.2011). Unequal allocations can be based on
     legitimate considerations. *Holmes*, 706 F.2d at 1148; *In re AT & T*, 789 F.Supp.2d at 979–80, 2011 WL
20   2204584 at *42.
     [13]    The Parties agreed to allocate the funds between the California Class and FLSA Class in the manner stated
21   above, 65/35%, recognizing that the FLSA action alleged only one cause of action for off –the-clock overtime.
     By contrast,  even though the California Class was smaller than the FLSA Class, it not only alleged a failure to
22   pay off-the-clock overtime, but also alleged causes of action under the California Labor Code for failure to pay
     minimum wages, failure to provide and pay for missed meal breaks, failure to provide and pay for missed rest
23   breaks, failure to provide proper wage statements, waiting time penalties for failing to pay all wages due at the
     termination of employment, violation of California Business and Professions Code § 17200, *et seq.*, and asserted
24   claims under PAGA.  Moreover, data analysis, as well as interviews with Class Members, indicated that the
     amount of damage hours per week to be claimed were higher for the California Class Members as compared to
25   those who worked outside of California.  The Parties further factored in the difficulty in proving the FLSA claims
     both from a merits and certification standpoint and the unique defenses asserted to that cause action by Defendant.
26   With these factors in mind, and based on Class Counsels' belief that the California Class Members' damages were
     potentially twice the value of the FLSA Class Members, the two-to-one allocation was arrived at as a reasonable
27   reflection of the value of the claims.

28

The compensation that Class Members will receive under the settlement is reasonable in comparison to what he or she may have recovered at trial, assuming that the proposed class was able to obtain certification of these claims, and recognizing that at the time of the mediation the Defendant had already been able to obtain over 500 putative class member declarations.[14]  The average hourly rate for FLSA Class Members during the FLSA Class Period was $25 per hour.  Of course, the FLSA only provides for overtime when an employee works more than 40 hours in a week, as opposed to California's more employee favorable "8 hour per-day rule".  Accounting for these factors, and Defendant's  certification and merits defenses (as reflected in more than 500 declarations Defendant amassed from class members to defend against this case), and Plaintiffs' interviews with class members which determined that class members worked roughly 0.8 hours per day off the clock, recovery at trial could be anywhere from 0-4 hour per week, assuming that any recovery was made.  Thus, total recovery at trial for an FLSA Class member could range anywhere from approximately $0 to $4,600 for each year he or she worked for defendant (based on 46 work weeks per year in order to account for vacation and other time off and not taking into account reductions for fees and costs of at least 35% -in contrast to the estimated payouts from the Net Settlement Fund).  Plaintiffs' counsel viewed this nationwide off-the-clock claim as the least likely to obtain certification, or to survive a decertification motion, and the most difficult to prove even if certification was obtained and withheld challenge.  Thus, the claim was highly discounted for settlement purposes.  Given the aforementioned adverse risks to the class in continuing to proceed with this claim, and the disparate claims of off-the-clock work from zone to zone and client to client, a recovery of $263 a year under this Settlement is reasonable. (*Id.* at ¶ 26).

Applying a similar type of analysis to the California Class with respect to the overtime/off the clock claim, a California class member's recovery could also range from  $0 to $4,600.  Thus, given the same adverse risks identified above, the stated recovery of $1,248 a year under this settlement agreement is a significant result (Again this number does not take into account reductions for fees and costs of at least 35% -in contrast to the estimated payouts from the Net Settlement Fund).   The California Class

---

[14]   Given the Defendant's ability to reach out to and obtain declarations even before the proposed Class Counsel are able to obtain a "class list", the playing field is often quite uneven and this case is an example of that having occurred.

Members also allege claims for failure to provide meal breaks and rest periods.  Based on time records provided by Defendant, Plaintiff intended to assert that there were at least two meal and/or rest periods missed per week per California Class Member.  Based on this assumption, a California Settlement Class Member could be entitled to anywhere from 0 to $2,300 year ($25 x 2 x 46 work weeks per year).  In considering Plaintiffs' estimated value of this claim, Class Counsel took into account the employer's duty to merely provide meal and rest periods as opposed to requiring them (e.g., an employee can choose to not take them), as well as, the difficulty proving this type of claim. (*Id.* at ¶¶ 28-29).

