Stanley D. Saltzman, Esq. (SBN 090058)
William A. Baird, Esq. (SBN 192675)
Tina Mehr, Esq. (SBN 275659)
MARLIN & SALTZMAN, LLP
29229 Canwood Street, Suite 208
Agoura Hills, California 91301
Telephone:    (818) 991-8080
Facsimile:    (818) 991-8081
ssaltzman@marlinsaltzman.com
tbaird@marlinsaltzman.com
tmehr@marlinsaltzman.com

Carolyn Hunt Cottrell (SBN 166977)
Nicole N. Coon (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone:    (415) 421-7100
Facsimile:    (415) 421-7105
ccottrell@schneiderwallace.com
ncoon@schneiderwallace.com

Walter Haines, Esq. (SBN 71075)
UNITED EMPLOYEES LAW GROUP, P.C.
5500 Bolsa Ave., Suite 201
Huntington Beach, California 92649
Telephone:    (888) 474-7242
Facsimile:    (562) 256-1006

Attorneys for Plaintiffs
and the Settlement California Class and FLSA Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDGAR VICERAL and DAVID KRUEGER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MISTRAS GROUP, INC.; and DOES 1-50, inclusive,<br><br>Defendant. | **CASE NO. 3:15-cv-02198-EMC**<br>**(Assigned to Hon. Edward M. Chen)**<br><br>**CLASS ACTION**<br><br>**DECLARATION OF STAN SALTZMAN IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>DATE:    August 18, 2016<br>TIME:    1:30 p.m.<br>CTRM:    5 |

1

Declaration of Stan Saltzman ISO Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement CASE NO. 3:15-cv-02198-EMC

I, Stan Saltzman, Esq., declare as follows:

1. I am an attorney at law licensed to practice in the State of California and in this United States District Court. I am a founding Partner of Marlin & Saltzman, LLP attorneys of record for Plaintiffs. I make this declaration in support of Plaintiffs' Motion For Preliminary Approval of a Class Action and Collective Action Settlement wherein Plaintiffs seek an Order (1) preliminarily approving the Settlement as to the California Class and finally approving the Settlement as to the FLSA Class (the Joint Stipulation of Settlement and Release is attached as Exhibit "1" to this declaration; (2) preliminarily and conditionally certifying a Settlement Class and Collective Action; (3) Approving and Directing distribution of the Notice of Class and Collective Action Settlement (attached as Exhibits"1" & "2" to Settlement Agreement); and (4) Setting a Final Approval Hearing. I testify to the foregoing facts of my own personal knowledge and, if called as a witness, could and would testify competently thereto under oath.

**SUMMARY OF THE LITIGATION**

**Defendant and The Hourly, Non-exempt Technicians, Inspectors and Examiners**

2. Defendant Mistras is a global provider of technology-enabled asset protection solutions used to evaluate the structural integrity of critical energy, industrial, and public infrastructure. Mistras provides standard and innovative non-destructive testing, inspection, and engineering services for its customers. As pertinent to this case, Mistras operates approximately sixty offices nationwide, also referred to as labs, each of which may provide discrete services to multiple customers at multiple work locations. The customer services provided by each lab are generally performed by non-destructive examiners, generally categorized as examiners, inspectors, technicians and/or technicians' assistants (collectively "NDTs"). Most work performed by NDTs occurs on customers' jobsites. Some (although Defendant contends many) NDTs who are assigned to a customer site generally commute directly between their homes and the customer site on which they are working.

3. Plaintiff Viceral was employed by Mistras as a Level II NDT Technician from about October 2009 to November 2014. Viceral worked at the Dow Chemical Plant in Pittsburgh, California, and was later transferred to the Valero Refinery in Martinez, California. Viceral also worked at several other Mistras jobsites as needs arose. Viceral was paid at the rate of $27.00 per

2

hour. Plaintiff Krueger was employed by Mistras as a Technician in North Dakota and California from about August 2013 to October 2014. Mistras paid Plaintiff $23.00 per hour. In North Dakota, Krueger worked out of Mistras's office in Minot for its customer Hess Oil.

**Procedural History and Classes**

4. On April 13, 2015, Plaintiff Edgar Viceral filed a class and collective action complaint against Defendant Mistras Group, Inc.in the San Francisco County Superior Court, entitled *Edgar Viceral, et al. v. Mistras Group, Inc., et al.*, No. CGC-15-545291. (Cal. Super. Ct., San Francisco filed April 13, 2015) ("*Viceral*"). Defendant removed the *Viceral* action to the United States District Court for the Northern District of California, on May 15, 2015. Thereafter Defendant filed a Notice of Other Action or Proceeding on May 27, 2015, alerting the Court and parties of a related class action: *David Krueger v. Mistras Group, Inc.,* No. 2:15-cv-01069 (E.D. Cal. 2015) proceeding in the United States District Court for the Eastern District of California ("*Krueger*"), which action had been filed on April 10, 2015, in the Kern County Superior Court, only three days prior to the *Viceral* action. Subsequently, Plaintiffs Viceral and Krueger and Defendant (hereafter "the Parties") met and conferred and agreed to coordinate the two actions. On November 20, 2015, Plaintiffs filed the Consolidated First Amended Complaint ("FAC") in this case that included the *Krueger* claims, parties, and counsel.

