UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR VICERAL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MISTRAS GROUP, INC.,<br><br>Defendant. | Case No. 15-cv-02198-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Docket No. 70 |

## I.  INTRODUCTION

Plaintiffs Edgar Viceral and David Krueger brought this class and collective action against Defendant Mistras Group, Inc., alleging violations of the California Labor Code and the Fair Labor Standards Act (FLSA). Docket No. 38 (First Amended Compl.) (FAC) at ¶ 1. Plaintiffs seek to represent current and former non-exempt hourly employees who worked as examiners and technicians. *Id.* at ¶ 13. Plaintiffs allege that they were not paid for time spent in training or when traveling between designated meeting places and their work assignments, and that this failure to pay wages was violated the overtime requirement of the Fair Labor Standards Act (FLSA) and various California Labor Code provisions. *Id.* at ¶¶ 32-33, 37. Pending before the Court is Plaintiffs' motion for preliminary approval of a class action settlement and a final approval of a FLSA collective action settlement. Docket No. 70 (Mot.). The Court **GRANTS** the motion.

## II.  FACTUAL & PROCEDURAL BACKGROUND

A.  Litigation History

Plaintiff Edgar Viceral filed a state-court complaint on April 13, 2015 alleging that Mistras required employees to complete certain Internet-based training programs in addition to their daily duties, but failed to compensate employees for the time spent participating in the mandatory online

training.[1]  Docket No. 36 (Order to Amend the Compl.) at 3.  Based on this failure, Viceral brought actions for violations of California labor laws and the FLSA.  *Id.*  Around the same time, Plaintiff David Krueger filed an action in the Eastern District of California alleging that Mistras had failed to pay employees for the time spent traveling to and from customer worksites and while performing mandatory training, in violation of various California laws.  *Id.* at 4.  Given the overlap of parties and substantive claims, the parties stipulated to combine the two cases and file a consolidated complaint in this Court.  *Id.* at 5.  The Court granted the stipulation on November 20, 2015.  *Id.* at 8.

        Plaintiffs filed their amended complaint on November 24, 2015.  In that complaint, the parties allege that Plaintiffs and the putative class and collective action members are non-exempt technicians who conduct non-destructive testing services to test the integrity of energy, industrial, and public infrastructure.  FAC at ¶ 14.  Plaintiffs allege that these employees were required to complete online training courses at home, but were not compensated for the time spent doing so.  *Id.* at ¶ 26.  Plaintiffs also allege that they were not provided proper meal breaks, but instead frequently worked through their meal and rest breaks.  *Id.*  Plaintiffs also assert that Mistras would schedule Plaintiffs to work 80 hours every two weeks on an alternative schedule, such that during the first week they would be scheduled to work nine hours per day on Monday through Thursday and eight hours per day on Friday, and in the second week they would be scheduled to work nine hours per day Monday through Thursday.  *Id.* at ¶ 27.  Despite this scheduling, however, Mistras allegedly required Plaintiffs to work twelve hours per day Monday through Thursday of both weeks, and ten hours per day on Fridays.  *Id.*

        Plaintiffs further allege that before reporting to work on-site at the facilities of Mistras's customers, technicians would be required to meet each day at designated locations where they would drop off their personal vehicles.  *Id.* at ¶¶ 38.  Mistras would then provide Plaintiffs with their work instructions and directives for the day and transport them to their worksites – sometimes located as far as forty or fifty miles away – via company vans or trucks.  *Id.* at ¶¶ 39,

---

[1] Mistras subsequently removed to Federal Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

41. Thus, the travel time could take an hour in each direction, adding two hours of work time to an employees' workday. *Id.* at ¶ 41. Mistras, however, allegedly excluded this travel time from the calculation of time worked. *Id.*

Finally, Plaintiffs contend that Mistras would instruct Plaintiffs to take their meal breaks during their sixth or seventh hour of work and would not make a second meal break available, despite Plaintiffs' routinely working more than ten hours a day. *Id.* at ¶ 51.