In sum, a California Class Member who is a current employee and who has worked at least a year stood to potentially recover $6,900 at trial a year for his or her overtime/off the clock claim and meal/rest period violations[15] (not taking into account reductions for fees and costs of at least 35%). Here, the proffered Settlement represents a 20% recovery of exposure for the better claims, again assuming that certification could be obtained and retained through trial – a reasonable result given the risks in this action related to both certification and liability.[16],[17]. (*Id.* at ¶ 30).

---

[15]   This figure assumes no recovery for the waiting time penalty claim, which requires a finding of willfulness, and only applies to former employees.

[16]   The California Class also asserts a cause of action for violations of § 17200 of the Business and Professions Code as well as for alleged violations of Labor Code § 226 for failing to provide appropriate wage statements each pay period.  As the 17200 violations are premised on Defendant's violations of the Labor code sections above, Plaintiff's damage estimates equally apply to this cause of action.  As to Labor Code § 226, it provides $50.00 for an initial violation and $100.00 for each subsequent violation up to a maximum of $4,000 dollars.  Here, Class Members are/were paid every two weeks and thus, have/had 26 pay periods a year.  Accordingly, a Class Member would be entitled to $2,550 if the Class Member worked at least one year during the California Class Period and every wage statement was incorrect up to $4,000 if he or she worked at least a year and half.  Class Counsel took into account that the claim was premised primarily on demonstrating that Class Members worked off the clock and whether that could be proven based on objective data.

[17]   At trial, Plaintiffs would also seek liquidated damages on unpaid wages as well as PAGA penalties both of which are subject to the Court's broad discretion.  For example, the Court could deny liquidated damages when the Defendant shows that it acted in good faith and had reasonable grounds to believe that its acts/omissions were not unlawful.  (If an employer's conduct constitutes a "knowing violation" of the statute, the FLSA's standard two-year statute of limitations may be extended to three years. 29 U.S.C. § 255(a).) PAGA awards approved in other cases can help frame the range of reasonable PAGA settlement awards. Here, the PAGA award of $20,000 falls well within the range of reasonableness. Notably, assuming all of Plaintiff's claims qualify for PAGA penalties, such an award is not automatic.  *See* Cal. Lab. Code § 2699(e)(2); *see* also *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135-36 (2012).  Moreover, Labor Code §§ 1194.2, 203, and 226 already incorporate their own penalty provisions. Thus, an award of additional PAGA penalties – or an award of the maximum penalty amount provided by PAGA – is uncertain. *See* Cal. Lab. Code § 2699(f); *see* also *Guifi Li v. A Perfect Day Franchise Inc.*, 2012 WL 2236752 at *17 (N.D. Cal. 2012).

---

11

Finally, all California Settlement Class Members will receive their share of the California Class Fund unless a Class Member affirmatively decides not to receive it, by filing a timely Exclusion Letter from the California state law class, and by further not accepting the FLSA portion of the Settlement. Further, all FLSA Class Members will be issued a check for their FLSA Individual Settlement Payment. Thereafter, the act of cashing the check by the FLSA Class Members will evidence and constitute his or her consent to join the action and acceptance of the FLSA Individual Settlement Payment.  Any uncashed checks will be distributed to the appropriate unclaimed property funds based on the state of residence.  (*Id.* at ¶ 30).

**Class Member Claims Released:**

**California Class**: "California Class Released Claims" means all claims, demands, rights, liabilities and causes of action that were or could have been asserted in the lawsuit (whether in tort, contract, or otherwise) for violation of the California Labor Code, the California Business & Professions Code, the Labor Code Private Attorneys General Act of 2004, the applicable Industrial Welfare Commission Wage Orders or any similar state or federal law, including but not limited to those based in any part on the FLSA, whether for unpaid wages, economic damages, non-economic damages, liquidated damages, punitive damages, restitution, penalties, other monies, or other relief <u>arising out of, relating to, or in connection with any facts and/or claims pled in the class action complaints</u>, filed by Edgar Viceral and/or David Krueger, and/or in the Consolidated First Amended Class Action Complaint filed by Plaintiffs in the Lawsuit, which are or could be the basis of claims that Defendant failed to provide all wages and overtime wages due, failed to pay the minimum wage, failed to provide timely or accurate final paychecks, failed to timely pay compensation, engaged in recordkeeping violations, failed to provide accurate itemized wage statements, failed to provide meal breaks, failed to authorize and permit rest breaks, and/or engaged in unfair business practices based on the foregoing violations, at any times during the California Class Period. (*Id.* at ¶ 32).