5. The FAC alleges nine causes of action, including claims under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the California Labor Code, applicable Industrial Welfare Commission ("IWC") Wage Orders, and California Business and Professions Code §§ 17200, *et seq.* ("UCL"). Plaintiffs assert the first cause of action on behalf of themselves and the FLSA Class for failure to compensate all hours worked, including training and overtime hours. Plaintiffs assert the remaining eight causes of action under California law, namely: (2) failure to compensate for all hours worked, including but not limited to attending pre-work meetings, completing required training programs, traveling to and from Mistras's offices to worksites, and engaging in other off-the-clock work; (3) failure to pay overtime wages; (4) failure to authorize, permit, and/or make available meal periods; (5) failure to authorize, permit, and/or make available rest periods; (6) failure to provide accurate itemized wage statements; (7) failure to timely pay all earned wages at the end of employment; (8) violation of the UCL for unlawful, unfair, and/or fraudulent business acts or practices; and (9)

3

Declaration of Stan Saltzman ISO Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement CASE NO. 3:15-cv-02198-EMC

penalties pursuant to § 2698, *et seq.* of the California Private Attorney General Act ("PAGA").

6. Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), Plaintiffs seek to represent the following California Class: "All persons employed by any of the Defendants as hourly, non-exempt Technicians, Inspectors and Examiners within the State of California during any part of the time period beginning April 10, 2011 up to the date of Final Approval ("California Class")." This is in addition to a Sub-Class of Terminated Employees. FAC at 26. In addition, Plaintiffs seek to represent a national Collective group of Defendant's employees under the FLSA, defined as follows: "All persons who were employed as hourly, non-exempt Technicians, Inspectors and Examiners in the United States, or anywhere else the FLSA governs, by any of the Defendant during any part of the time period beginning April 10, 2012 through the date of Final Approval and who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §216(b) ("FLSA Class")."[1]

**Plaintiffs' Investigation**

7. Prior to filing the suits, Class Counsel in both actions independently investigated and researched the facts and circumstances underlying the issues raised in the cases, and the law applicable thereto. Following the filing of the lawsuits, Plaintiffs prepared and served extensive written discovery. The Parties conducted numerous meet and confer sessions regarding the discovery. These efforts resulted in the production of additional documents and supplemental interrogatory responses. Class Counsel spent many hours preparing discovery, reviewing and categorizing the produced documents, and reviewing the written discovery produced by Defendant. In addition, Plaintiffs responded to written discovery; deposed Defendant pursuant to FRCP 30(b)(6), including taking the depositions of Julie Marini (Mistras Group Vice President of Human Resources)[2] and Dennis Bertolotti (Mistras President of Group Services/Interim CEO)[3]. Plaintiff Krueger was also deposed on March 10, 2016.[4] Plaintiff

---

[1] The Parties executed a Limited Tolling Agreement on December 31, 2015.

[2] This deposition took place on March 23, 2016.

[3] This deposition took place on March 22, 2016.

[4] The deposition of Plaintiff Viceral was scheduled for March 3, 2016; however, Defendant cancelled it.

4

Viceral was noticed for deposition, had conducted the initial pre-deposition preparation, and then the case proceeded to mediation before he was actually deposed.

8. In response to Plaintiffs' discovery requests, Defendant produced the California Class and FLSA Class lists on January 15, 2016, and February 19, 2016, respectively. There are 1,253 California Class Members. There are approximately 3,615 additional FLSA employees for a total of 4,723 FLSA Clas Members. To date, 13 employees have opted in to the case and filed their respective forms with the Court.[5]

9. In addition, Defendant has produced: (1) the two Named Plaintiffs' timekeeping documents, wage statements, training logs, and personnel files; (2) a list of the Mistras offices throughout the U.S.; AWS documents; and (3) numerous handbooks and policies, including: its U.S. Employee Handbook, job descriptions, document retention polices, California meal and rest break policies, payroll policies, dispute resolution policy, meal period waiver, and examples of training materials; and numerous complaints filed against Mistras. Defendant also produced a sampling of information and documents for California Class and FLSA Class Members. Defendant produced: a sample of training logs, the number of hours worked by day, the number of days worked by year, and payroll data for California Class and FLSA Class Members;[6] and examples of weekly time summaries, handwritten timecards, pre-EPIP reports by employees, weekly payroll reports, timecard reports, punch cards, Mistras daily work reports, Mistras non-billable timesheets, earning statements, weekly customer timecards, weekly timesheets, vacation/PTO notification, Mistras weekly T&M reports, and training logs.

---

[5] In light of the tolling agreement that is in place, the filing of opt-in forms in this case is not time sensitive.