Based on these allegations, Plaintiffs brought a nationwide FLSA collective action on behalf of all persons employed as non-exempt hourly examiners and technicians within the last three years, alleging that Mistras failed to pay overtime wages, including but not limited to training time. *Id.* at ¶¶ 67, 88. Plaintiffs also brought a California class action on behalf of all persons employed as non-exempt hourly examiners and technicians within the last four years. *Id.* at ¶ 75. This California class brought claims for: (1) failure to compensate for all hours worked, (2) failure to pay overtime, (3) failure to make available meal breaks, (4) failure to authorize rest breaks, (5) failure to provide accurate wage statements, (6) waiting time penalties, (7) unfair business practices, and (8) Private Attorneys General Act (PAGA) penalties. *Id.* at ¶ 93-166.

No substantive motions were ever filed in this case. Instead, on May 4, 2016, the parties filed a status report and notice of settlement. Docket No. 59.

B.   Settlement Agreement

Under the Settlement Agreement, Mistras has agreed to pay a "Gross Settlement Amount" of $6,000,000 to settle the claims at issue. Docket No. 70-2 (Settlement Agreement) at ¶ 30. This Gross Settlement Fund includes: (1) settlement awards to California class members who do not exclude themselves from the case, (2) settlement awards to FLSA class members who opt in, (3) a $20,000 PAGA settlement, $5,000 of which will go back to the California class members, (4) Plaintiffs' counsel's fee award (up to 1/3 of the Gross Settlement Amount, or $2,000,000), (5) Plaintiffs' counsel's expense award (estimated at $42,000), (6) service awards of $8,500 for the named Plaintiffs ($7,500 for Viceral and $1,000 for Krueger), and (7) administration costs (currently projected to be $45,940.35). *Id.* at ¶¶ 1, 16, 40. This leaves a Net Settlement Amount (including $5,000 from the PAGA settlement) of $3,888,559.65. *See* Mot. at 9.

3

The Net Settlement Amount will be allocated by distributing 65% of the Net Settlement Amount to the California Class and 35% to the FLSA Class. Settlement Agreement at ¶ 53(b). The California Class includes "all current and former hourly, non-exempt Technicians, Inspectors and Examiners employed by Defendants in California during the California Class Period." *Id.* at ¶ 2. The California Class Period is the period beginning April 10, 2011 through the date of final approval. *Id.* at ¶ 4. There are approximately 1,253 California Class members. Docket No. 70-1 (Saltzman Dec.) at ¶ 8. The FLSA Class includes "all current and former hourly, non-exempt Technicians, Inspectors, and Examiners who were employed by Defendants in the United States during the FLSA Class Period." Settlement Agreement at ¶ 19. The FLSA Class Period is the period beginning April 10, 2012 through the date of final approval. *Id.* at ¶ 20. There are approximately 4,723 FLSA Class Members, including the 1,253 California Class members. Saltzman Dec. at ¶ 8.

The settlement payments for each class member will be calculated based on the number of Individual Work Weeks (the number of weeks of employment for each class member, excluding leaves of absence). *Id.* at ¶¶ 26, 53(b). It is expected that a California Class member will receive approximately $24[2] per week worked (up to $1,248/year), while a FLSA class member will receive approximately $5.06[3] per week worked (up to $263/year). Mot. at 9.

In exchange for this monetary payment, the California Class releases the following claims:

> [A]ll claims, demands, rights, liabilities and causes of action that were or could have been asserted in the Lawsuit (whether in tort, contract, or otherwise) for violation of the California Labor Code, the California Business & Professions Code, the Labor Code Private Attorneys General Act of 2004, the applicable Industrial Welfare Commission Wage Orders or any other similar state or federal law, including but not limited to those based in any part on the FLSA, whether for unpaid wages, economic damages, non-economic damages, liquidated damages, punitive damages, restitution, penalties, other monies, or other relief arising out of, relating to, or in connection with any facts and/or claims pled in the class action complaints filed by Edgar Viceral and/or David Krueger, and/or in

---

[2] This number is the result of the following formula: $3,888,559.65 x .65 = $2,527,563.77 / 105,111 work weeks = $24.05.