**FLSA Class:** "FLSA Class Released Claims" means all claims, demands, rights, liabilities and causes of action that were or could have been asserted in the Lawsuit (whether in tort, contract, or otherwise) for violation of the Fair Labor Standards Act whether for unpaid wages, economic damages, , liquidated damages, punitive damages, restitution, penalties, other monies, or other relief <u>arising out of,</u>

relating to, or in connection with any facts and/or claims pled in the class action complaints, filed by Edgar Viceral and/or David Krueger, and/or in the Consolidated First Amended Class Action Complaint filed by Plaintiffs in the Lawsuit, which are or could be the basis of claims that Defendant failed to provide all wages and overtime wages due, failed to pay the minimum wage and/or engaged in recordkeeping violations, at any time during the FLSA Class Period.  (*Id.* at ¶ 32).

**Notice:**  The Parties have agreed on the form of the Notices to be mailed to the Class Members, which are attached as Exhibits 1 and 2 to the Settlement Agreement – and, in conjunction with the respective California Class and FLSA Class Forms, are collectively referred to as the "Notice Packet." Moreover, the Parties intend to use reasonable means to locate Class Members.  The Settlement Administrator will perform one skip trace on returned mail and re-mail Claim Forms to an updated address (if any).

Upon Final Approval of the Settlement by the Court, the Settlement Classes, comprised of all Class Members to whom mailing has been duly completed or attempted, and who have not submitted a timely and valid Exclusion Letter, shall be held to have agreed to release Defendant from the Released California Claims, and will be held to have released the FLSA Claims by the act of cashing the check sent to them for settlement. (*Id.* at ¶¶ 34-35).

If the Court grants Preliminary Approval, the timetable of events is anticipated as follows:

| EVENT | TIME |
|---|---|
| Defendant to provide the Settlement Administrator the most recent names, last known residence addresses and telephone numbers, social security numbers for all Class Members, as well as any relevant information regarding their dates of employment in Covered Positions including but not limited to work week information. | Within 15 Calendar following the Date of Preliminary Approval |
| Mail Notice Packets to California Class by first class mail<br><br>Prior to Mailing, Settlement Administrator to complete any skip trace or other address searched for all Class Members, including updating any contact information. | Within 10 Calendar days after receiving the Class Member List And Contact Information |
| **Deadline for**:<br><br>*** California Class Members to opt-out of Settlement.<br><br>*** California Class Members to file any objections to the settlement. | 45 days after Notice Packets are mailed. |

| | |
|---|---|
| *** California Class Members to file a notice of intention to appear at the Final Approval Hearing. | |
| Settlement Administrator To provide Declaration Re: Administration of the Settlement | 7 Calendar days prior to Final Approval Hearing |
| Hearing on Motion for Final Approval | To be determined. |
| Defendant will provide the Settlement Administrator with sufficient funds to make all payments due to Plaintiff, Class Counsel, the LWDA, the Settlement Administrator, and the Claimants, plus any owed Payroll Taxes | No later than 3 business days after the Effective Date |
| Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a final statement listing all FLSA Class Members and identifying the number of weeks worked by each FLSA Class Member, and the approximate Settlement award to each FLSA Class Member | 5 business days before the FLSA Class Notices are sent |
| FLSA Settlement Awards shall be paid by the Settlement Administrator to FLSA Class Members and checks to be accompanied by the FLSA Class Notice | 15 Calendar days after the occurrence of the Effective Date |
| Prior to Mailing, Settlement Administrator to complete any skip trace or other address searched for all Class Members, including updating any contact information. | |

IV.   **THE SETTLEMENT SHOULD BE PRELIMININARILY APPROVED AS TO THE CALIFORNIA CLASS AND FINALLY APPROVED AS TO THE FLSA CLASS BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE**

The district court has broad discretion to grant approval of class action settlements, and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. June 10, 2005)). Court approval involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval so that notice of the same can be disseminated, and then after notice is given to Class Members, whether final approval is warranted. *Manual of Complex Litigation*, Fourth, § 21,632 (2004). *See, Hanlon, supra*, at 1019. "The court ordinarily holds a preliminary hearing to determine whether there is a likelihood it could approve the settlement before conducting a full 'fairness hearing.'" At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce,* 690 F.2d 616, 621

14

n.3 (7th Cir. 1982).  Ultimately, a class action should be approved if "it is fundamentally fair, adequate and reasonable."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992);  *see also Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982).  There is a "strong initial presumption that the compromise is fair and reasonable." *Hanlon, supra*, at 1019.  Courts strongly favor settlement, particularly in complex class actions. *See, e.g., Class Plaintiffs,* 955 F.2d at 1276.