[6] Data Reviewed

| Document | Date Range |
|---|---|
| Mistras 001933 - FLSA EE Training | Date Range: 4/11/2012 - 3/15/2016 |
| Mistras 001934 - FLSA EE hours by day | Date Range: 4/2/2012 - 3/13/2016 |
| Mistras 001935 - FLSA EE days worked by year | Date Range: 2011 - 2016 |
| Mistras 001936 - CA EE Training | Date Range: 4/11/2011 - 3/15/2016 |
| Mistras 001937 - CA EE hours by day | Date Range: 4/1/2011 - 3/13/2016 |
| Mistras 001938 - CA EE days worked by year | Date Range: 2011 - 2016 |
| MISTRAS008540 Combined Payroll Data 2011-2015 | Date Range: 1/7/2011 - 12/31/2015 |
| MISTRAS008541 Payroll Data_Mistras_ 2012-2015_FLSA | Date Range: 1/6/2011 - 12/31/2015 |
| California Class List | |
| FLSA Collective Class List | |

5

Declaration of Stan Saltzman ISO Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement CASE NO. 3:15-cv-02198-EMC

10. As a part of Plaintiffs' investigation, both before and after filing suit, Class Counsel conducted numerous in-depth interviews with class members to validate the merits of the case as indicated in the initial interviews of the Representative Plaintiffs. These interviews covered topics such as the uniformity of the job duties, daily work descriptions, pay policies and practices, overtime policies and practices, off the clock policies and practices, meal and rest break policies and practices, as well as other relevant areas of inquiry. Class Counsel's investigation also included many hours researching applicable issues, reviewing numerous time records, and consulting with expert witnesses.

11. Overall, the breadth of discovery, both formal and informal, permitted a thorough and detailed analysis of the viability of certification, as well as evaluations of the merits of the claims and Defendant's defenses, as well as Defendant's potential exposure for the damages at issue in this litigation.

**Settlement Negotiations**

12. After analysis of the responsive discovery as well as other gathered data, and believing that this case was appropriate for consensual resolution given the high level of risk present for both sides, the Parties agreed to attend mediation. Thereafter, the Parties engaged in further in-depth informal discussions in anticipation of the mediation. To facilitate mediation, as set forth above, Defendant agreed to produce and did produce specific Class Member payroll and financial information, as well as, time records. In particular, Defendant provided Plaintiffs with state-by-state information for the statutory period(s) regarding the total number of California Class and FLSA Class Members, their work locations, the number of weeks worked cumulatively by the California Class and FLSA Class Members, and their average hourly rate. Defendant further provided payroll and timekeeping data for Plaintiffs and all other Class Members. As a result of this professionally handled cooperation, Class Counsel was able to reach a comfort level that they were able to properly and thoroughly evaluate both liability and damage issues prior to the mediation. This mediation related information, coupled with the prior discovery and employee interviews, provided Plaintiffs with more than sufficient data to accurately estimate both liability and damages for the class. For its part, Defendant had engaged in extensive class member interviews, and prior to mediation had gathered well over 500 declarations from its employees in support of its intended vigorous defense of the claims asserted, and the class allegations.

6

Declaration of Stan Saltzman ISO Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement CASE NO. 3:15-cv-02198-EMC

13. On April 5, 2016 the Parties attended a formal mediation in San Francisco with Mark S. Rudy, Esq. ("Mr. Rudy" or "Mediator") – a well-respected mediator who specializes in wage and hour class actions. After over 10 hours of extensive negotiations, the mediation concluded without a settlement, but with clear progress having been made. Thereafter, through Mr. Rudy's ongoing efforts, the Parties continued to discuss possible resolution of the Action. After over a month of such discussions, the Parties eventually agreed to broad settlement terms. The Parties then began to work through the drafting of a Settlement Agreement, which was finally executed by the Parties shortly before this motion was filed.

14. The final Settlement is the product of extensive negotiations between the Parties conducted at arms-length and is free from collusion. The Parties on both sides are represented by experienced class action attorneys with specialized knowledge of both class action and employment law. In order to reach the final Settlement, the Parties debated, discussed, and resolved many difficult legal and factual issues. Moreover, during the process the Parties were both required to make reasonable compromises in light of the facts, issues, and risks presented in this Action. In particular, in reaching the Settlement, Class Counsel considered the uncertainty and risks of further litigation, and the difficulties inherent in such litigation. Class Counsel also considered the burdens of proof necessary to achieve certification of the case, and then to establish liability against Defendant and to defeat its defenses. All of these factors indicated that the best interests of the Class Members would be served by a settlement of this Action in the manner and upon the terms set forth in the Settlement Agreement.

**THE TERMS OF THE SETTLEMENT**

15. The terms of the Settlement are set forth in the Settlement Agreement, which is attached hereto as Exhibit 1. The terms of the settlement are summarized below:

16. **Settlement Classes:**

**California Class**: The California Class is comprised of all current and former hourly, non-exempt Technicians, Inspectors, and Examiners employed by Defendant in California at any time between April 10, 2011 up through the date of Final Approval.

**FLSA Class**: The FLSA Class is comprised of all current and former hourly, non-exempt Technicians, Inspectors and Examiners who were employed by Defendant in the United States at any time between April 10, 2012 through the date of Final Approval.

17. **Maximum Settlement Amount**: The Maximum Settlement Amount ("MSA") that Defendant will pay is Six Million Dollars ($6,000,000). This sum includes payments made to Class Members, Enhancement Payments to Plaintiffs, Administration Costs, a Fee and Expense Award, and a PAGA payment.

18. **Non-Reversionary**: No portion of the Maximum Settlement Amount will revert to Defendant under any circumstances.