[3] This number is the result of the following formula: $3,888,559.65 x .35 = $1,360,995 / 269,043 work weeks = $5.06.

4

> the Consolidated First Amended Class Action Complaint filed by Plaintiffs in the Lawsuit, which are or could be the basis of claims that Defendant failed to provide all wages and overtime wages due, failed to pay the minimum wage, failed to provide timely or accurate final paychecks, failed to timely pay compensation, engaged in recordkeeping violations, failed to provide accurate itemized wage statements, failed to provide meal breaks, failed to authorize and permit rest breaks, and/or engaged in unfair business practices based on the foregoing violations, at any time during the California Class period up through the time of Final Approval.

Settlement Agreement at ¶ 5.

In turn, the FLSA Class releases the following claims:

> [A]ll claims, demands, rights, liabilities and causes of action that were or could have been asserted in the Lawsuit (whether in tort, contract, or otherwise) for violation of the Fair Labor Standards Act whether for unpaid wages, economic damages, non-economic damages, liquidated damages, punitive damages, restitution, penalties, other monies, or other relief arising out of, relating to, or in connection with any facts and/or claims pled in the class action complaints filed by Edgar Viceral and/or David Krueger, and/or in the Consolidated First Amended Class Action Complaint filed by Plaintiffs in the Lawsuit, which are or could be the basis of claims that Defendant failed to provide all wages and overtime wages due, failed to pay the minimum wage and/or engaged in recordkeeping violations, at any time during the FLSA Class Period.

Settlement Agreement at ¶ 21.

Upon preliminary approval from this Court, the Settlement Administrator is to send a Notice Packet to the California Class. *Id.* at ¶¶ 66, 68. The Notice Packet will include a means for California Class members to exclude themselves. *Id.* at ¶ 72. The California Class members will then have 45 days to exclude themselves or file objections.[4] *Id.* at ¶ 34. The Notice Packet also provides a means of disputing the number of individual work weeks. Joint Supp. Br., Exh. E. The Settlement Agreement does not provide for notice to the FLSA Class members prior to Final Approval. *See* Joint Supp. Br. at 19. Following final approval, the Settlement Administrator will send the settlement payment to the California Class members. Settlement Agreement at ¶¶ 67, 76. The Settlement Administrator will also send the settlement payment to the FLSA Class members,

---

[4] If a Notice Packet is returned to the Settlement Administrator as undeliverable, the Settlement Administrator is to make reasonable efforts to locate a forwarding address and resend the Notice Packet, along with a letter giving the recipient until the original 45-day deadline or 7-days after re-mailing the Notice Packet to opt-out or object, whichever date is later. Settlement Agreement at ¶ 68.

5

along with a Notice Packet explaining the terms of the settlement and their right not to opt in by not cashing the check. *Id.* ¶ 74; *see also* Docket No. 70-2 Ex. 2. The check accompanying the Notice Packet includes language on the back indicating that by cashing the check, the FLSA Class Member has elected to opt in to the settlement. Docket No. 72-1 Ex. A. The Notice Packet to the FLSA Class will also provide a means of disputing the number of individual work weeks. Joint Supp. Br., Exh. H. Funds from uncashed checks will escheat to the California Industrial Relations Unclaimed Wages Fund. Settlement Agreement at ¶ 76.

### III.   DISCUSSION

A.   Certification of the California Class

Before determining the fairness of a class action settlement agreement, the Court must determine whether the settlement class meets the requirements for class certification under Federal Rule of Civil Procedure 23. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The Court must first "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Id.*

1.   Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court finds that numerosity is met in this case, as the combined California and FLSA Classes include over 4,500 members.