The Court's ultimate fairness determination will include balancing several factors, including some or all of the following: … the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement. *Officers for Justice* , 688 F. 2d at 625.  Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).  District courts have wide discretion in assessing the weight and applicability of each factor.  *Id.*  Applying this standard, numerous cases similar to this case have certified classes of retail employees who have suffered wage and hour violations under California law. *See Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014) (certifying California Rule 23 class in a case asserting similar wage and hour violations for non-exempt, hourly employee working as Sales Associates and Assistant Managers). Based on the presentation set forth above, it is submitted that this Settlement not only satisfies the criteria for Preliminary Approval of the Class, but also it easily meet the criteria for Final Approval as to the FLSA Class.  In fact, the Ninth Circuit has regularly recognized the use of hybrid simultaneous Rule 23 class actions and FLSA collective actions.

### A.     The Settlement Resulted from Arm's-Length Negotiations

The Ninth Circuit has long supported settlements reached through arms' length negotiation by capable opponents.  In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling]

1   parties." *Id.* at 965. The primary reason for deferring to such settlements is the experience of counsel

2   and the participation of a neutral (in this case, one of the leading employment class action neutrals in this

3   state), both of which factors are present here.

4       The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive,

5   negotiated resolution, and [has] never prescribed a particular formula by which that outcome must be

6   tested." *Rodriguez, supra*, at 965. As the Court explained, "In reality, parties, counsel, mediators, and

7   district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a

8   plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to

9   present value." *Id.* at 965 (citations omitted). *See also, Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th

10  Cir.1983); 2 *Newberg on Class Actions* §11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation*

11  (Fourth) §30.42.)

12      The proposed Settlement here is the product of arm's-length negotiations between the Parties.

13  (Saltzman Decl. ¶¶ 7-14). Plaintiffs conducted significant investigation of the facts and law both prior to

14  filing the lawsuits and during the prosecution of this action, including (1) review and analysis of critical

15  documents, (2) interviews of class members, (3) review and analysis, with the assistance of experts, of

16  payroll record data for numerous class members from across the country, (4) review and research of

17  complicated issues, and (5) taking depositions of Defendant's designated PMQ witnesses. ( *Id.*).

18      Class Counsel also considered the strengths and weaknesses of the case, and of course

19  thoroughly examined all of Defendant's defenses. This Settlement in the amount of $6,000,000

20  represents a significant recovery for the Class Members. ( *Id.*).

21      The Parties were able to negotiate a fair settlement, taking into account the costs and risks of

22  continued litigation. The opinion of experienced counsel, as are involved on both sides of this case,

23  (here two separate and independent plaintiff counsel firms, working together but also independently), all

24  supporting the Settlement, is entitled to considerable weight. "A presumption of fairness, adequacy, and

25  reasonableness may attach to a class settlement reached in arm's length negotiations between

26  experienced, capable counsel after meaningful discovery." *H&R Block Stores, Inc. v. Visa U.S.A., Inc.,*

27  396 F.3d 96, 116 (2d Cir. 2005); *see also, Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988);

28  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Plaintiffs and Class Counsel have also

1  taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and

2  delays inherent in such litigation. Undoubtedly, the Defendant did so as well, given the payment being

3  agreed to herein.