19. **Service Payment to Plaintiffs**: An Enhancement Payment of Seven Thousand Five Hundred Dollars ($7,500.00) will be requested for Plaintiff Edgar Viceral, and a payment of One Thousand Dollars ($1,000.00) will be requested for Plaintiff David Krueger, subject to the approval of the Court, for their roles in initiating this Action and acting as the Class Representatives, for services provided in furtherance of this Action, for the risks undertaken for payment of costs in the event this Action was unsuccessful, for any stigma they may suffer going forward due to the public information available (i.e., via the internet) of their having filed a class action against an employer, and for their agreement to provide a release of claims. Counsel is requesting a larger amount for Mr. Viceral as he would be providing a full release of claims, while Mr. Krueger is requesting a lesser amount and retaining his right to continue his previously filed separate lawsuit for other claims not included in the class action.[7]

20. **PAGA Payment**: The Settlement allocates Twenty Thousand Dollars ($20,000.00) to settle the portion of the case brought under the California Labor Code's Private Attorney General Act of 2004 ("PAGA"). Seventy-Five percent (75%) of the total PAGA Payment (Fifteen Thousand Dollars ($15,000.00) will be paid to the California Labor & Workforce Development Agency. The remainder of the PAGA payment, twenty-five percent (25%) or Five Thousand Dollars ($5,000.00),

---

[7] Plaintiffs' counsel has been unable to obtain a signature from Mr. Viceral on the Settlement agreement due.

shall be included in the California Class Fund.

21. **Fee and Expense Award**: The Class Counsel shall seek an award not to exceed 33 1/3% of the MSA as the Fee Award, plus reimbursement of reasonable and actual expenses, currently estimated to be $42,000.00, as the Expense Award.

22. **Administration Costs**: means the actual and direct costs reasonably charged by the Settlement Administrator for its services in administering the Settlement. After receiving multiple bids for these services, the Parties currently project this expense as not to exceed $50,000.00.

23. **Payroll Taxes**: The Maximum Settlement Amount does not include the employer's side of the Payroll Taxes, which shall be paid by Defendant separate and apart from the Maximum Settlement Amount. The Payroll Taxes will be computed by the Settlement Administrator based on the amounts paid to the Claimants. The Settlement Administrator shall be responsible for making all necessary payments and government filings in connection with such payments.

24. **Net Settlement Amount ("NSA") and Allocation Of Amount**: The funds remaining from the Maximum Settlement Amount following deductions of the Court-approved awards for the following items: (1) the Administration Costs ($47,010.10), (2) the Fee and Expense Award ($2,000,000.00 and $42,000.00, respectively), (3) the Enhancement Payments to Plaintiffs ($8,500.00), and (4) the PAGA Payment ($15,000.00).

25. The NSA is estimated to be $3,888,559.65. 65% of the NSA will be allocated to the California Class Fund and 35% will be allocated to the FLSA Class Fund. Settlement awards will be distributed to Settlement Class Members on a proportional basis based on the amount of weeks each Class Member worked. Pursuant to this formula a California Class Member will receive approximately $1,248.00 for each year worked (estimated $24.00 per week multiplied by 52 work weeks per year) for each year worked. Thus, a California Class Member that was employed the entire class period of 5.5 years stands to recover $6,864.00. An FLSA Class Member will receive approximately $263.00 for each year worked (estimated $5.06 per week multiplied by 52 work

9

Declaration of Stan Saltzman ISO Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement CASE NO. 3:15-cv-02198-EMC

weeks per year) and if employed for the entire class period of 4.5 years stands to receive $\underline{\$1,183.00}$.[8]

26. The compensation that Class Members will receive under the settlement is reasonable in comparison to what he or she may have recovered at trial, assuming that the proposed class was able to obtain certification of these claims, and recognizing that at the time of the mediation the Defendant had already been able to obtain over 500 putative class member declarations.[9] The average hourly rate for FLSA Class Members during the FLSA Class Period was $25 per hour. Of course, the FLSA only provides for overtime when an employee works more than 40 hours in a week, as opposed to California's more employee favorable "8 hour per-day rule". Accounting for these factors, and Defendant's certification and merits defenses (<u>as reflected in more than 500 declarations Defendant amassed from class members to defend against this case</u>), and Plaintiffs' interviews with class members which determined that class members worked roughly 0.8 hours per day off the clock, recovery at trial could be anywhere from 0-4 hour per week, assuming that any recovery was made. Thus, total recovery at trial for an FLSA Class member could range anywhere from approximately $0 to $4,600 for each year he or she worked for defendant (based on 46 work weeks per year in order to account for vacation and other time off and not taking into account reductions for fees and costs of at least 35% -in contrast to the estimated payouts from the Net Settlement Fund).

---

[8] The Parties agreed to allocate the funds between the California Class and FLSA Class in the manner stated above, 65/35%, recognizing that the FLSA action alleged only one cause of action for off –the-clock overtime. By contrast, even though the California Class was smaller than the FLSA Class, it not only alleged a failure to pay off-the-clock overtime, but also alleged causes of action under the California Labor Code for failure to pay minimum wages, failure to provide and pay for missed meal breaks, failure to provide and pay for missed rest breaks, failure to provide proper wage statements, waiting time penalties for failing to pay all wages due at the termination of employment, violation of California Business and Professions Code § 17200, *et seq.*, and asserted claims under PAGA. Moreover, data analysis, as well as interviews with Class Members, indicated that the amount of damage hours per week to be claimed were higher for the California Class Members as compared to those who worked outside of California. The Parties further factored in the difficultly in proving the FLSA claims both from a merits and certification standpoint and the unique defenses asserted to that cause action by Defendant. With these factors in mind, and based on Class Counsels' belief that the California Class Members' damages were potentially twice the value of the FLSA Class Members, the two-to-one allocation was arrived at as a reasonable reflection of the value of the claims.