2.   Commonality

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient." *Hanlon*, 150 F.3d at 1019. Here, Plaintiffs allege systemic practices and policies regarding Defendant's payment of wages, including with respect to travel and training time. The Court finds that these allegations give rise to common questions of law and fact, and the commonality requirement is therefore satisfied.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The Court finds that this requirement is satisfied, as the claims of the named Plaintiffs are the same as those brought on behalf of the Class as a whole.

### 4. Adequacy

The adequacy requirement is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, there is no evidence of any conflicts of interest between the named Plaintiffs and their counsel and the rest of the class. Furthermore, counsel and the class have vigorously prosecuted the action, as evidenced by their securing of this settlement despite Mistras's robust defense. Counsel is experienced in class action litigation. The Court therefore finds that the adequacy requirement is satisfied.

### 5. Rule 23(b)

In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under" Rule 23(b). *Hanlon*, 150 F.3d at 1022. The parties argue that certification is appropriate under Rule 23(b)(3), under which the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). First, the Court finds that predominance is satisfied because all of Plaintiffs' claims arise from allegations of Mistras's systemic practices and policies, and accordingly, liability may be determined on a classwide basis. Defendants' proffered evidence that its policies and practices in

fact comply with the labor code also appears to be susceptible to classwide treatment. The fact that damages among individual class members may have to be determined individually does not defeat certification. *See* Newberg on Class Actions § 4:54 (5th ed.) (stating that "individual damage calculations should not scuttle class certification under Rule 23(b)(3)"). Second, the Court agrees that a class action is superior to other methods for adjudicating the controversy, since individual actions would involve relatively small claims for damages, and thus "would prove uneconomic for potential plaintiffs," since "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1022.

The Court therefore provisionally certifies the California Class under Rule 23 for settlement purposes.

B. <u>Certification of the FLSA Class</u>

The FLSA authorizes "opt-in" representative actions "where the complaining employees are similarly situated." *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006 WL 824652, at *2 (N.D. Cal. Mar. 28, 2006) (citing 29 U.S.C. § 216(b)); *see generally Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989). While "[n]either the FLSA nor the Ninth Circuit have defined 'similarly situated,'" this Court has understood it to be a more lenient standard than is applicable under Rule 23. *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010). In managing an FLSA representative action, "[f]or conditional certification at this notice stage, the court requires little more than substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Gerlach*, 2006 WL 824652 at *2 (quoting *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 at 1102 (10th Cir. 2001)). The Court finds that Plaintiffs' allegations meet this standard, and the Court accordingly grants provisional certification of the FLSA class.

C. <u>Standard of Review</u>

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." As the Ninth Circuit has explained, "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re*

8

*Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008); *see also Allen v. Bedolla*, 787 F.3d 118, 1222 (9th Cir. 2015). This inquiry requires that the Court balance factors such as the strength of the plaintiffs' case, the risk and expense of further litigation, the risk of maintaining class action status, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a government participant, and the reaction of the class members of the proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (listing factors to determine fairness and adequacy). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, Case No. 13-cv-4065-VC, -- F. Supp. 3d --, 2016 WL 1394236, at *4 (N.D. Cal. Apr. 7, 2016) (internal quotation omitted).

Prior to formal class certification, "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Ninth Circuit has therefore explained that "where . . . the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (internal quotation marks omitted).

Because the parties have agreed to the present Settlement Agreement prior to class certification, this Court must apply the more "exacting" standard in determining whether this settlement is fair, adequate, and reasonable.

"District courts have interpreted Rule 23(e) to require a two-step process for the approval

9

of class action settlements: the Court first determines whether class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re High-Tech Emp. Antitrust Litig.*, Case No. 11-CV-2509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014) (internal quotation omitted). As a general matter, "there is relatively scant appellate authority regarding the standard that a district court must apply in reviewing a settlement at the preliminary approval stage." *Id.* Although the Ninth Circuit has not specified what standard should apply at the preliminary approval stage, "district courts often state or imply that scrutiny should be more lax." *Cotter v. Lyft*, Case No. 13-cv-4065-VC, -- F. Supp. 3d --, 2016 WL 3561742, at *3 (N.D. Cal. June 23, 2016). More recently, however, courts have begun to question this "lax review," noting that it "makes little practical sense, from anyone's standpoint." *Id.* at *4. Rather, "by scrutinizing the agreement carefully at the initial stage and identifying any flaws that can be identified, the court allows the parties to decide how to respond to those flaws (whether by fixing them or opting not to settle) before they waste a great deal of time and money in the notice and opt-out process." *Id.*; *see also O'Connor v. Uber Technologies, Inc.*, No. 13-CV-03826-EMC, 2016 WL 4398271, at *8 (N.D. Cal. Aug. 18, 2016).