4      Based on the foregoing, Plaintiffs and Class Counsel submit that the settlement set forth in the

5  Settlement Agreement is fair, adequate and reasonable, and is in the best interests of Plaintiffs and the

6  California Class Members. (Saltzman Decl. ¶ 37).  Defendant has also expended substantial time, energy

7  and resources in connection with the litigation and the negotiation of the settlement now before the

8  Court, and unless this Settlement is approved, will be required to continue to incur further fees, plus

9  ongoing time, energy and resources.  In fact, as noted above, Defendant's counsel has already obtained

10 over 500 "defense" declarations, and if the case was to continue the Parties would undoubtedly be

11 required to expend very significant resources in the very near time frame addressing the reliability,

12 admissibility and strength of the many declarations, and also deposing a sample of the declarant

13 witnesses either in anticipation of the filing of the plaintiffs' certification brief, or prior to drafting the

14 reply to the opposition to the motion.  Defendant and Plaintiffs, have therefore, agreed to settle in the

15 manner and upon the terms set forth in the Settlement Agreement.

16 **B.    The Settlement Has No Obvious Deficiencies.**

17     The proposed Settlement has no obvious deficiencies.  Under the terms of the Settlement

18 Agreement, Defendant will make a single, non-reversionary payment of $6,000,000.  The Settlement

19 Agreement provides no preferential treatment for Plaintiffs or other Class Members.  Plaintiffs will

20 receive a distribution from the settlement proceeds that is calculated in the same manner as the

21 distributions to other Class Members.  "Ultimately the district court's determination is nothing more

22 than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,*

23 *supra*, at 625.  In making its determination, the Court should weigh the benefits that the settlement will

24 realize for the class against the uncertainty of litigation and the possibility that the class members would

25 obtain no relief in the absence of a settlement. *See, Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,

26 1242 (9th Cir. 1998).

27     Throughout this litigation, Plaintiffs have argued that Defendant should be liable for all claims

28

1    raised in the Complaint.  Defendant, on the other hand, has steadfastly maintained that class members

2    did not work off the clock, received and/or were provided with all required meal and rest breaks, and

3    that they were properly compensated for all work hours.  Along these lines, as mentioned, Defendant

4    accumulated well over 500 declarations from class members to oppose this action.  This Settlement

5    represents a significant recovery for the Class Members, and a well-crafted compromise of the divergent

6    positions of the Parties. Further, the Settlement has been reached after considerable negotiation,

7    involving the efforts of a highly experienced Mediator.  Each side evaluated the strengths and

8    weaknesses of their case and independently came to the conclusion that this Settlement represents a

9    responsible means of addressing Plaintiffs' claims and Defendant's defenses.

10   **V.       NATURE AND METHOD OF CLASS NOTICE**

11          "For any class certified under Rule 23 (b)(3), the court must direct that Class Members receive

12   the best notice practicable under the circumstances, including individual notice to all members who can

13   be identified through reasonable effort."  FED.R.CIV.P. 23 (c)(2)(B). Procedural due process does not

14   guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise

15   interested parties of the pendency of the action and afford them an opportunity to present their

16   objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*,

17   18 F.3d 1449, 1454 (9th Cir. 1994).  A settlement notice "is satisfactory if it 'generally describes the

18   terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

19   come forward and be heard.'" *Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004).

20   Here, the Parties have agreed upon a California Notice and FLSA Notice which will be mailed to all last

21   known addresses in the Defendant's records, updated as necessary.  This is the most efficient and

22   effective method for notifying Class Members. As for the content of the notice, the proposed California

23   and FLSA Notices meet all of the criteria set forth in Rule 23 (c)(2) and the Northern District's guidance

24   on such notices.  The California and FLSA Notices inform prospective Class Members of (i) the nature

25   of the action; (ii) the definition of the classes to be conditionally certified; (iii) the class claims, and the

26   settlement class periods; (iv) that a Class Member may enter an appearance through counsel if the

27   member so desires; (v) that the Court will exclude from the California Settlement Class any California

28   Class Member who timely requests exclusion; (vi) the time and manner for requesting exclusion; and

1    (vii) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3).  It also

2    informs them of their right to object, and how to do so.  As such, the Parties request that the Notices be

3    approved.

4    **VI.    CLAIMS ADMINISTRATION**

5           The Parties have agreed to the appointment of Simpluris as the Settlement Administrator.

6    Simpluris is an experienced class administration company, and has acted as claims administrator in

7    numerous wage and hour cases throughout the country. Simpluris has provided an estimate that its

8    expenses will not exceed $50,000.00, for all the work required to properly handle all the settlement

9    administration tasks.[18]

10   **VII.    ATTORNEYS' FEES AND COSTS**

11          The Settlement Agreement contemplates that Class Counsel will apply to the Court for an award

12   to be paid from the MSA established for the benefit of the Class Members.  Class Counsel will seek fees

13   not to exceed 33 1/3% of the MSA, as well as, costs and expenses currently estimated to be $42,000.00.