[9] Given the Defendant's ability to reach out to and obtain declarations even before the proposed Class Counsel are able to obtain a "class list", the playing field is often quite uneven and this case is an example of that having occurred.

10

Declaration of Stan Saltzman ISO Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement CASE NO. 3:15-cv-02198-EMC

27. Plaintiffs' counsel viewed this nationwide off-the-clock claim as the least likely to obtain certification, or to survive a decertification motion, and the most difficult to prove even if certification was obtained and withheld challenge. Thus, the claim was highly discounted for settlement purposes. Given the aforementioned adverse risks to the class in continuing to proceed with this claim, and the disparate claims of off-the-clock work from zone to zone and client to client, a recovery of $263 a year under this Settlement is reasonable.

28. Applying a similar type of analysis to the California Class with respect to the overtime/off the clock claim, a California class member's recovery could also range from $0 to $4,600. Thus, given the same adverse risks identified above, the stated recovery of $1,248 a year under this settlement agreement is a significant result (Again this number does not take into account reductions for fees and costs of at least 35% -in contrast to the estimated payouts from the Net Settlement Fund). The California Class Members also allege claims for failure to provide meal breaks and rest periods.

29. Based on time records provided by Defendant, Plaintiff intended to assert that there were at least two meal and/or rest periods missed per week per California Class Member. Based on this assumption, a California Settlement Class Member could be entitled to anywhere from 0 to $2,300 year ($25 x 2 x 46 work weeks per year). In considering Plaintiffs' estimated value of this claim, Class Counsel took into account the employer's duty to merely provide meal and rest periods as opposed to requiring them (e.g., an employee can choose to not take them), as well as, the difficulty proving this type of claim.

30. In sum, a California Class Member who is a current employee and who has worked at least a year stood to potentially recover $6,900 at trial a year for his or her overtime/off the clock claim and meal/rest period violations[10] (not taking into account reductions for fees and costs of at least 35%). Here, the proffered Settlement represents a 20% recovery of exposure for the better claims, again assuming that certification could be obtained and retained through trial – a reasonable

---

[10]  This figure assumes no recovery for the waiting time penalty claim, which requires a finding of willfulness, and only applies to former employees.

11

Declaration of Stan Saltzman ISO Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement CASE NO. 3:15-cv-02198-EMC

result given the risks in this action related to both certification and liability.[11],[12]

31.  Finally, all California Settlement Class Members will receive their share of the California Class Fund unless a Class Member affirmatively decides not to receive it, by filing a timely Exclusion Letter from the California state law class, and by further not accepting the FLSA portion of the Settlement.  Further, all FLSA Class Members will be issued a check for their FLSA Individual Settlement Payment. Thereafter, the act of cashing the check by the FLSA Class Members will evidence and constitute his or her consent to join the action and acceptance of the FLSA Individual Settlement Payment.  Any uncashed checks will be distributed to the appropriate unclaimed property funds based on the state of residence.

**Class Member Claims Released:**

32.  **California Class**: "California Class Released Claims" means all claims, demands, rights, liabilities and causes of action that were or could have been asserted in the lawsuit (whether in tort, contract, or otherwise) for violation of the California Labor Code, the California Business & Professions Code, the Labor Code Private Attorneys General Act of 2004, the applicable Industrial Welfare Commission Wage Orders or any similar state or federal law, including but not limited to those based in any part on the FLSA, whether for unpaid wages, economic damages, non-economic damages, liquidated damages, punitive damages, restitution, penalties, other monies, or other relief <u>arising out of, relating to, or in connection with any facts and/or claims pled in the class action complaints</u>, filed by Edgar Viceral and/or David Krueger, and/or in the Consolidated First Amended

---

[11]  The California Class also asserts a cause of action for violations of § 17200 of the Business and Professions Code as well as for alleged violations of Labor Code § 226 for failing to provide appropriate wage statements each pay period.  As the 17200 violations are premised on Defendant's violations of the Labor code sections above, Plaintiff's damage estimates equally apply to this cause of action.  As to Labor Code § 226, it provides $50.00 for an initial violation and $100.00 for each subsequent violation up to a maximum of $4,000 dollars.  Here, Class Members are/were paid every two weeks and thus, have/had 26 pay periods a year.  Accordingly, a Class Member would be entitled to $2,550 if the Class Member worked at least one year during the California Class Period and every wage statement was incorrect up to $4,000 if he or she worked at least a year and half. Class Counsel took into account that the claim was premised primarily on demonstrating that Class Members worked off the clock and whether that could be proven based on objective data.

[12]  At trial, Plaintiffs would also seek liquidated damages on unpaid wages as well as PAGA penalties both of which are subject to the Court's broad discretion.