Taking into account the more "exacting review" required for a settlement reached prior to class certification, this Court has previously explained that "[a]t the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011). But because the settlement must be carefully scrutinized even at the preliminary approval stage, the Court, in applying the *Harris* test – particularly the question whether the settlement falls within the range of possible approval – must fully and closely consider all of the applicable factors enumerated in *Hanlon* and *Churchill Village*. *See Hanlon*, 150 F.3d at 1026; *Churchill Vill.*, 361 F.3d at 575.

The Court will first address whether the settlement falls within the range of possible

approval, placing particular weight on "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; [and] (4) the amount offered in settlement," *Churchill Vill.*, 361 F.3d at 575, before turning to the remaining *Harris* factors.

D.  Whether the Settlement Falls Within the Range of Possible Approval

The Court first considers whether the Settlement Agreement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at *9.

The Settlement Agreement provides for a deep discount on the claims being released. Under the Agreement, Mistras has agreed to pay $6,000,000, of which 65% ($3,900,000) is to go to the California Class while 35% ($2,100,000) goes to the FLSA Class. Joint Supp. Br. at 7. By comparison, Plaintiffs estimate the California claims to have a verdict value of $33,536,339 and the FLSA overtime claim to have a verdict value of $40,356,450. *Id.* The California class, in other words, is receiving 11.6% of the full verdict value of the claims being released, while the FLSA class is receiving just 5.2% of the full verdict value. In total, the Settlement Agreement is worth 8.1% of the full verdict value. This is a significant discount. This Court has previously denied approval of settlements with similarly steep markdowns. *See, e.g.*, *Harris v. Vector Mktg. Corp.*, 2011 WL 4831157, at *15 (N.D. Cal. Oct. 12, 2011) (denying final approval of a settlement where the actual payout to the class was 6.56% of the maximum verdict value); *Cotter*, 2016 WL 1394236, at *8, 11 (denying preliminary approval where the settlement was 8.82% of the reimbursement claim and requiring that the settlement be increased to 17% of the value of the reimbursement claim).

The Court recognizes, however, that the value of a settlement cannot be assessed in a vacuum. Rather, it must be considered in light of "the strength of the plaintiff's case" and the risks in pursuing further litigation, among other factors. *Churchill Vill.*, 361 F.3d at 575. In this case, those risks for the Plaintiffs are daunting.

The parties identify the following defenses that Mistras has raised to Plaintiffs' off-the-

11

1  clock claims: (1) Class Members did not perform off-the-clock work, (2) the off-the-clock work
2  was *de minimis*, (3) Mistras properly paid Class Members for compensable training time, (4)
3  Mistras provided Class Members with the required meal and rest breaks, (5) Mistras paid Class
4  members for all hours worked, including overtime, and (6) Mistras properly implemented
5  alternative workweek schedules in California, thus avoiding overtime liability. Joint Supp. Br. at
6  12. In their joint supplemental briefing, the parties state that counsel for Mistras had collected
7  over 500 "individualized and non-cookie-cutter declarations" from employees in support of these
8  defenses. *Id.* at 14. These declarations "generally and overwhelmingly stated" that the putative
9  class members recorded all hours worked, were paid their standard and/or overtime rates, never
10 worked unrecorded hours, were never instructed to work off the clock, recorded all mandatory
11 online training, were paid for all such training, and were paid overtime for all overtime recorded.
12 *Id.* at 14-15. At hearing, the parties clarified that the declarations specifically refuted key elements
13 of Plaintiffs claims. For example, many declarants stated that they were never required to take
14 company transportation to client worksites; to the contrary, such transportation was available, but
15 employees were free to drive themselves.