14   This request is consistent with the benchmark used in Northern District, which counsel acknowledge is

15   appropriate for the case, in light of the fairly smooth track the case proceeded on to resolution.   The

16   request for this award is set forth in the proposed Notices.  Class Counsel will file their motion for an

17   award of fees and costs in a timely manner such that Class Members have the standard Northern District

18   "motion notice" period (14 days) to review the same prior to the expiration of the time to object or opt

19   out of this Settlement.

20   **VIII.    ENHANCEMENT AWARD FOR NAMED PLAINTIFFS**

21          "[N]amed plaintiffs… are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327

22   F.3d 938, 977 (9th Cir. 2003).  The district court must evaluate individual awards using "relevant factors

23   includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the

24   class has benefitted from those actions,…the amount of time and effort the plaintiff expended in

25   pursuing the litigation…and reasonabl[e] fear[s of] workplace retaliation." *Id.* (citing *v. Cook v. Niedert*,

26   _____

27   [18] Prior to selecting Simpluris to recommend to the Court for approval, Plaintiffs' counsel obtained bids from

28   other reputable class action administration companies, and the bid from Simpluris was the most favorable.

1  142 F.3d 1004, 1016 (7th Cir. 1998)); *see also, Rodriguez v. West Publ. Corp.,* No. CV05-3222

2  R(MCx), 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007), *aff'd in part, rev'd in part sub nom. Rodriguez*

3  *v. West Publ. Corp.* 563 F.3d 948 (9th Cir. 2009) (incentive awards should compensate for risks taken,

4  such as "retaliation . . . , discrimination, trouble finding employment, and significant financial risk.").

5  "Because a named plaintiff is an essential ingredient of any class action, an incentive award is

6  appropriate if it is necessary to induce an individual to participate in the suit." *Cook*, 142 F.3d at 1016;

7  *see also In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *18 (E.D. PA. June 2, 2004) (Where

8  "the class representatives have conferred benefits on all other class members . . . they deserve to be

9  compensated accordingly.").   "Courts routinely approve incentive awards to compensate named

10  plaintiffs for the services they provided and the risks they incurred during the course of the class action

11  litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff

12  received $50,000 for work in class action).

13       Here, the Class Representatives were not simply bystanders in the prosecution of this Action.

14  From the time that Plaintiffs brought this matter to the attention of counsel and met with them, through

15  the present, they have been actively involved in providing information and evidence.  (See Saltzman

16  Decl. ¶ 19).  The Class Representatives were always available to consult with, and regularly did consult

17  with, counsel both in person and via telephone.  (*Id.*).  The Class Representatives were also actively

18  involved in discussions regarding the resolution of this matter and approved the Settlement terms on

19  behalf of themselves and the Class Members.  (*Id.*).  Additionally, Mr. Krueger prepared for and had his

20  deposition taken by Defendant.  Mr. Viceral prepared for his deposition which had been noticed, but the

21  Parties agreed to attempt resolution by mediation prior to his deposition going forward.  As a result, the

22  Settlement Agreement contemplates that the Class Representatives will apply to the Court for

23  Enhancement Payments to be paid from the MSA. Named Plaintiff Mr. Viceral will request an incentive

24  award of $7,500 and will also execute a full release of all claims; named Plaintiff Mr. Krueger will

25  request an incentive award of $1,000, and will retain his right to continue with a separate individual

26  action ongoing against the Defendant, for claims not included in this class action.  The request for these

27  Enhancement Payments are clearly disclosed in the proposed Notices.  The named Plaintiffs will file the

28  motion for the Enhancement Payments in a timely manner such that Class Members have the standard

Northern District "motion notice" period (14 days) to review the same prior to the expiration of the time to object to or opt out of this Settlement.