12

Declaration of Stan Saltzman ISO Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement CASE NO. 3:15-cv-02198-EMC

Class Action Complaint filed by Plaintiffs in the Lawsuit, which are or could be the basis of claims that Defendant failed to provide all wages and overtime wages due, failed to pay the minimum wage, failed to provide timely or accurate final paychecks, failed to timely pay compensation, engaged in recordkeeping violations, failed to provide accurate itemized wage statements, failed to provide meal breaks, failed to authorize and permit rest breaks, and/or engaged in unfair business practices based on the foregoing violations, at any times during the California Class Period.

33. **FLSA Class:** "FLSA Class Released Claims" means all claims, demands, rights, liabilities and causes of action that were or could have been asserted in the Lawsuit (whether in tort, contract, or otherwise) for violation of the Fair Labor Standards Act whether for unpaid wages, economic damages, , liquidated damages, punitive damages, restitution, penalties, other monies, or other relief <u>arising out of, relating to, or in connection with any facts and/or claims pled in the class action complaints</u>, filed by Edgar Viceral and/or David Krueger, and/or in the Consolidated First Amended Class Action Complaint filed by Plaintiffs in the Lawsuit, which are or could be the basis of claims that Defendant failed to provide all wages and overtime wages due, failed to pay the minimum wage and/or engaged in recordkeeping violations, at any time during the FLSA Class Period.

34. **Notice:** The Parties have agreed on the form of the Notices to be mailed to the Class Members, which are attached as Exhibits 1 and 2 to the Settlement Agreement – and, in conjunction with the respective California Class and FLSA Class Forms, are collectively referred to as the "Notice Packet." Moreover, the Parties intend to use reasonable means to locate Class Members. The Settlement Administrator will perform one skip trace on returned mail and re-mail Claim Forms to an updated address (if any).

35. Upon Final Approval of the Settlement by the Court, the Settlement Classes, comprised of all Class Members to whom mailing has been duly completed or attempted, and who have not submitted a timely and valid Exclusion Letter, shall be held to have agreed to release Defendant from the Released California Claims, and will be held to have released the FLSA Claims by the act of cashing the check sent to them for settlement.

36. If the Court grants Preliminary Approval, the timetable of events is anticipated as follows:

| EVENT | TIME |
|---|---|
| Defendant to provide the Settlement Administrator the most recent names, last known residence addresses and telephone numbers, social security numbers for all Class Members, as well as any relevant information regarding their dates of employment in Covered Positions including but not limited to work week information. | Within 15 Calendar following the Date of Preliminary Approval |
| Mail Notice Packets to California Class by first class mail<br><br>Prior to Mailing, Settlement Administrator to complete any skip trace or other address searched for all Class Members, including updating any contact information. | Within 10 Calendar days after receiving the Class Member List And Contact Information |
| **Deadline for**:<br><br>*** California Class Members to opt-out of Settlement.<br><br>*** California Class Members to file any objections to the settlement.<br><br>*** California Class Members to file a notice of intention to appear at the Final Approval Hearing. | 45 days after Notice Packets are mailed. |
| Settlement Administrator To provide Declaration Re: Administration of the Settlement<br><br>Hearing on Motion for Final Approval | 7 Calendar days prior to Final Approval Hearing<br><br>To be determined. |
| Defendant will provide the Settlement Administrator with sufficient funds to make all payments due to Plaintiff, Class Counsel, the LWDA, the Settlement Administrator, and the Claimants, plus any owed Payroll Taxes | No later than 3 business days after the Effective Date |
| Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a final statement listing all FLSA Class Members and identifying the number of weeks worked by each FLSA Class Member, and the approximate Settlement award to each FLSA Class Member | 5 business days before the FLSA Class Notices are sent |
| FLSA Settlement Awards shall be paid by the Settlement Administrator to FLSA Class Members and checks to be accompanied by the FLSA Class Notice<br><br>Prior to Mailing, Settlement Administrator to complete any skip trace or other address searched for all Class Members, including updating any contact information. | 15 Calendar days after the occurrence of the Effective Date |

**CLASS COUNSEL**

37. Marlin & Saltzman and our co-counsel are experienced in class actions and employment disputes; and having considered all the experience represented by the collective firms involved for the classes, we fully support the Settlement. Given the uncertainty and expense of continued litigation, in light of the risks described above, I believe that the Settlement represents a very fair recovery for the claims presented. In sum, I believe that the Settlement is fair, reasonable, adequate, and in the best interests of the Class and the Collective.

38. I have been responsible for all facets of class action and other complex litigation, from pre-filing investigation through trial and appeal. Our firm has successfully litigated cases involving numerous alleged violations of various employment laws and practices, including off-the-clock/unpaid time allegations such as those presented herein, as well as unpaid vacation payment, reimbursement of expenses, improper wage statement and other wage and hour violations. We have also successfully litigated claims of mis-classifications under the executive, administrative, outside sales, and other overtime exemptions arising out of California and federal law. Prior to transitioning to plaintiffs' side representation, the firm was previously heavily involved in the defense of class and complex litigation, and numerous exemplar defendant side cases are also included in the listing of exemplar cases below, specifically numbers 40-81 below. The plaintiff side employment cases, and other plaintiff side class action cases, have resulted in the payment of hundreds of millions of dollars in settlements. Collectively, our firm has been responsible for the resolution of claims in these fields totaling in excess of $700 million dollars. Examples of some of the many cases we have handled, and are handling, include:

39. **Guttierez vs. State Farm**, Los Angeles Superior Court. Class action seeking overtime compensation for insurance claims adjusters employed by defendant in the State of California. Plaintiffs' counsel. Certification granted, and then summary adjudication as to liability granted in favor of the class. Case settled in 2004 for $135 million, with Final Approval granted and no objections filed.