16 Furthermore, counsel for Plaintiffs stated at the hearing that their own investigation, after
17 receiving the class list, bore out many of Mistras's claims and, at best, confirmed substantial
18 variability in the experiences of the employees. This concession makes it evident that Plaintiffs
19 faced serious risks in litigating the merits of their claims; it also suggests they may face
20 evidentiary problems in maintaining class certification. *See Churchill Vill.*, 361 F.3d at 575
21 (noting that "the risk of maintaining class action status throughout the trial" is one of the factors to
22 be considered in evaluating the reasonableness of a settlement). Based on the record, it is fair to
23 conclude that if the case were prosecuted, there is a very highly likelihood that no class recovery
24 would be obtained.

25 Accordingly, the Court concludes that in light of the particular facts of this case, the 91.2%
26 discount on the verdict value of Plaintiffs' class claims is reasonable. Mistras has a robust fact-
27 based defense that presents enormous risks on the merits (as well as on the certifiability of a class
28 action) to Plaintiffs. Under these circumstances, Plaintiffs' counsel reasonably concluded that the

12

1 sharply discounted settlement presented the best possibility for recovery on behalf of the class – in
2 short, a deeply discounted recovery is better than the substantial likelihood of recovering nothing.

### E. Settlement Process

An additional factor the Court examines is the means by which the parties arrived at settlement. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris*, 2011 WL 1627973, at *8 (internal quotation omitted); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

Here, the parties' settlement was the product of an arm's length negotiation, which included a more than 10-hour mediation session with Mr. Mark S. Rudy. Saltzman Dec. at ¶ 13. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive" *Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). The Court is satisfied that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel.

### F. The Presence of Obvious Deficiencies

The next factor the Court considers is whether there are obvious deficiencies in the Settlement Agreement. There are two potentially problematic aspects of the Agreement.

#### 1. PAGA

The parties allocate just $20,000 to the PAGA claim, or 0.15% of its total value of $12,952,000. *See* Joint Supp. Br. at 7. In other words, the PAGA claim is discounted by greater orders of magnitude than the already deeply discounted California and FLSA claims. The parties argue that this amount is justified for two reasons. First, in pursuing the PAGA claim, the plaintiffs face the same risks on the merits, which, as noted above, are considerable. Second, the parties note that the PAGA statute permits a trial court to "exercise its discretion to award lesser penalties based on the enumerated considerations." Joint Supp. Br. at 16 (quoting *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135 (2012); *see also* Cal. Lab. Code § 2699(e)(2) (providing that "a court may award a lesser amount than the maximum civil penalty

amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory").

As to the first argument, Plaintiffs are correct: the PAGA claim is subject to the same risk on the merits as the non-PAGA claims given Defendant's robust showing on the merits. This warrants the same order of discount as applied to the non-PAGA claims value. As to the second argument, a further discount is warranted given that it appears that courts have often exercised discretion to reduce PAGA verdicts below the statutory penalty. In supplemental briefing on this question, the parties identified cases in which courts reduced PAGA awards by roughly 30%-80%. *See* Docket No. 82.