## IX.   THE PROPOSED SETTLEMENT CALIFORNIA CLASS SHOULD BE PRELIMINARILY CERTIFIED FOR THE FOR PURPOSES OF SETTLEMENT

### A.   Fed.R.Civ.P. 23 (a) Requirements Are Met for the Settlement Class

In certifying a class pursuant to Rule 23, plaintiffs have the burden of showing the four requirements of Rule 23(a) as well as one of the requirements of Rule 23(b).  The four requirements of Rule 23(a) are typically referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co*., 593 F.3d 802, 806 (9th Cir. Cal. 2010).  In this case, the Parties agree to provisional certification of the Settlement class under Rule 23(b)(3) which has the added requirements of "predominance." *Id.*

#### 1.   Numerosity

Rule 23 (a)(1) is typically referred to as "numerosity" in that it requires a class that is "so numerous that joinder of all members is impracticable." While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). Here, numerosity is met as the combined California Class and FLSA Class includes over 4,500 members.

#### 2.   Commonality

Rule 23 (a)(2) requires that "there are questions of law or fact common to the class." The Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *see also Hanlon*, 150 F.3d at 1019.  Here, Plaintiffs allege, and Defendant denies, that Defendant has a systemic practice of requiring employees to perform work "off-the-clock" for which they are not compensated, and that Defendant also has wage payment policies that gave/give rise to the following common questions of law and fact: (1) whether Mistras failed to properly pay minimum wages for all hours worked by Plaintiffs and the California Class, including, but not limited to, mandatory training and travel time; (2) whether Mistras failed to properly pay wages at the agreed rate for all hours worked

by Plaintiffs and the California Class, including, but not limited to, mandatory training and travel time; (3) whether Mistras failed to pay straight time or overtime compensation, at either one and one-half (1 ½) times or double the regular rate of pay, to Plaintiffs and the California Class members in violation of the Labor Code and applicable Wage Orders; (4) whether Mistras employed a common policy or practice of failing to pay overtime wages to Plaintiffs and the California Class members for all overtime hours worked, including mandatory training and travel time; (5) whether Mistras has maintained a policy, custom, and/or practice of failing to authorize and permit and pay legally required meal periods; (6) whether Mistras has maintained a policy, custom, and/or practice of failing to authorize and permit and pay legally required rest breaks; (7) whether Mistras has maintained a policy, custom, and/or practice of failing to maintain required business records applicable to the Plaintiffs and the California Class; (8) whether Mistras has maintained a policy, custom, and/or practice of failing to provide Plaintiffs and the California Class with accurate itemized pay statements; (9) whether Mistras has maintained a policy, custom, and/or practice of failing to provide Plaintiffs and the California Class with itemized pay statements that contain all the information required by law; (10) whether Mistras failed to pay Plaintiffs and the California Class, who have been terminated or quit, all earned wages at the required time at or after their separation from employment; (11) whether the Mistras's actions, as alleged herein were willful; and (12) whether the Mistras's actions, as alleged herein, were unlawful and constitute unfair business practices. These common issues satisfy Rule 23 (a)(2)'s requirements.  *See e.g. Tierno v. Rite Aid Corp.*, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006).

### 3. Typicality

Rule 23 (a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. Cal. 2010).  Plaintiffs submit that typicality is met here as the claims of the Class Members are based on the same legal and factual claims as those of the Plaintiffs.

### 4. The Adequacy Requirements Are Satisfied

The proposed Class Representatives and Class Counsel contend they have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). The adequacy

requirement has two prongs, the first being "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *5 (S.D. Cal. 2004).  Here Plaintiff's Co-Lead Counsel of Marlin & Saltzman LLP and Schneider Wallace Cottrell Konecky Wotkyns LLP have litigated and successfully resolved numerous wage and hour class actions. (See Declarations of Saltzman and Cottrell). The second prong of the adequacy test is "that the suit not be collusive and the representative plaintiff's interests not be antagonistic to those of the remainder of the class." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *1-2 (S.D. Cal. 2004).  Here, there is no evidence of antagonism between the Class Representatives' interests and those of the Class Members. The Class Representatives have litigated this case in good faith and the interests of the Class Representatives are aligned with those of the Class Members.  Moreover, there is no evidence of any collusion between the Parties.