40. **Bednar vs. Allstate Insurance Company**, Los Angeles Superior Court. Class action seeking overtime compensation for insurance claims adjusters employed by defendant in the State of

California. Plaintiffs' counsel. Certification granted, and then summary adjudication as to liability granted in favor of the class. Case settled in 2005 for $120 million. Final Approval granted and no objections filed.

41. **In re: Wal-Mart Wage and Hour Litigation**, United States District Court for the Northern District of California. Class action seeking unpaid vacation pay and penalties. Case has settled for maximum payment of $86 million. Final approval granted.

42. **Roberts vs. Coast National Insurance**, Orange County Superior Court . Class action seeking overtime compensation for insurance claims adjusters employed by defendant in the State of California. Plaintiffs' counsel. Certification granted, and then the matter was tried to binding arbitrator. Case settled for in excess of $18 million during arbitration.

43. **CNA Class Action Litigation**, Los Angeles Superior Court Class. Class action seeking overtime compensation for insurance claims adjusters employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2005 for $33 million.

44. **H & R Block Litigation**, United States District Court for the Northern District of California. Class certified, and settlement reached prior to trial   Preliminary approval has been granted, and the case is pending final approval   Total settlement was $35 million.

45. **Hoyng v. AON**, Los Angeles County Superior Court. Class action seeking overtime compensation for certain employees employed by defendant third party administrator in the State of California. Plaintiffs' counsel. Certification granted. Case settled for $10.5 million.

46. **Parris vs. Lowe's Home Improvement**, Los Angeles Superior Court. Class action seeking payment of "off the clock" hours worked by all hourly employees of Lowe's in the State of California. Plaintiffs' counsel. Case ordered certified by Order of the Court of Appeals, Second Appellate District, California, on reversal of trial court order denying certification. Case settled for $29.5 million.

47. **Pardo, et.al. vs. Toyota Motor Sales**, U.S.A., et.al., Los Angeles Superior Court. Plaintiffs' class counsel. Wage and hour class action settled for $7.75 million.

48. **Fulton vs. Cisco Systems, Inc.**, Orange County Superior Court. Wage and hour litigation seeking overtime and related compensation. Plaintiffs' class counsel. Settled for $6.7

million.

49. **Van Heyn vs. WMC Mortgage Corp**., Los Angeles Superior Court.  Action for violation of Labor Code §§ 2802 and 2804, etc. for failure to reimburse employees for business expenses.  Case settled for $3 million.

50. **In re: JB Hunt Transport Class Action**, United States District Court for the Central District of California.  Class counsel for certified class.  Action seeks unpaid regular and overtime compensation.

51. **Pasquale vs. Kaiser Foundation Hospitals**, United States District Court for the Southern District of California.  Class counsel.  Action sought overtime and related compensation for misclassified employees.  Case settled for $3.7 million.

52. **Poston vs. Marcus & Millichap Real Estate Investment**, Los Angeles Superior Court.  Action for violation of Labor Code §§2802 and 2804, etc. for failure to reimburse employees for business expenses.  Class counsel.  Case settled for $1,340,000.

53. **Trejo vs. Oakley, Inc.,** Orange County Superior Court.  Action for violation of several provisions of the Labor Code.  Class counsel.  Settlement for $3.75 million was preliminarily approved pending final approval.

54. **Dotson vs. Royal SunAlliance**, Orange County Superior Court. Class action seeking overtime compensation for insurance claims adjusters employed by defendant in the State of California. Plaintiffs' counsel.  Case settled in 2005 for $12.3 million.

55. **Schenck v. Jenny Craig, Inc**., Orange County Superior Court.  Class action under Consumer Legal Remedies Act, certified as a liability class and settled as a mandatory settlement class for in excess of $40 million in cash and benefits.  Served as plaintiffs' counsel.

56. **Harris vs. Vector Marketing Corp.,** United States District Court, Northern District of California.  Class Counsel.  Final approval of $13 million settlement granted.

**57. Hopkins v. Stryker Sales Corp.,** United States District Court, Northern District of California.  Class Counsel.  Settled in 2013.

58. **Barber vs. Buy.Com**, Orange County Superior Court.  Certified class action claiming negligent misrepresentation.  Plaintiff class counsel.  Class certified and settled in 2000.

59. **In re: America Online Litigation**, Los Angeles Superior Court.  Consumer action involving coordinated California class actions.  Lead Plaintiffs' Counsel.  Also appeared in the class action venued in Chicago as counsel for the California objectors to the Illinois settlement of that matter.

60. **Ko and Chen v. Chinese Yellow Pages**, Los Angeles Superior Court.  Consumer action involving failure to reimburse per contract for limited production of yellow pages.  Lead Plaintiffs' Counsel.  Class Certified and then settled prior to trial.

61. **Ortega vs. AIG**, USDC, Central District.  Co-lead Counsel for Plaintiffs in overtime mis-classification case.  Case settled and all settlement funds distributed.