Despite these discounts, a settlement of less than 1% (*i.e.*, 0.15%) of the verdict value of a PAGA claims raises substantial concern as that portion of the settlement still represents an order of magnitude less than would be indicated by the two risk factors discussed above. Recently, in *O'Connor v. Uber Technologies*, *Inc.*, No. 13-CV-03826-EMC, 2016 WL 4398271, at *18 (N.D. Cal. Aug. 18, 2016), this Court noted that "where plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment." *Cf. Armour v. Network Associates, Inc.*, 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (noting that as a class representative, the lead plaintiff in a Rule 23 class action owes a fiduciary duty to the represented class). Moreover, "[s]uch a plaintiff also owes responsibility to the public at large; they act, as the statute's name suggests, as a private attorney general, and 75% of the penalties go to the LWDA 'for enforcement of labor laws . . . and for education of employers and employees about their rights and responsibilities under this code.'" *O'Connor*, 2016 WL 4398271, at *18 (quoting Cal. Lab. Code § 2699(i)). Accordingly, it is "important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, [and] consistent with the underlying purpose of the statute to benefit the public." *Id.* at 17 (quoting Labor & Workforce Development Agency Resp. at 2-3). The Court must be mindful of the "temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip, wherein the rights of individuals who may not even be members of the class and the public may be waived for little additional consideration in order to induce the employer to agree to a

1  settlement with the class." *Id.* at *18.

2       *O'Connor* explained that in evaluating the adequacy of a settlement of a PAGA claim,
3  courts may employ a sliding scale, taking into account the value of the settlement as a whole. *Id.*
4  Thus, where a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be
5  fulfilled even with a relatively small award on the PAGA claim itself, because such "a settlement
6  not only vindicates the rights of the class members as employees, but may have a deterrent effect
7  upon the defendant employer and other employers, an objective of PAGA." *Id.*

8       As in *O'Connor*, the Rule 23 settlement here is severely discounted. But unlike *O'Connor*,
9  the Rule 23 settlement, when the risks on the merits are taken into account, is actually more than
10 minimally reasonable; indeed, given the likelihood of no recovery, the settlement is in fact
11 relatively substantial. Applying *O'Connor*'s sliding scale approach, settlement of the PAGA
12 claim may be substantially reduced below its standalone settlement value without sacrificing its
13 statutory purposes because the non-PAGA settlement is relatively substantial. Moreover, unlike
14 *O'Connor*, the PAGA claims are subject to a very high risk on the merits; the differential between
15 the settlement and verdict values of PAGA claims are not as great as in *O'Connor*. Finally, the
16 potential value of the PAGA claim in the instant case represents only about 14% of the total
17 potential verdict value of all claims. In *O'Connor*, by contrast, the PAGA claim represented over
18 50% of the potential verdict. Thus, a substantial reduction of the PAGA claim in this case has less
19 impact on the total recovery for the class than a similar PAGA reduction had in *O'Connor*. When
20 all is said and done, the settlement represents 7.2 % of the total verdict value of this case. Under
21 the particular circumstances of this case, that settlement, as a whole, is within the range of possible
22 approval.

23      In short, while the Court is mindful of the need to safeguard the statutory purposes of
24 PAGA and to ensure that the parties do not use a PAGA claim as a mere bargaining chip, and
25 while the Court would ordinarily be highly skeptical of a settlement that amounts to a tiny fraction
26 of the value of the PAGA claim, under the unusual and peculiar circumstances of this case where
27 Plaintiffs face a substantial risk of recovering nothing on either the PAGA or class claims, the
28 Court concludes that the settlement of the PAGA claim is reasonable in the context of the

settlement as a whole.

### 2. Counsel's Fees

At hearing, the Court also raised substantial questions about Counsel's fees. Plaintiff's counsel stated in the Motion for Preliminary Approval that their lodestar is $1,007,859. They are seeking a fee award of $2,000,000 – one third of the settlement amount, and nearly a 2.0 multiplier. This a potentially over-generous award in a case in which counsel achieved only limited success, wherein the class is recovering less than 10% of the verdict value of its claims.

Counsel argues that the fee award is justified because, given the facts of the case, which overwhelmingly favored Mistras, there was substantial risk to pursuing litigation, and thus *any* recovery was a significant success. But this rationale would have the perverse effect of rewarding counsel for taking on weak or otherwise dubious cases. Under this reasoning, the worse the case, the higher the risk, and thus, the higher the acceptable fee multiplier. The Court will not countenance such a "no lose" proposition.