### B.    The Fed.R.Civ.P 23 (b) Standards Are Satisfied

#### 1.  Common Issues Predominate

In addition to the Rule 23 (a) requirements, a district court must also find that common issues of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The proposed Class Members' claims in this case are sufficiently cohesive to warrant adjudication by representation. See *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1436 (2013). Furthermore, because the "predominance" factor concerns liability, any variation in damages is plainly insufficient to defeat class certification. *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013). Plaintiffs contend (and Defendant denies) that all claims in this litigation arise from Defendant's common, class-wide policies and procedures, and that liability could accordingly be determined on a class-wide basis, without dependence on individual assessments of liability.  *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033 (2012).  In particular, Plaintiffs assert that Defendant's policies, practices, and procedures caused the class members to perform work off the clock for which they were not compensated either straight time or overtime.  Defendant denies these assertions and allegations. Additionally, Plaintiffs allege, and Defendant denies, that Defendant's policies caused class members to not be compensated for meal and rest breaks, and that they also received improper wage statements, all presenting common and predominate issues.

### 2. The Class Action Device Is Superior to Other Adjudication.

The class action proposed herein is "superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23 (b)(3). Provisional certification of the California Class and FLSA Class will allow Class Members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism or forum would provide. As in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages. *Hanlon,* 150 F. 3d at 1019-20. These claims "'would prove uneconomic for potential plaintiffs' because 'litigation costs would dwarf potential recovery.'" *Id.* at 1023.

### 3. No Manageability Issues Preclude Certification

Finally, no issues of manageability would preclude certification of the Settlement Class. A court faced with a request for a settlement-only class like this one <u>need not</u> inquire whether the case would present problems of trial management, even though other requirements under Rule 23 must still be satisfied. See, e.g., *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *5 (N.D. Cal. 2013). In any event, within the limited sphere of this settlement class certification, and as discussed above, Plaintiffs believe that the proposed plan of distribution and settlement process are both efficient and manageable.

### C.   The Court Should Finally Approve the Settlement as to the FLSA Class.

Pursuant to the FLSA, Plaintiff has raised claims on behalf of a national class. Unlike a Rule 23 class action, which is conducted on an opt-out basis, a FLSA collective action is an opt-in class. *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).

In managing a collective action, the typical procedure in the Ninth Circuit is to follow a "two-tier" approach. *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. Nov. 25, 2009). Under this approach, the first tier is used to send notice to "similarly situated" individuals. *Id.* In determining whether individuals are "similarly situated" for purposes of a collective action, the Court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (quoting *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. Kan. 2001)). The standard is "fairly lenient," and typically results in certification. *Id.* As noted above, Plaintiffs contend that the FLSA Class Members in this case are similarly situated in that they: have the same employment setting, carried out the same basic employment duties, and were

subject to the same policies.  As such, certification of the FLSA collective action is appropriate.  There are no individualized defenses that defeat certification. Moreover, considerations of fairness also militate in favor of maintaining this case as a collective action and approving the Settlement.

## X. PLAINTIFFS' CO-LEAD COUNSEL SHOULD BE APPOINTED AS "SETTLEMENT CLASS COUNSEL"

Federal Rule of Civil Procedure 23 (g) requires that courts consider the following four factors when appointing settlement class counsel: (1) whether counsel has investigated the class claims; (2) whether counsel is experienced in handling class actions and complex litigation; (3) whether counsel is knowledgeable regarding the applicable law; and (4) whether counsel will commit adequate resources to representing the class.  *See Grant v. Capital Mgmt. Servs., L.P.,* 2013 WL 6499698, *2-3 (S.D. Cal. 2013). Here, co-counsel in this action are highly experienced and knowledgeable regarding complex federal and state wage and hour class actions like this one.  (Decls. of  Saltzman and Cottrell). In sum, these class action firms have fully committed their resources to represent the classes in this case, have the skill and expertise to do it properly, and will continue to do so whether or not the Settlement is approved.

## XI. CONCLUSION

The Parties negotiated a fair and reasonable settlement of a case that provides relief that may very well have never have been realized but for this class action.  Accordingly, Plaintiffs move the Court to preliminarily approve the Settlement as to the California Class and finally approve it as to the FLSA Class.


DATED:  July 19, 2016                          SCHNEIDER WALLACCE
                                               COTTRELL KONECKY WOTKYNS LLP

                                               By:  /s/  *Carolyn Hunt Cottrell*

                                               MARLIN & SALTZMAN, LLP

                                               UNITED EMPLOYEES LAW GROUP, P.C.

                                               Attorneys for Plaintiffs and the Settlement California
                                               Class and FLSA Class