62. **Cohen, et. al. vs. The Regents of the University of California**, Los Angeles Superior Court.  Counsel for the Regents in pending complex consolidated action involving the claims of over 350 plaintiffs.  Case resolved.

63. **Berner vs. Kraft Foods, Inc**., USDC, Central District.  Counsel for Plaintiffs in "off the clock" action, plus meal and break time.  Case settled.

64. **Rounsavall vs. Countrywide Home Loans, Inc.,** Los Angeles Superior Court.  Lead counsel in class action claiming mis-classification of computer driven underwriting positions.  Case settled for $15 million and all settlement funds have been distributed.

65. **Ortmann vs. New York Life Insurance**, USDC, Central District.  Class action involving alleged failure to pay minimum wages to employed insurance agents, failure to reimburse, etc.  Matter settled for $10 million.

66. **In Re. ABS Plastics Litigation**, Alameda Superior Court.  Lead counsel for one of the two target defendants in Western Region (eleven states) product liability class action.  Case settled prior to certification, after extensive discovery and investigation.

67. **Higby vs. Fernwood Cemetery, et al**., San Francisco Superior Court.  Lead defense counsel for primary defendant in alleged cemetery/crematory violations action.  Class stipulated to by prior personal counsel, and then action defensed at one month trial by "binding arbitration" before JAMS, San Francisco.

68. **Bennett v. Regents of the University of California**, Los Angeles County Superior

Court.  Mass tort litigation.  Defense counsel for the Regents of the University of California (UCLA).  Certified as a class for injunctive relief only.  Defeated certification of liability class.  Summary judgment granted to defendant in connection with all liability claims.

69. **Simpson (Coghill) vs. Regents of the University of California**, Orange County Superior Court.  Mass tort litigation. Defense counsel for the Regents of the University of California (UCI). Certification motion defeated on behalf of our client.

70. **Sconce/Lamb Cremation Cases**, Los Angeles County Superior Court.  Mass tort/wrongful cremation litigation.  Served as lead defense counsel.  Settlement class certified.

71. **In Re Evergreen Class Action**, Riverside County Superior Court.  Mass tort/wrongful cremation.  Served as lead defense counsel.

72. **In Re Cheesecake Factory Class Action**, Los Angeles County Superior Court.  Class action claiming violation of the provisions of the Americans With Disabilities Act.  Served as co-lead defense counsel.

73. **In Re Leneda Crematory Class Action**, San Diego County Superior Court.  Mass tort/wrongful cremation action.  Served as mortuary defendants' lead counsel.

74. **In Re Pomona Cemetery Class Action**, Los Angeles County Superior Court.  Mass tort/wrongful cremation.  Served as member of defense counsel executive committee.

75. **Brock v. McCormick**, Orange County Superior Court.  Mass tort class action litigation.  Defendants' lead counsel.  Settlement class certified.

76. **In Re Paradise Memorial Park Litigation**, Los Angeles County Superior Court.  Mass tort/improper burial practices class action litigation.  Defendants' liaison counsel.  Settlement class certified.

77. **In Re Lincoln Cemetery Class Action**, Los Angeles County Superior Court.  Mass tort/wrongful burial practices class action litigation.  Liaison counsel for mortuary defendants.  Settlement class certified.

78. **In Re Computer Monitor Class Action**, San Francisco Superior County Superior Court.  Nationwide class action, including claims under the Consumer Legal Remedies Act, pertaining to false advertising of computer monitors.  Member, plaintiffs' executive committee.

19

Declaration of Stan Saltzman ISO Plaintiffs' Notice of Motion and Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement CASE NO. 3:15-cv-02198-EMC

79. **In Re Mini-blinds Class Action**, Alameda County Superior Court. Nationwide class action, including claims under the Consumer Legal Remedies Act, pertaining to lead content of mini-blinds. Member, plaintiffs' executive committee.

80. **Barton vs. UHS of Delaware, Inc,** Los Angeles Superior Court. Wage and hour class action. Class Counsel. Final settlement approval granted.

81. I have tried numerous jury and bench trials to judgment. Other members of the firm have also tried many cases to verdict. Our firm concentrates its efforts on areas of litigation, with a great emphasis on class action litigation, and complex litigation.

82. Our firm is committed to working with the representative plaintiffs herein, and with co-counsel, to protect the interests of the class and the plaintiffs. We are familiar with the law as it applies to the legal and factual issues relevant to this matter. The firm is prepared to dedicate the necessary personnel and resources, and has the capability of doing the same, to prepare for and try this matter to judgment.

83. Based on all of the foregoing, I believe that the firm of Marlin & Saltzman, and those attorneys in the firm who will be actively handling this matter, are also more than qualified to be appointed as class counsel, to represent the interests of the class members herein. Further information about the firm can be obtained at our website, located at www.marlinsaltzman.com.

84. Simpluris is an experienced class administration company, and has acted as claims administrator in numerous wage and hour cases throughout the country, including several matters in which this declarant has been counsel for the class.

I declare under penalty of perjury, pursuant to the laws of the United States and of the State of California that the forgoing is true and correct and to the best of my personal knowledge. This declaration is executed on July 19, 2016, at Agoura Hills, California.

/s/ Stanley D. Saltzman

Stanley D. Saltzman