Counsel also explained at hearing, however, that it expects to expend significant additional time and resources on this case, and that the multiplier is accordingly misleading, as its lodestar will ultimately be significantly higher. Thus, while the Court has serious concerns about the fee award, the requested award is not a basis for denial of settlement approval at this juncture. The motion for fees will be dealt with at the appropriate time.

### G. Preferential Treatment

Lastly, the Court examines whether the Settlement Agreement provides preferential treatment to any class member. The Court concludes that it does not. It is true that some of the Agreement's terms appear to favor the California Class over the FLSA Class. For example, 65% of the Settlement Fund is allocated to the California class, even though the FLSA claims are, in total, worth more than the California claims ($33,536,339 for the California claims vs. $40,356,450 for the FLSA claims). Joint Supp. Br. at 7. Yet the recovery on the FLSA claims has been more sharply discounted; the Agreement calls for the class to receive roughly 5% of the value of the FLSA claims, but approximately 12% of the value of the California claims.

As class counsel has explained, however, the FLSA class is a nationwide class, made up of

individuals who worked in numerous states and for various Mistras customers. For that reason, counsel's interviews revealed greater variation in the experiences of potential class members, indicating that it would be more difficult to obtain class certification. This fact increases the risk of pursuing the FLSA claims as a national class, and justifies an even greater discount than applies to the Rule 23 California class claims. Accordingly, the more generous provision accorded to California Class members under the Settlement Agreement does not reflect an unfair preferential treatment.

H. <u>Class Notice</u>

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill.*, 361 F.3d at 575. Here, the parties have agreed that separate notice packets will be mailed to California and FLSA Class Members, at their last known addresses. If any notice packets are returned as undeliverable, the Settlement Administrator will make reasonable efforts to locate an updated address, including through a skip trace. The Court agrees that this is the most efficient and effective method for notifying Class Members.

The Court has also reviewed the content of the proposed notices, and finds that both the California and FLSA notices adequately inform prospective Class Members of "**(i)** the nature of the action; **(ii)** the definition of the class certified; **(iii)** the class claims, issues, or defenses; **(iv)** that a class member may enter an appearance through an attorney if the member so desires; **(v)** that the court will exclude from the class any member who requests exclusion; **(vi)** the time and manner for requesting exclusion; and **(vii)** the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The Court notes that Class Members in both classes are not required to affirmatively make a claim to receive payment. With respect to the FLSA Class, both the Notice Packet and the check accompanying it sufficiently inform Class Members of their option not to opt in by not cashing the check. Finally, the notices also inform

17

1 prospective Class Members of their right to object, and explain how to do so. The Court therefore
2 approves the proposed notice procedures.

### IV. CONCLUSION

In light of the substantial risks to Plaintiffs, demonstrated by a robust showing on the merits by Defendant which has not been met by any substantial rebuttal by Plaintiffs, the Court finds the proposed settlement, though sharply discounted, is sufficiently within the range of reasonableness and **GRANTS** preliminary approval of the parties' proposed Settlement Agreement. As discussed above, the Court also **GRANTS** provisional certification of the California and FLSA classes, and **APPROVES** the proposed notice procedures.

The Court hereby authorizes the retention of Simpluris as Settlement Administrator for the purpose of the Settlement with reasonable administration costs estimated not to exceed $50,000.00.

The Court hereby conditionally appoints Schneider Wallace Cottrell Konecky Wotkyns LLP, Marlin & Saltzman, LLP, and United Employees Law Group, P.C. as Counsel for the California Class, and Plaintiffs as Class Representatives for the California Class.

The Court hereby conditionally appoints Schneider Wallace Cottrell Konecky Wotkyns LLP, Marlin & Saltzman, LLP, and United Employees Law Group, P.C. as Counsel for the FLSA Class, and Plaintiffs as FLSA Class Representatives for the FLSA Class.

Finally, the Court directs the parties to file an updated proposed order setting forth all relevant dates and deadlines.

This order disposes of Docket No. 70.

**IT IS SO ORDERED**.

Dated: October 11, 2016

_____
EDWARD M. CHEN
United States District Judge