1   Stanley D. Saltzman, Esq. (SBN 090058)
    William A. Baird, Esq. (SBN 192675)
2   MARLIN & SALTZMAN, LLP
    29229 Canwood Street, Suite 208
3   Agoura Hills, California 91301
    Telephone:     (818) 991-8080
4   Facsimile:     (818) 991-8081
    ssaltzman@marlinsaltzman.com
5   tbaird@marlinsaltzman.com

6   Carolyn Hunt Cottrell (SBN 166977)
    Nicole N. Coon (SBN 286283)
7   SCHNEIDER WALLACE
    COTTRELL KONECKY WOTKYNS LLP
8   2000 Powell Street, Suite 1400
    Emeryville, California 94608
9   Telephone:     (415) 421-7100
    Facsimile:     (415) 421-7105
10  ccottrell@schneiderwallace.com
    ncoon@schneiderwallace.com
11
    Walter Haines, Esq. (SBN 71075)
12  UNITED EMPLOYEES LAW GROUP, P.C.
    5500 Bolsa Ave., Suite 201
13  Huntington Beach, California 92649
    Telephone:     (888) 474-7242
14  Facsimile:     (562) 256-1006

15  Attorneys for Plaintiffs
    and the Settlement California Class and FLSA Class
16

17                  **UNITED STATES DISTRICT COURT**

18                 **NORTHERN DISTRICT OF CALIFORNIA**

19  EDGAR VICERAL and DAVID              )   **CASE NO. 3:15-cv-02198-EMC**
    KRUEGER, individually and on behalf of  )   **(Assigned to Hon. Edward M. Chen)**
20  all others similarly situated,       )
                                         )   **CLASS ACTION**
21                  Plaintiffs,          )
                                         )   **BRIEF IN SUPPORT OF PLAINTIFFS'**
22          v.                           )   **UNOPPOSED MOTION FOR ATTORNEYS'**
                                         )   **FEES, COSTS, AND ENHANCEMENT**
23  MISTRAS GROUP, INC.; and DOES 1-     )   **AWARDS**
    50, inclusive,                       )
24                                       )   DATE: February 2, 2017
                    Defendant.           )   TIME:  1:30 p.m.
25                                       )   CTRM: 5
                                         )
26  _____ )
27
28

i

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

1

**TABLE OF CONTENTS**

2  I.     INTRODUCTION ...................................................................................................1

3  II.    PROCEDURAL HISTORY AND WORK PERFORMED BY CLASS COUNSEL ...........2

4         A.    Class Counsel ............................................................................ 2

5         B.    Early Litigation Communications with Class Members ........................ 2

6         C.    Pleadings ................................................................................... 2

7         D.    Tolling Agreement ....................................................................... 3

8         E.    Case Management/Conferences/Status Reports.................................. 3

9         F.    Discovery .................................................................................. 4

10        G.    Class Outreach ........................................................................... 5

11        H.    Settlement Negotiations and Mediation ............................................ 6

12        I.    Settlement Approval Motions ......................................................... 7

13        J.    Communicating with the Administrator ............................................ 8

14        K.    Analysis/Strategy ....................................................................... 8

15        L.    Administrative Communications ..................................................... 9

16        M.    Correspondence with Counsel........................................................ 9

17        N.    Administrative Filings/Matters ...................................................... 9

18        O.    Travel ...................................................................................... 9

19 III.    ARGUMENT ......................................................................................................9

20        A.    One-Third of the Common Fund is a Reasonable Attorneys' Fees Award. ............. 9

21              1.    The Court should apply the common fund doctrine to award attorneys'
                       fees. ....................................................................................... 9

22
                2.    Ninth Circuit precedent and California law support an increased
23                     attorneys' fees award from the 25% benchmark to 33 1/3% in wage
                       and hour class actions................................................................ 11

24        B.    Class Counsel's Fee Award is Reasonable Under the Facts of this Case. .............. 12

25              1.    The fee request is justified by the excellent monetary results. ................... 12

26              2.    The risks associated with this litigation justify the fee request.................. 13

27              3.    Class Counsel's skill and quality of work justify the fee request. .............. 16

28

4.      The contingency nature of the fee and financial burden carried by Class Counsel justifies the fee request ......................................................... 17

5.      Class Members' positive reaction to the requested fee award supports its approval. ................................................................................. 17

C.      The Lodestar Cross-Check Confirms the Reasonableness of the Fee Award......... 17

1.      The Ninth Circuit confirms fee awards with a lodestar cross-check. ......... 17

2.      A multiplier is justified under applicable law. ............................................ 18

3.      Class Counsel's rates are reasonable........................................................... 19

4.      The number of hours claimed is reasonable................................................. 20

D.      Class Counsel's Costs are Reasonable and Compensable from the Settlement...... 20

E.      The Enhancement Awards to Plaintiffs are Reasonable. ........................................ 21

1.      Plaintiffs took extraordinary measures and invested substantial time and effort for the benefit of the Class Members. ........................................ 22

2.      Class Members received a substantial benefit from Plaintiffs' efforts. ...... 23

3.      Plaintiffs took on substantial risk in bringing this class action.................. 23

IV.     CONCLUSION............................................................................................................24

# TABLE OF AUTHORITIES

**Federal Cases**

*Amaral v. Cintas Corp. No. 2*
163 Cal.App.4th 1157 (2008) ........................................... 17

*Asare v. Change Grp. of N.Y., Inc.*
No. 12 Civ. 3371(CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)............................. 24

*B&F System Inc. v. LeBlanc*
No. 7:07-cv-192, 2012 WL 2529191 (M.D. Ga. June 29, 2012)........................................ 21

*Barbosa v. Cargill Meat Sols. Corp.*
297 F.R.D. 431 (E.D. Cal. 2013) ................................. 12

*Birch v. Office Depot, Inc.*
No. 06cv1690 DMS (S.D. Cal. Sept. 28, 2007) ................................... 12

*Bleimehl v. Eastman Kodak Co. Clinical Diagnostic Div.*
1997 WL 33322218 (S.D. Iowa Jan. 27, 1997) ....................................... 21

*Bui v. Sprint Corp.*
No. 2:14-cv-02461-TLN-AC, 2016 WL 727163 (E.D. Cal. Feb. 24, 2016) ..................... 12

*Camacho v. Bridgeport Fin., Inc.*
523 F.3d 973 (9th Cir. 2008)........................................ 20

*Cho v. Koam Med. Servs. P.C.*
524 F.Supp.2d 202 (E.D.N.Y. 2007)........................................ 21

*Cicero v. DirectV, Inc.*
2010 WL 2991486 (C.D. Cal. July 27, 2010) ........................... 12, 14

*David Krueger v. Mistras Group, Inc.*
No. 2:15-cv-01069 (E.D. Cal. 2015)........................................ 1, 2, 3, 23

*DeWitt v. Darlington Cnty., S.C.*
No. 4:11-cv-00740-RSH, 2013 WL 6408371 (D.S.C. Dec. 6, 2013) ............................... 24

*Ellmore v. Ditech Funding Corp.*
No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) ........................................ 13

*Espinoza v. Domino's Pizza, LLC*
2012 WL 5462550 (C.D. Cal. Nov. 7, 2012)........................................ 22

*Ferland v. Conrad Credit Corp.*
244 F.3d 1145 (9th Cir. 2001)........................................ 18

*Fischel v. Equitable Life Assurance Soc'y of U.S.*
307 F.3d 997 (9th Cir. 2002)........................................17, 18

*Franco v. Ruiz Food Prods., Inc.*
No. 1:10-cv-02354, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012)................................. 12

iii

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

*Garcia v. Gordon Trucking, Inc.*
    No. 1:10-CV-0324 AWI AKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ................. 12

*Garner v. State Farm Mut. Auto. Ins. Co.*
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................... 22

*Glass v. UBS Fin. Servs., Inc.*
    No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452
    (9th Cir. 2009) ........................................................................................................ 22

*Harris v. Vector Marketing Corp.*
    716 F.Supp.2d 835 (N.D. Cal. 2010) ...................................................................... 17

*Harris v. Vector Marketing Corp.*
    753 F.Supp.2d 996 (N.D. Cal. 2010) ...................................................................... 17

*Harris v. Vector Mktg. Corp.*
    No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012).............................. 22

*Hilton v. Exec. Self Storage Assocs., Inc.*
    2009 WL 1750121 (S.D. Tex. June 18, 2009) ........................................................ 21

*In Re Activision Sec. Litig.*
    723 F.Supp. 1373 (N.D.Cal. 1989) ........................................................................ 12

*In Re Armored Car Antitrust Litig.*
    472 F.Supp. 1357 (N.D. Ga.1979) .......................................................................... 13

*In re Bluetooth v. Headset Prods. Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011).......................................................................... 10, 18

*In Re Four Seasons Secs. Laws Litig.*
    58 F.R.D. 19 (W.D. Okla.1972) .............................................................................. 14

*In re Heritage Bond Litig.*
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ........................................................ 18

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir.2000)................................................................................... 13

*In re Online DVD-Rental Antitrust Litig.*
    No. 12-15705, 2015 WL 846008 (9th Cir. Feb. 27, 2015) ...................................... 23

*In Re Pacific Enter. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)................................................................................... 12

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*
    148 F.3d 283 (3d Cir. 1998)................................................................................... 19

*Ingalls v. Hallmark Mktg. Corp.*
    No. 08cv4342 (C.D. Cal. Oct. 16, 2009) ................................................................ 12

*Jordan v. Multnomah Cnty.*
    799 F.2d 1262 (9th Cir. 1986)............................................................................... 20

iv

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

*Knight v. Red Door Salons, Inc.*
    No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................. 12, 14

*Lazarin v. Pro Unlimited, Inc.*
    No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) .............................. 22

*Levinson v. About.com Inc.*
    No. 02-cv-2222, 2010 WL 4159490 (S.D.N.Y. Oct. 7, 2010) .................................. 21

*Martin v. FedEx Ground Package Sys., Inc.*
    No. C 06-6883 VRW, 2008 WL 5478576 (N.D. Cal. Dec. 31, 2008) .............................. 12

*McCown v. City of Fontana*
    565 F.3d 1097 (9th Cir. 2009) ........................................................ 13

*Moore v. James H. Matthews & Co.*
    682 F.2d 830 (9th Cir. 1982) ......................................................... 20

*Mousai v. E-Loan, Inc.*
    No. C 06-01993 SI (N.D. Cal. May 30, 2007) ............................................ 22

*Murillo v. Pac. Gas & Elec. Co.*
    2010 WL 2889728 (E.D. Cal. July 21, 2010) ............................................. 21

*Nwabueze v. AT&T Inc.*
    No. 3:09-1529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ........................... 11

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*
    688 F.2d 615 (9th Cir. 1982) ......................................................... 13

*Ozga v. U.S. Remodelers, Inc.*
    No. C 09-05112 JSW, 2010 WL 3186971 (N.D. Cal. Aug. 9, 2010) ......................... 22

*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268 (9th Cir. 1989) ......................................................... 11

*Quezada v. Con-Way Freight, Inc.*
    No. 09-cv-3670 (N.D. Cal. Jan. 15, 2015) ............................................. 12

*Razilov v. Nationwide Mut. Ins. Co.*
    2006 WL 3312024 (D. Or. Nov. 13, 2006) ............................................... 22

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*
    No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) .......................... 12

*Rodriguez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ......................................................... 22

*Romero v. Producers Dairy Foods, Inc.*
    No. 1:05cv0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ..................... 12, 14

*Rulli, et al. v. Nielsen Co. (U.S.) LLC*
    No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) ....................................... 21

*Rutti v. Lojack Corp., Inc.*
    2012 WL 3151077 (C.D. Cal. July 31, 2012) ........................................... 21

v

*Sandoval v. Tharaldson Employee Mgmt., Inc.*
    No. EDCV 08-482-VAP(OP), 2010 WL 2486346 (C.D. Cal. June 15, 2010) ............ 22, 23

*Singer v. Becton Dickinson & Co.*
    2010 WL 2196104 (S.D. Cal. June 1, 2010) ...................................................... 12

*Six (6) Mexican Workers v. Ariz. Citrus Growers*
    904 F.2d 1301 (9th Cir. 1990) ........................................................................... 11

*Spann v. J.C. Penney Corp.*
    No. SACV120215FMOKESX, 2016 WL 5844606 (C.D. Cal. Sept. 30, 2016) ................ 19

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ........................................................................... 10, 22

*Stuart v. Radioshack Corp.*
    No. c-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ................................. 12

*Taylor v. FedEx Freight, Inc.*
    No. 113CV01137 DADBAM, 2016 WL 6038949 (E.D. Cal. Oct. 13, 2016) ................... 19

*Van Vranken v. Atl. Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................... 12, 19, 22

*Vasquez v. Coast Valley Roofing*
    266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................... 12

*Vizcaino v. Microsoft Corp.*
    142 F.Supp.2d 1299 (W.D. Wash. 2001) *aff''d* 290 F.3d 1043 (9th Cir. 2002) .......... 11, 18

*Walling v. Portland Terminal Co.*
    330 U.S. 148 (1947) ........................................................................................... 17

*Williams v. MGMPathe Commc'n Co.*
    129 F.3d 1026 (9th Cir. 1997) ........................................................................... 12

*Wooldridge v. Marlene Indus. Corp.*
    898 F.2d 1169 (6th Cir. 1990) ........................................................................... 20

*Wren v. RGIS Inventory Specialists*
    No. C-06-05778, JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)............................ 12

**State Cases**

*Barela v. Ralph's Grocery Co.*
    No. BC070061 (Los Angeles Super. Ct., June 5, 1998) .................................... 13

*Big Lots Overtime Cases*
    JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004) .............................. 13

*Castellanos* v. *The Pepsi Bottling Group*
    No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) .................................... 22

*Contreras v. Bank of America*
    No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) ......................... 22

*Davis v. The Money Store, Inc.*
   No. 99AS01716 (Sacramento Super. Ct., Dec. 26, 2000)...................................... 13

*Edgar Viceral, et al. v. Mistras Group, Inc., et al.*
   No. CGC-15-545291 (Cal. Super. Ct., San Francisco filed April 13, 2015) ............. 1, 2, 23

*Graham v. DaimlerChrysler Corp.*
   34 Cal.4th 553 (2004) ............................................................................................ 20

*Hasty v. Elec. Arts, Inc.*
   No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006).................................... 22

*Horsford v. Bd. of Trustees of Cal. State Univ.*
   132 Cal.App.4th 359 (2005) ................................................................................ 19

*Ketchum v. Moses*
   24 Cal.4th 1122 (2001) ........................................................................................ 19

*Laffitte v. Robert Half Int'l Inc.*
   376 P.3d 672 (2016)................................................................................................ 19

*Laffitte v. Robert Half Int'l Inc.*
   No. S222966, 2016 WL 4238619 (Cal. Aug. 11, 2016) ...................................... 7

*Meewes v. ICI Dulux Paints*
   No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) ...................................... 22

*Miskell v. Auto. Club of S. Cal.*
   No. 01CC09035 (Orange County Super. Ct., May 27, 2003)................................... 13

*Novak v. Retail Brand Alliance, Inc.*
   No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009).................................. 22

*Sconce/Lamb Cremation Cases*
   JCC Proceeding No. 2085 (Los Angeles Super. Ct., Mar. 24, 1992) ...................... 13

*Serrano v. Priest*
   20 Cal.3d 25 (1977) ............................................................................................ 20

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS Section 14.7 .................................................. 19

Alba Conte, *Attorney Fee Awards* Section 2:8 (3rd ed. 2013)..................................... 10

## I. INTRODUCTION

Plaintiffs seek an award of attorneys' fees pursuant to the common fund doctrine in the amount of $2,000,000.00, an award of $44,575.02[1] for actual litigation costs, and enhancement awards in the amount of $7,500.00 to Named Plaintiff Edgar Viceral and $1,000.00 to Named Plaintiff David Krueger for their service as Class Representatives.

The Settlement is an excellent result for the Class Members, benefitting approximately 5,140[2] Mistras employees.  An order awarding Plaintiffs' requested attorneys' fees ensures that benefitting Class Members contribute a *pro-rata* share towards the fees; it mimics the marketplace had the Class Members each individually retained Class Counsel; and it encourages competent counsel to take on complex contingency cases such as this.  In addition, this is a reasonable award because it is commensurate with the awards approved by this and other courts in comparable class actions.  Courts routinely award attorneys' fees that exceed the plaintiffs' recovery because such awards encourage the vindication of important employee rights. Plaintiffs recognize that the "benchmark" rate for attorneys' fees in class actions in the Ninth Circuit is 25%.  However, the facts in this case support an upward adjustment to 33 1/3%:  (1) Class Counsel have obtained an excellent result for Class Members; (2) Class Counsel faced considerable risks in prosecuting this litigation; (3) Class Counsel displayed skillful representation and high quality work in litigation against a Defendant represented by experienced counsel who vigorously defended the case; (4) the work resulted in this Settlement benefitting 5,140 employees; (5) Class Counsel carried the heavy financial burden of representing Class Members on a contingency fee basis; and (6) not one Class Member has submitted a written objection to the requested award.  Moreover, Plaintiffs' fee request is reasonable under the lodestar-multiplier method and justified under applicable law. Furthermore, Class Counsel's lodestar will continue to increase based on the work that will be required to complete final approval of as well as the administration of the Settlement.

---

[1] In their preliminary approval motion, Plaintiffs noted their costs to be approximately $42,000.00. Class Counsel's actual costs to date are now $44,575.69.

[2] In their preliminary approval motion, Plaintiffs noted that the class size was approximately 4,732. Based on the records produced by Defendant to the Administrator, the total number of Class Members is actually 5,140. There are 1,324 California Class Members. Not all California Class Members are FLSA Class Members: 111 are only California Class Members, 1,123 are both California and FLSA Class Members. 3,826 are only FLSA Class Members.

Likewise, Plaintiffs' request for reimbursement of costs of $44,575.02 should be approved. This amount will only increase with the additional costs necessary to finalize this Settlement.

Finally, enhancement awards in the amount of $7,500.00 to Named Plaintiff Viceral and $1,000.00 to Named Plaintiff Krueger are appropriate because they spent considerable time assisting with the prosecution and resolution of this case, undertook financial and personal burdens to represent the Class Members, and assumed the financial and reputational risk of serving as the Class Representatives.  The requested enhancement awards fall well within the range of service awards routinely granted by courts.

## II. PROCEDURAL HISTORY AND WORK PERFORMED BY CLASS COUNSEL

### A.  Class Counsel

Class Counsel are highly-regarded members of the wage and hour and employment class action bar, with extensive experience in this highly-specialized type of litigation.  Cottrell Decl. at ¶¶ 6-12; Saltzman Decl. at ¶ 2.

### B.  Early Litigation Communications with Class Members

Class Counsel conducted initial investigations and completed intake interviews of workers, including the Named Plaintiffs, who were interested in understanding their legal rights. Cottrell Decl. at ¶ 17. These communications, intakes, and investigations were necessary to support filing an action against Defendant and inform litigation strategy. *Id.* The total amount of hours expended by Class Counsel on these communications was 31.60. *Id.* at ¶ 18.[3]

### C. Pleadings

On April 13, 2015, Plaintiff Viceral filed a class action complaint against Defendant Mistras Group, Inc.in the San Francisco County Superior Court, entitled *Edgar Viceral, et al. v. Mistras Group, Inc., et al.*, No. CGC-15-545291 (Cal. Super. Ct., San Francisco filed April 13, 2015) ("*Viceral*").  Cottrell Decl. at ¶ 19. Defendant removed the *Viceral* action to the United States District Court for the Northern District of California, on May 15, 2015. *Id.* Defendant thereafter filed a Notice of Other Action or Proceeding on May 27, 2015, alerting the Court and Parties of a related

---

[3] The breakdown of Schneider Wallace Cottrell Konecky Wotkyns LLP ("SWCKW")'s total lodestar by project is detailed at ¶¶ 18,21, 23, 25, 34, 38, 41, 46, 48, 49, 52, 54, 56, and 58 of the Cottrell Declaration.

2

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

class action: *David Krueger v. Mistras Group, Inc.*, No. 2:15-cv-01069 (E.D. Cal. 2015) proceeding before the Honorable Morrison C. England, Jr., in the United States District Court for the Eastern District of California ("*Krueger*").  *Id. Krueger* was filed on April 10, 2015 in the Kern County Superior Court. *Id.* On May 18, 2015, Defendant removed the *Krueger* action to the United States District Court for the Eastern District of California. *Id.*

On May 27, 2015, Defendant filed notices alerting each Plaintiff to the parallel proceedings. *Id.* at ¶ 20. On June 10, 2015, Plaintiff Krueger filed oppositions to both notices. *Id.* Counsel for Plaintiff Viceral, Plaintiff Krueger, and Defendant met and conferred on numerous occasions to coordinate the two cases. *Id.* Ultimately, the Parties agreed to combine the proceedings in this Court by way of an amended complaint. *Id.* To that end, Plaintiff Krueger requested dismissal of his class claims in the separate Krueger action, without prejudice, on September 4, 2015. *Id.* Plaintiff Krueger's request was granted by Order dated September 9, 2015. *Id.* Plaintiffs filed their First Amended Complaint on November 24, 2015 pursuant to this Court's Order of November 20, 2015. *Id.* at ¶ 21[4]. The total hours expended by Class Counsel on the pleadings total 152.50.  *Id.*

### D. Tolling Agreement

The Parties negotiated a tolling agreement with respect to FLSA Class Members, who had not yet opted in to the litigation, to preserve their statute of limitations. Cottrell Decl. at ¶ 22. To memorialize their agreement, the Parties executed a Stipulation on Tolling on December 31, 2015. *Id*. The total hours expended by Class Counsel on the tolling agreement total 20.00.  *Id*. at ¶ 23.

### E. Case Management/Conferences/Status Reports

Coordination of both cases in a single proceeding required the Parties to work together to manage the case.  Cottrell Decl. at ¶ 24. The Parties to the proceedings in the Eastern District of California entered two separate stipulations to continue the filing of a joint status report before entering a stipulation to vacate all deadlines upon Plaintiff Krueger's request for voluntary dismissal of that action on September 4, 2016.  *Id*. Similarly, the Parties to the proceedings in this action entered into two stipulations to continue the initial case management conference. *Id*. The Parties ultimately prepared a Joint Case Management Statement in advance of the November 24, 2015 Case

---

[4] The Pleading category utilized by Marlin & Saltzman, LLP ("M&S") includes other pleadings.

Management Conference in this Court.  *Id*. Following the Case Management Conference, the Parties submitted a Joint Proposed Schedule. *Id*. The total hours expended by Class Counsel on case management matters total 125.00. *Id*. at ¶ 25.

**F. Discovery**

The Parties engaged in extensive and contentious discovery in this action, including formal written discovery, depositions, and informal discovery to facilitate mediation. Cottrell Decl. at ¶ 26. To facilitate discovery, the Parties Stipulated to a Protective Order, which the Court entered on March 11, 2016. *Id.* at ¶ 27. Plaintiffs propounded a combined total of four sets of Special Interrogatories, with a combined total of 42 Special Interrogatories. *Id.* at ¶ 28.  In addition, Plaintiffs propounded one Set of Requests for Production of Documents, with a total of 80 Requests. Defendant made numerous objections to Plaintiffs' written discovery.  *Id.* This necessitated numerous meet and confer sessions, which resulted in the production of additional documents and supplemental interrogatory responses.  *Id.* Defendant produced thousands of pages of documents in this action. *Id.* Plaintiff deposed Defendant pursuant to F.R.C.P. 30(b)(6), including taking the depositions of Julie Marini (Mistras Group Vice President of Human Resources) and Dennis Bertolotti (Mistras President of Group Services/Interim CEO). *Id.* at ¶ 29. These depositions required significant preparation and coordination. *Id.* Plaintiffs also responded to written discovery propounded by Defendant in this action. *Id.* at ¶ 30.  Moreover, Defendant deposed Plaintiff Krueger.  *Id.* Defendant also noticed the deposition of Plaintiff Viceral, causing Class Counsel to conduct the initial pre-deposition preparation.  *Id.* However, the case resolved at mediation before Plaintiff Viceral was deposed. *Id.*

In addition to formal discovery efforts, the Parties coordinated an informal exchange of information in connection with the mediation. *Id.* at ¶ 31.  To facilitate mediation, Defendant produced specific Class Member payroll and financial information as well as time records.  *Id.* In particular, Defendant provided Plaintiffs with state-by-state information for the statutory period(s) regarding the total number of California Class and FLSA Class Members, their work locations, the number of weeks worked cumulatively by the California Class and the FLSA Class Members, and their average hourly rate. *Id.* Defendant further provided payroll and timekeeping data for Plaintiffs and all other Class Members. *Id.*

Specifically, Defendant produced the Class and Collective lists on January 15, 2016, and February 19, 2016, respectively. *Id.* at ¶ 32. In addition, Defendant produced: (1) the two Named Plaintiffs' timekeeping documents, wage statements, training logs, and personnel files; (2) a list of the Mistras offices throughout the U.S.; (3) AWS documents; and (4) numerous handbooks and policies, including its U.S. Employee Handbook, job descriptions, document retention polices, California meal and rest break policies, payroll policies, dispute resolution policy, meal period waiver, and examples of training materials; and numerous complaints filed against Mistras. *Id.* Defendant also produced a sampling of information and documents for Class and Collective Members. *Id.* Defendant produced a sample of training logs, the number of hours worked by day, the number of days worked by year, and payroll data for Class and Collective Members; and examples of weekly time summaries, handwritten timecards, pre-EPIP reports by employees, weekly payroll reports, timecard reports, punch cards, Mistras daily work reports, Mistras non-billable timesheets, earning statements, weekly customer timecards, weekly timesheets, vacation/PTO notification, Mistras weekly T&M reports, and training logs. *Id.*

To engage in meaningful settlement negotiations, Class Counsel reviewed the discovery and conducted a damages analysis based on the discovery described above. *Id.* at ¶ 33. This involved significant entry of data contained within the documents. *Id.* This process was time-intensive, requiring input of information from thousands of documents for analysis. *Id.* Once the information was inputted in a useable format, Class Counsel used the data to compute an hourly rate, the average number of work shifts in the relevant class periods, the average number of work weeks in the relevant class periods, and the average amount of overtime worked under both California law and the FLSA. *Id.* Class Counsel also used this data to approximate the number of missed meal and rest periods under California law. *Id.* Class Counsel used these figures to calculate total damages for missed meal and rest breaks, Labor Code § 226 penalties, Private Attorneys General Act ("PAGA") penalties, waiting time penalties, and overtime under both California law and the FLSA. *Id.*

The total hours expended by Class Counsel on discovery total 428.60. *Id.* at ¶ 34.

### G. Class Outreach

Class Counsel spent extensive time communicating with putative California Class Members and FLSA Class Members in this case. Cottrell Decl. at ¶ 35. In addition to the pre-filing

5

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

investigation addressed above, this included substantial outreach efforts during the course of litigation in which Class Counsel conducted detailed interviews addressing the uniformity of job duties, daily work descriptions, pay policies and practices, overtime policies and practices, off the clock policies and practices, meal and rest break policies and practices, as well as other relevant areas of inquiry. *Id.*

Class Counsel completed a substantial number of interviews. *Id.* at ¶ 36. This was time-consuming, intensive, and a critical aspect of the case. *Id.* This data informed Class Counsel's analysis of the damages in this action. *Id.* Ultimately, this information was instrumental in negotiating a Settlement of this action. *Id.* Moreover, this information would have been used in support of a certification motion as well as in response to a possible decertification motion filed by Defendant. *Id.*

In addition, Class Counsel has engaged in continued communications with the California Class and FLSA Class responding to inquiries regarding the Settlement. *Id.* at ¶ 37.

The total hours expended by Class Counsel on class outreach and communications total 255.60. *Id.* at ¶ 38.

**H. Settlement Negotiations and Mediation**

After analysis of the responsive discovery as well as other gathered data, and believing that this case was appropriate for consensual resolution given the high level of risk present for both sides, the Parties agreed to attend mediation. Cottrell Decl. at ¶ 39. Thereafter, the Parties engaged in further in-depth informal discussions in anticipation of the mediation. *Id.* On April 5, 2016, the Parties attended a formal mediation in San Francisco with Mark S. Rudy, Esq. – a well-respected mediator who specializes in wage and hour class actions. *Id.* at ¶ 40. After over 10 hours of extensive negotiations, the mediation concluded without a settlement, but with clear progress having been made. *Id.* Thereafter, through Mr. Rudy's ongoing efforts, the Parties continued to discuss possible resolution of the Action. *Id.* After over a month of such discussions, the Parties eventually agreed to broad settlement terms. *Id.* The Parties then drafted and executed the Settlement. *Id.* The total hours expended by Class Counsel on mediation and negotiations total 139.90. *Id.* at ¶ 41.

### I. Settlement Approval Motions

On May 4, 2016, Class Counsel submitted a Joint Notice of Settlement, and Stipulation and [Proposed] Order to Vacate All Pending Deadlines. Cottrell Decl. at ¶ 42.  The Court set a briefing schedule on May 6, 2016.  *Id*. The Court subsequently modified the briefing schedule upon subsequent stipulations.  *Id*.

Class Counsel drafted and prepared appropriate moving papers and filed them on July 19, 2016. *Id*. at ¶ 43. Thereafter, on August 2, 2016, the Court issued an order, requesting supplemental briefing on Plaintiffs' preliminary approval motion. *Id*. The Court requested that the Parties address ten topics: (1) attorneys' fees, including submitted *ex parte* and under seal their billing records with a detailed description; (2) expected recovery per Class Member; (3) full verdict value of the case; (4) distribution of the settlement fund; (5) risks of litigation; (6) FLSA affirmative opt-in; (7) notice to FLSA Class Members; (8) response to objections from Class Members; (9) CAFA notice; and (10) Class notice for California Class. *Id*. Class Counsel worked diligently to research and draft responses to the Court's inquiries. *Id*. Class Counsel drafted a supplemental brief, revised Class notices and accompanying documents, and corresponding declarations as well as briefing and documentation supporting their fee request. *Id*.[5] These materials were filed with the Court on August 9, 2016. *Id*. Class Counsel supplemented their preliminary approval motion on August 12, 2016, filing a Statement of Recent Decision to present the case *Laffitte v. Robert Half Int'l Inc.*, No. S222966, 2016 WL 4238619 (Cal. Aug. 11, 2016) to the Court's attention. *Id*. The Court then held a hearing on Plaintiffs' motion on August 17, 2016, which Class Counsel attended and at which Class Counsel responded to the Court's further inquiries. *Id*. On August 23, 2016, the Court issued an order requesting further supplemental briefing regarding the PAGA recovery in this action. *Id*. Plaintiffs drafted and filed a supplemental brief on August 30, 2016. *Id*. On October 11, 2016, the Court issued an order granting Plaintiffs' motion, and also requested that the Parties submit a proposed order regarding the timeline for the remaining settlement motions and approval procedure in the matter. *Id*. Class Counsel worked with Defendant to finalize a schedule. *Id*. The proposed schedule was submitted to the Court on October 18, 2016, and the Court signed off on the schedule. *Id*.

---

[5] The process of collecting and submitting billing records is explained in more detail below.

7

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

Class Counsel also spent significant time preparing this fee motion. *Id*. at ¶ 44. Beyond drafting this motion and researching applicable case law, Class Counsel also conferred with each other regarding the arguments to include herein and the most effective way to present Class Counsel's fees and costs to the Court. *Id.* In addition, Class Counsel undertook the time-consuming project of reviewing each individual bill, or time entry, for this case and determining whether each entry warranted a request for recovery. *Id.* Finally, rather than present a large, disorganized file of time entries to the Court, Class Counsel reasoned that the most effective way for the Court to review Class Counsel's attorneys' fees is on a project-by-project basis. *Id.* Accordingly, Class Counsel assigned each time entry a "project code," which allowed them to filter from all of the time entries only those assigned to a particular project. *Id.* For example, based on their coding system, Class Counsel was able to filter all the time entries associated with pleadings. *Id.* Class Counsel also undertook the same time-consuming project to submit their billing records in obtaining preliminary approval. *Id.*

Class Counsel is likewise obligated to request that the Court finally approve the Settlement following the administration process detailed in the Settlement. Cottrell Decl. at ¶ 45. Class Counsel is drafting and preparing final approval papers that will be submitted to the Court by December 29, 2016. *Id.*

To date, the total hours expended by Class Counsel on settlement approval total 275.3. *Id*. at ¶ 46. Both the hours expended on settlement approval and Class Counsel's lodestar will continue to increase through the finalization of this litigation. *Id.*

**J. Communicating with the Administrator**

To facilitate the administration of the Settlement, Class Counsel needed to secure an administrator.  Cottrell Decl. at ¶ 47.  In addition to the time already spent communicating with the Administrator, Class Counsel must work with the Administrator regarding the distribution of notices, deadlines called for by the Settlement, and the disbursement of funds to the California Class and FLSA Class should the Court grant final approval. *Id*. The total hours expended by Class Counsel communicating with the administrator total 19. *Id*. at ¶ 48.

**K. Analysis/Strategy**

Class Counsel regularly spent time strategizing regarding litigation tactics.  Cottrell Decl. at

8

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

¶ 49.  This is necessary to succeed in contested and complex litigation. *Id*. The total hours expended by Class Counsel on strategy and analysis total 111.20. *Id.* at ¶ 50.

**L. Administrative Communications**

Administrative communications includes those in-person and telephonic communications between Class Counsel and their staff to facilitate the progression of the litigation. Cottrell Decl. at ¶ 51.  The total hours spent by Class Counsel on such communications total 408.55. *Id.* at ¶ 52.

**M. Correspondence with Counsel**

Correspondence with Counsel includes those in-person and telephonic communications between Class Counsel as well as Class Counsel's communications with Counsel for Defendant. Cottrell Decl. at ¶ 53.  These communications were necessary litigation efforts. *Id*. The total hours spent by Class Counsel on such communications total 209.60. *Id.* at ¶54.

**N. Administrative Filings/Matters**

Several administrative filings were required to litigate this action.  Cottrell Decl. at ¶ 55. This includes drafting and filing letters to the California Labor and Workforce Development Agency ("LWDA") to pursue PAGA claims, completing a certificate of interested entities, completing a consent/declination to proceed before a United States Magistrate Judge, updating Class Counsel's address, noticing appearances and changes in counsel, completing ADR certification, and completing a stipulation and proposed order to continue the ADR deadline. *Id.* The total number of hours expended by Class Counsel on administrative filings and matters are 31.80. *Id.* at ¶ 56.

**O. Travel**

Class Counsel was required to travel to litigate this action. Cottrell Decl. at ¶ 57.  This includes cross-country travel to depose Defendant through Ms. Marini and Mr. Bertolotti. *Id.* This also includes travel to attend mediation and hearings. *Id.* at ¶ 58.  The total number of hours expended on travel are 32.70. *Id.*

**III. ARGUMENT**

**A. One-Third of the Common Fund is a Reasonable Attorneys' Fees Award.**

**1. The Court should apply the common fund doctrine to award attorneys' fees.**

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fees from the fund as a whole." *Boeing Co. v.*

9

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

*Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit routinely awards attorneys' fees pursuant to the common fund approach "[b]ecause the benefit to the class is easily quantified in common-fund settlements" and avoids the "often more time-consuming task of calculating the lodestar." *In re Bluetooth v. Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The common fund approach is an appropriate method for awarding attorneys' fees because it "ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). This approach ensures that class members, who have accepted the benefits from a common fund recovery, also accept their fair *pro-rata* responsibility to contribute towards the attorneys' fees and costs that created the fund in the first place. *Id.*

The equity of the common fund approach is confirmed by the fact that it mirrors the legal marketplace. The typical contingency fee contract ranges from 33 1/3 to 40% of the total recovery. *See* Alba Conte, *Attorney Fee Awards* § 2:8 (3rd ed. 2013). Thus, common fund fee awards of 33 1/3% are more than a reasonable charge to a class. *See Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299, 1304 (W.D. Wash. 2001) *aff'd* 290 F.3d 1043 (9th Cir. 2002).[6]

A common fund award of attorneys' fees and costs is appropriate here because Plaintiffs have created an ascertainable common fund from which reasonable attorneys' fees can be recovered. Cottrell Decl. at ¶ 78.  The proposed Settlement creates a common fund of $6,000,000.00 that will substantially benefit 5,140 Class Members. *Id.* Each participating Class Member will receive an ascertainable, *pro-rata* share of the Settlement. *Id.* In addition, Plaintiffs' requested fee award constitutes a fair charge to the Class Members for excellent result obtained by the Settlement. *Id.* The requested one-third of the fund is actually equal to the fee that Class Counsel would have expected if they had negotiated individual retainer agreements with each Class Member, which is typical in order to attract competent counsel in the marketplace for representation in wage and hour

---

[6] Specifically, "the common fund doctrine is properly applied if (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting.*" Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These requirements are met where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf." *Id.*

class actions of this nature. *Id.* Thus, the award ensures that Class Counsel receive an appropriate fee award for the actual benefit conferred to the Class. *Id.*

**2. Ninth Circuit precedent and California law support an increased attorneys' fees award from the 25% benchmark to 33 1/3% in wage and hour class actions.**

Class Counsel's request for approximately 33 1/3% of the Gross Settlement Amount is well within the range approved by courts in comparable class actions. In the Ninth Circuit, a 25% award is the "benchmark" amount of attorneys' fees, but courts adjust this figure upwards if the record shows "'special circumstances' justifying a departure." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). When deciding if a departure from the 25% benchmark is appropriate, courts may consider "the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck." *Nwabueze v. AT&T Inc.*, No. 3:09-1529 SI, 2013 WL 6199596, at \*10 (N.D. Cal. Nov. 27, 2013). Ultimately, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010).

In California, federal and state courts customarily approve payments of attorneys' fees amounting to one-third of the common fund in comparable class actions. In complex wage and hour class actions the courts have approved attorneys' fees for 33% of the settlement fund. *See Quezada v. Con-Way Freight, Inc.*, No. 09-cv-3670, Order Granting Final Approval ¶ 9, ECF No. 214 (N.D. Cal. Jan. 15, 2015) (awarding one-third of $2 million settlement fund as fees).[7] Many of these cases involved significantly shorter litigations. *Franco*, 2012 WL 5941801, at \*21 (settlement after two years of litigation); *Garcia*, 2012 WL 5364575, at \*10 (settlement after two-and-a-half years of

---

[7] *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354, 2012 WL 5941801, at \*15 (E.D. Cal. Nov. 27, 2012) (awarding $825,000 in attorneys' fees; 33% of the total settlement); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI AKO, 2012 WL 5364575, at \*8 (E.D. Cal. Oct. 31, 2012) (approving $1,221,000 in fees; 33% of the gross settlement); *Stuart v. Radioshack Corp.*, No. c-07-4499 EMC, 2010 WL 3155645, at \*5-\*7 (N.D. Cal. Aug. 9, 2010) (awarding one-third of $4.5 million settlement fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (awarding $100,000 in fees; 1/3 of the gross settlement); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at \*8 (E.D. Cal. Oct. 31, 2012) (approving fees of $1,221,000; 33% of the gross settlement); *Bui v. Sprint Corp.*, No. 2:14-cv-02461-TLN-AC, 2016 WL 727163, at \*7 (E.D. Cal. Feb. 24, 2016) (granting preliminary approval of fees in the amount of fees in the amount of $1,616,505.00; 33.33% of the gross settlement; Final Order granting fees in the same amount issued on July 20, 2016 at Docket No. 73).

---

11

litigation); *Vasquez*, 266 F.R.D. at 484 (settlement after less than three years of litigation); *Garcia*, 2012 WL 5364575, at *10 (settlement after two-and-a-half years of litigation).[8] California state courts have also approved similar fee awards in class action litigations. *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380, 1388 (2010) (awarding fees and costs amounting to 35% of the total recovery); *Roos v. Honeywell Int'l, Inc.*, 241 Cal. App. 4th 1472, 1494 (2015) (awarding up to 37.5% of a common fund).

**B. Class Counsel's Fee Award is Reasonable Under the Facts of this Case.**

Plaintiffs recognize that the "benchmark" rate for attorneys' fees in class actions in the Ninth Circuit is 25%; however, the facts in this case support an upward adjustment to 33 1/3%.

**1.The fee request is justified by the excellent monetary results.**

The ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Here, Plaintiffs, through Class Counsel, achieved a high level of success through the

---

[8] *See also Bui*, No. 2:14-cv-02461-TLN-AC (final approval order entered less than two years after litigation commenced); *Williams v. MGMPathe Commc'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (33% awarded); *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 297-98 (N.D. Cal. 1995) (citation to 73 district court opinions in which fees awarded ranged from 30 to 50%). *In Re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% fee award); *Quezada v. Con-Way Freight, Inc.*, No. 09-cv-3670 (N.D. Cal. Jan. 15, 2015, Order Granting Final Approval ¶ 9, ECF No. 214 (one-third); *Wren v. RGIS Inventory Specialists*, No. C-06-05778, JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (42%); *Stuart v. Radioshack Corp.*, No. c-07-4499 EMC, at *5-*7, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (one-third); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (30%); *Martin v. FedEx Ground Package Sys., Inc.*, No. C 06-6883 VRW, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) (one-third); *In Re Activision Sec. Litig.*, 723 F.Supp. 1373, 1375 (N.D.Cal. 1989) (noting that fee awards in common fund cases "almost always hover[] around 30%"); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (one-third); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (33 1/3%); *Ingalls v. Hallmark Mktg. Corp.*, No. 08cv4342, Doc. No. 77 (C.D. Cal. Oct. 16, 2009) (33 1/3%). *Cicero v. DirectTV, Inc.*, 2010 WL 2991486, at *7 (C.D. Cal. July 27, 2010) (case survey of class action settlements demonstrate that "50% [of settlement fund] is the upper limit, with 30-50% commonly awarded in cases in which the common fund is relatively small."); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (45%); *Birch v. Office Depot, Inc.*, No. 06cv1690 DMS (S.D. Cal. Sept. 28, 2007), Order Granting Final Approval ¶ 13, ECF No. 48 (40% fee); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (noting that "fee awards in class actions average around one-third of the recovery"). *See also Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004) (33%); *Barela v. Ralph's Grocery Co.*, No. BC070061 (Los Angeles Super. Ct., June 5, 1998) (same); *Davis v. The Money Store, Inc.*, No. 99AS01716 (Sacramento Super. Ct., Dec. 26, 2000) (same); *Ellmore v. Ditech Funding Corp.*, No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) (same); *Miskell v. Auto. Club of S. Cal.* (Orange County Super. Ct., No. 01CC09035, May 27, 2003) (same); *Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085, (Los Angeles Super. Ct., Mar. 24, 1992) (same).

monetary results of the Settlement.  The approximate Net Settlement Amount being disbursed to the Class Members is $3,885,984.63[9]. Cottrell Decl. at ¶ 80. A California Class Member will receive approximately $1,248.00 for each year worked. *Id.* Thus, a California Class Member that was employed the entire class period of 5.5 years stands to recover $6,864.00.  *Id.* A FLSA Class Member will receive approximately $263.00 for each year worked, and if employed for the entire class period of 4.5 years stands to receive $1,183.00.  *Id.*[10] The compensation that Class Members will receive under the settlement is reasonable when compared to the risks in seeking class certification and potentially proceeding to trial. Moreover, because this is a non-reversionary settlement, the Court is assured that the entire net settlement amount will be distributed to the Class Members. *Id.*[11]  A fee award of one-third of the common fund is appropriate in the context of the relief obtained on behalf of the Class Members here. *See Cicero*, 2010 WL 2991486, at *6; *Knight*, 2009 WL 248367, at *5 (awarding 30% of $500,000 settlement fund as fees); *Romero*, 2007 WL 3492841, at *4 (awarding 33% of $240,000 settlement fund).

> **2. The risks associated with this litigation justify the fee request.**

Class Counsel considered the uncertainty and risks of further litigation, the expense and duration of further litigation, and the burdens of proof necessary to achieve certification of the case, establish liability against Defendant, and defeat its defenses.

---

[9] This approximate amount is based on Simpluris's total current estimate of $45,904.35 (but not to exceed $50,000.00) and Class Counsel's actual costs to date of $44,575.02.

[10] In addition, The Gross Settlement Fund to the California Class is approximately 12% of the estimated combined value of the California class claims. *See* Joint Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement Pursuant to Court's August 2, 2016 Order (ECF Dkt. No. 72, p.7-11.). Further, the Gross Settlement Fund to the FLSA Class is approximately 5% of the combined value of the FLSA Class claims. *Id.*

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages).

[11] In evaluating the monetary results, it is also important to consider the uncertainty of the PAGA penalties. *See* Second Joint Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement Pursuant to Court's August 23, 2016 Order (ECF Dkt. No. 82).

First, litigating this action would not only delay recovery, but also would be expensive, time-consuming and involve substantial risk. Cottrell Decl. at ¶ 82. If this case were to go to trial as a class and collective action, Class Counsel estimate that fees and costs would exceed the $2,000,000.00 requested. *Id.* Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.* There is also the delay and duration of further litigation. *Id.* The litigation was filed in April 2015. *Id.* The matter has been pending for nearly one and a half years. *Id.* Certification and dispositive motions have yet to be filed. *Id.* The Court's previous Case Management and Pretrial Order for Jury Trial (ECF Doc. No. 43) scheduled nearly a year between class certification and trial. *Id.* In light of the current posture of the case, Class Counsel would still need to prepare and file a class certification motion. *Id.* Thus, the litigation would likely remain pending for nearly another year and a half, and potentially longer taking into consideration unforeseen delays and scheduling issues. *Id.*

The risks of maintaining class action status in this case as well as demonstrating Defendant's ultimate liability at trial are also significant. *Id.* at ¶ 83. Recovery of the damages and penalties would require complete success and certification of all of Plaintiffs' claims, a questionable feat in light of recent developments in wage and hour and class and collective action law as well as the legal and factual grounds that Mistras has asserted to defend this action. *Id.* Specifically, Mistras has asserted numerous complete liability defenses against Plaintiffs' claims, many of which were supported by the declarations gathered by Defendant. See generally Defendant's Answer to Consolidated First Amended Complaint (ECF Doc. No. 42); the declarations are discussed in detail below. *Id.* For example, Mistras raised several defenses to Plaintiffs' off-the-clock claims, including that (1) Class Members did not perform work off-the-clock; (2) any off-the-clock work was de minimis; (3) Mistras properly paid Class Members for compensable training time; (4) Mistras properly provided Class Members with legally compliant meal and rest breaks ; (5) Mistras paid Class Members for all hours worked, including overtime; and (5) Mistras properly implemented alternative workweek schedules in California, avoiding any overtime liability. *Id.* Mistras also

14

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

intended to raise several defenses against class certification, including (1) that individualized determinations regarding the type and amount of off-the-clock work, if any, completed by Class Members would overwhelm common issues; (2) that individualized determinations regarding the amount of wages owing, if any, would overwhelm common issues; and (3) whether Class Members actually took meal and rest breaks would overwhelm any common issues. *Id.* If Mistras succeeded on any of these or other defenses to class certification, Mistras would likely further argue that its success would necessarily impact Plaintiffs' derivative claims. *Id.* In the end, Plaintiffs would then be left with only their individual claims and the Class and Collective would potentially recover nothing. *Id.*

Thus, the risks of litigation are significant. This is particularly true since Defendant has represented to Class Counsel that the declarations it has collected support its defenses. *Id.* at ¶ 84. In particular, defense counsel has explained that the California Class Members and FLSA Class Members generally and overwhelmingly stated in individualized and non-cookie-cutter declarations that they: recorded all hours worked; were paid their standard and/or overtime rates for all hours recorded as worked; never worked unrecorded hours; were never instructed to work "off the clock"; recorded all mandatory online training; were paid for all such training; were paid overtime for all overtime recorded; that to the extent they attended voluntary trainings, they did so outside of their regularly scheduled work hours, they did not perform any other work duties during such training, that voluntary training involved topics related to new skills for a job other than their current job; and that they attended such trainings of their own accord and not at the behest of any supervisor; were not required to commute to work in any specific manner or vehicle; were allowed but not required to carpool; and did not perform work before or during commute to/from worksites. *Id.* In addition, California Class Members also stated that they: were aware of Mistras's meal and rest break policy; were able to take meal periods according to the policy; were never prevented from taking breaks; were able to take breaks throughout a workday as desired; never reported missing a meal period or rest break; and   regularly and personally reviewed their wage statements and found them correct. *Id.*

Defendant further argues that an arbitration agreement distributed to employees in California removes from the lawsuit approximately one half of the California Class and the corresponding members of the FLSA Collective CLASS, irrespective of other defenses related to certification or

liability. *Id.* at ¶ 85. This further demonstrates the reasonableness of the total settlement value and the risks of further litigation. *Id.*

### 3. Class Counsel's skill and quality of work justify the fee request.

As discussed in this brief and supporting documentation, Class Counsel have demonstrated substantial skill, diligence, and high quality of work in achieving the Settlement and its creation of a Settlement of $6,000,000.00. Moreover, Class Counsel are highly-regarded members of the Bar. Cottrell Decl. at ¶¶ 6-12, 86; Saltzman Decl. at ¶ 2.

The case also raises complicated legal and factual issues that require intensive and careful analysis under the law, particularly as related to Plaintiffs' claims regarding compensation for training time and the adoption of and compensation for the time worked during alternative workweek schedules.[12] Cottrell Decl. at ¶ 87. Additionally, assessing the implementation of and compensation for time worked during alternative workweek schedules under California law is complex and requires extension work.[13] *Id.* With respect to this litigation, these questions raise difficult and complicated issues between the Parties that will not be quickly and easily decided because they have serious implications on overtime compensation and Defendant's potential exposure to liability. *Id.*

---

[12] The *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947)/Department of Labor test examines the following factors to determine the nature of the training relationship, including whether: (1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school; (2) the training is for the benefit of the trainee; (3) the trainees do not displace regular employees, but work under their close observation; (4) the employer that provides the training derives no immediate advantage from the activities of the trainee; and on occasion his operations may actually be impeded; (5) the trainees are not necessarily entitled to a job at the conclusion of the training period; and (6) the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training. *Harris v. Vector Marketing Corp.*, 716 F.Supp.2d 835, 842 (N.D. Cal. 2010); *see also Harris v. Vector Marketing Corp.*, 753 F.Supp.2d 996, 1014 (N.D. Cal. 2010). Defendant's training program must meet the above criteria in order to defeat Plaintiffs' claims that the training time is compensable in this case. This is a complex debate, which will require significant focus in this case since Defendant contends it properly compensates for overtime.

[13] The California Industrial Welfare Commission, Wage Order 16-2001 and Labor Code § 511 governs alternative workweek schedules. The law creates an extensive framework of procedures that must be carefully analyzed. *See* Lab. Code § 511; 8 Cal. Code Regs. §§ 11100-11130, 11150 (authorizing alternative workweeks of workdays exceeding eight hours without overtime pay if specified criteria are met, including but not limited to full disclosure and a secret ballot voting process).

**4. The contingency nature of the fee and financial burden carried by Class Counsel justify the fee request.**

The risks associated with the contingent nature of this action further justify the requested fees. Indeed, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). By undertaking a class action on a contingency fee basis, counsel not only must turn away other income-generating opportunities but must take on a substantial risk of "never receiving compensation at all." *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1217-18 (2008). Class Counsel have worked on the present case since before April 2015, and in effect have loaned their services to the Class Members since that time.  Cottrell Decl. at ¶ 88.  Class Counsel have prosecuted this case on a wholly contingent basis, and done so at a risk of never receiving any compensation due to the risky nature of class action litigation in general, and due to the developing law in this Circuit with respect to work "off-the-clock" and missed break claims, especially in the class action context. *Id.*

**5. Class Members' positive reaction to the requested fee award supports its approval.**

The Class Members' reaction to the requested fee should also be considered in determining the reasonableness of a requested fee award. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 (C.D. Cal. June 10, 2005). Thus, the absence of disapproval constitutes strong evidence in support of the reasonableness of the requested fee and cost award.  Here, no Class Member has objected to or opted out of the Settlement despite receiving notice of the amounts sought for attorneys' fees and costs.  Cottrell Decl. at ¶89.

**C. The Lodestar Cross-Check Confirms the Reasonableness of the Fee Award.**

**1. The Ninth Circuit confirms fee awards with a lodestar cross-check.**

The Ninth Circuit has approved two methods of determining attorneys' fees in class action cases where, as here, the amount of the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino*, 290 F.3d at 1047. Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of

discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). In contrast to the common fund method, determining the lodestar amount is "often more time consuming[.]" *Bluetooth*, 654 F.3d at 942. Under the lodestar method, the Court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The Ninth Circuit recommends that district courts apply one method but cross-check the appropriateness of the amount by employing the other, as well. *See Bluetooth*, 654 F.3d at 944.

### 2. A multiplier is justified under applicable law.

"[T]he percentage-based fee will typically be larger than the lodestar-based fee. . . . [T]he ratio of the percentage-based fee to the lodestar-based fee implies a multiplier, and that implied multiplier can be evaluated for reasonableness. If the implied multiplier is reasonable, then the cross-check confirms the reasonableness of the percentage-based fee." *Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 681 (2016) (Court awarded fees in the amount of $6,333,333.33, which represented one-third of the settlement where the calculated lodestar was between $2,968,620 and $3,118,620. The multiplier was 2.03 to 2.11.). "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Taylor v. FedEx Freight, Inc.*, No. 113CV01137 DADBAM, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (quoting *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 298 (N.D. Cal. 1995)); *see also* 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher); *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."). Applying this reasoning, California federal courts have approved multipliers much greater than that at issue in this case in similar proceedings. *See Spann v. J.C. Penney Corp.*, No. SACV120215FMOKESX, 2016 WL 5844606, at *14 (C.D. Cal. Sept. 30, 2016) (applying a 3.07 multiplier to award $13,500,000.00 in attorneys' fees where the lodestar was $4,399,05.50); *Taylor v. FedEx Freight, Inc.*, No. 113CV01137 DADBAM, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (In a California wage and hour class action, the court applied a 2.26 multiplier to award fees in the amount of $1,125,000.00 where the

lodestar was $500,000.00.).[14]

Factors considered in determining whether a lodestar multiplier is appropriate generally include: (1) the risks presented by the contingent nature of the case, *see supra* Section III.B.4; (2) the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly,  *see supra* Section III.B.3; (3) the nature of the opposition, *see supra* Section III.B.2; (4) the preclusion of other employment by the attorney due to the acceptance of the case; and (5) the result obtained and the importance of the lawsuit to the public. *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 582 (2004); *Serrano v. Priest*, 20 Cal.3d 25, 48-49 (1977). All of these factors favor approval of the 1.6 multiplier requested here. Cottrell Decl. at ¶ 90.

### 3. Class Counsel's rates are reasonable.

Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similarly complex federal litigation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("the established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation'"); *Jordan v. Multnomah Cnty.*, 799 F.2d 1262, 1266-67 (9th Cir. 1986) ("'judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil-rights cases . . . .'"). Here, Class Counsel's hourly rates are reasonable in light of their significant experience, expertise, and skill. Cottrell Decl. at ¶¶ 91-95; Saltzman Decl. at ¶ 2. Class Counsel's rates have been approved by several courts over the past several years.  Cottrell Decl. at ¶ 93. Even without accounting for contingent risk, Class Counsel's rates are well within the range of rates charged by similarly experienced and qualified attorneys practicing in this area.  *Id.* at ¶¶ 94-95.

---

[14] Likewise, under California law, it is well-settled that the court should award a multiplier to take in account the contingent risk and difficulty of the representation at issue. As the California Supreme Court has held, contingency fees should be higher than fees for the same legal services paid concurrently with the provision of services. *Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001). Application of the rule is particularly appropriate where the case is brought to redress important rights of vulnerable persons, as is the case here. *Id.* at 1133. In particularly important and risky cases, the failure to award a multiplier has been held to be reversible error. *Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal.App.4th 359, 400 (2005).

19

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

**4. The number of hours claimed is reasonable.**

Plaintiffs' attorneys are entitled to be compensated for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). Here, Class Counsel have already expended more than 2,331.55 hours of attorney and staff time to reach this Settlement and monitor the Settlement process. Cottrell Decl. at ¶ 96. These hours reflect time reasonably spent litigating this case, in which Class Counsel sought to efficiently manage, staff, assign, and divide the work amongst lower and higher-level attorneys. *Id.* It should also be emphasized that Class Counsel's lodestar does not include all of the time they have spent and will spend finalizing these papers and the final approval papers, attending the final approval hearing, supervising settlement administration, and communicating with Class Members about the Settlement. *Id.* at ¶ 100.

**D. Class Counsel's Costs are Reasonable and Compensable from the Settlement.**

Reasonable litigation expenses are ordinarily included in an award of attorneys' fees pursuant to California wage and hour law. Federal law – including 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54 – directs the reimbursement of Class Counsel's costs and expenses. Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are typically recoverable. *Rutti v. Lojack Corp., Inc.*, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012); see also *Rulli, et al. v. Nielsen Co. (U.S.) LLC*, No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) (granting the reasonably incurred costs of Class Counsel in a wage and hour case).

Class Counsel request the Court to grant their request for taxable costs and other litigation-related expenses reasonably incurred in this litigation in the amount of $44,575.02. Cottrell Decl. at ¶ 105. Here, Plaintiffs' reimbursable out-of-pocket expenses include the following: (1) filing fees,

20

BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS
CASE NO. 3:15-cv-02198-EMC

court fees, and service of process; (2) mediation[15]; (3) legal research[16]; (4) depositions and deposition transcripts; (5) overnight and bulk mail; (6) travel and travel expenses[17]; and (7) copies and postage[18]. *Id.* at ¶¶ 104-112.  The total reimbursable costs incurred by Class Counsel in this case amount to $44,575.02.  *Id.* at ¶¶ 104, 106; Saltzman Decl. at Exhibit 4. All of the expenses set forth above were reasonable, were necessary to the prosecution of the case, and are customarily billed to fee-paying clients.  Cottrell Decl. at ¶ 107.

**E. The Enhancement Awards to Plaintiffs are Reasonable.**

Service payments are common in class action cases. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken*, 901 F.Supp. at 300 (named plaintiff received $50,000 for work in class action). These service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. District courts must evaluate service payments individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … the amount of time and effort the plaintiff extended pursuing the litigation … and reasonabl[e] fear[s of] workplace retaliation."  *Staton*, 327 F.3d at 977. The $7,500.00 service payment here should be approved considering all of the relevant factors, and is consistent with awards approved in this District and throughout the State in similar cases.

---

[15] *See, e.g.,  Rulli, et al. v. Nielsen Co. (U.S.) LLC,* No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015); *Murillo v. Pac. Gas & Elec. Co.*, 2010 WL 2889728, at *12 (E.D. Cal. July 21, 2010); *Levinson v. About.com Inc.*, No. 02-cv-2222, 2010 WL 4159490, at *3 (S.D.N.Y. Oct. 7, 2010).

[16] *See Rutti v. Lojack Corp.,* No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012); *Rulli*, No. 3:14-cv-01835-VC.

[17] *See, e.g.*, *Rutti*, 2012 WL 3151077, at *12; *Rulli*, No. 3:14-cv-01835-VC; *Murillo,* 2010 WL 2889728, at *12.

[18] *See Rutti*, 2012 WL 3151077, at *12; *Rulli*, No. 3:14-cv-01835-VC; *B&F System Inc. v. LeBlanc*, No. 7:07-cv-192, 2012 WL 2529191, at *14 (M.D. Ga. June 29, 2012); *Hilton v. Exec. Self Storage Assocs., Inc.*, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009); *Cho v. Koam Med. Servs. P.C.*, 524 F.Supp.2d 202, 212 (E.D.N.Y. 2007); *Bleimehl v. Eastman Kodak Co. Clinical Diagnostic Div.*, 1997 WL 33322218, at *21 (S.D. Iowa Jan. 27, 1997).

*Sandoval v. Tharaldson Employee Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010); *Espinoza v. Domino's Pizza, LLC*, 2012 WL 5462550, at *4 (C.D. Cal. Nov. 7, 2012) (granting $10,000.00 service payment to two plaintiffs).[19]

> **1.Plaintiffs took extraordinary measures and invested substantial time and effort for the benefit of the Class Members.**

Plaintiffs invested over 250 hours of their time helping to litigate this case. Krueger Decl. at ¶ 26; Viceral Decl. at ¶ 13. This includes substantial amounts of time: (1) locating and providing extensive documents to Class Counsel; (2) engaging in lengthy interviews with Class Counsel prior to filing; (3) reviewing the Complaint, the Court's Alternative Dispute Resolution Packet, and the Consolidated First Amended Complaint; (4) reviewing and responding to over written discovery; (5) preparing for and/or attending deposition; (6) making themselves available during settlement negotiations; and (7) remaining in continuous contact and communication with Class Counsel throughout this litigation. Krueger Decl. at ¶¶ 12-26; Viceral Decl. at ¶¶ 5-12. Mr. Viceral is also giving a full personal release in exchange for signing onto the settlement. The extraordinary measures Plaintiffs have taken in their effort to benefit the Class Members weighs in favor of granting the enhancement awards requested.

---

[19] *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *8 (N.D. Cal. Feb. 6, 2012) (awarding service payment of $12,500); *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *10 (N.D. Cal. July 11, 2013) (approving three $25,000 enhancement awards in FLSA settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (approving $20,000 service award); *Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 WL 3186971, at *3 (N.D. Cal. Aug. 9, 2010) (awarding $10,000 incentive award to both named plaintiffs); *Singer v. Becton Dickinson & Co.*, 2009 WL 4809646, at *9 (S.D. Cal. Dec. 9, 2009) (approving $25,000 service award in California wage and hour case); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024 (D. Or. Nov. 13, 2006) (approving $10,000 service awards); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (approving $25,000 enhancement to each of four named plaintiffs in wage and hour case); *Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) (approving $10,000 service payment for each class representative); *Castellanos* v. *The Pepsi Bottling Group*, No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) (approving award of $12,500); *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) (approving award of $12,500); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006) (approving award of $30,000); *Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and $10,000 to the named plaintiffs); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000).

**2. Class Members received a substantial benefit from Plaintiffs' efforts.**

As discussed above and in the papers in support of Plaintiffs' Motion for Final Approval, Class Members received a substantial benefit from Plaintiffs' efforts. The average individual settlement payment for California Class Members is estimated to be $1,987.31, and the highest is estimated to be $6,133.59. Cottrell Decl. at ¶ 116. The average individual settlement payment for FLSA Class Members is estimated to be $284.45, and the highest is estimated to be $789.87. *Id.* The substantial benefit Plaintiffs' efforts have secured for the Class weigh in favor of granting the requested enhancement awards. Importantly, this is a far cry from cases where the requested service award unreasonably constitutes 30 or 40 times the average class award. *In re Online DVD-Rental Antitrust Litig.*, No. 12-15705, 2015 WL 846008, at *8 (9th Cir. Feb. 27, 2015). Rather, the enhancement awards here are only approximately 0.14% of the Settlement. *See Sandoval*, 2010 WL 2486346, at *9-*10 (The Court awarded $7,500.00 service award that represented 1% of the gross settlement where the plaintiff worked only 33.5 hours on the case.).

**3. Plaintiffs took on substantial risk in bringing this class action.**

Plaintiffs took on substantial risk in bringing this class action and exposed themselves to notoriety and personal difficulties by serving as the Named Plaintiffs in this lawsuit. It is well established that plaintiffs in the employment context "face[] the risk that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *15 (S.D.N.Y. Nov. 18, 2013); *DeWitt v. Darlington Cnty., S.C.*, No. 4:11-cv-00740-RSH, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013) (noting that incentive payments are especially warranted "where the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). Indeed, Mr. Viceral believes that his participation in this lawsuit has hurt him in his pursuit of other employment. Plaintiffs also bore the significant financial risk of Mistras's costs in the event she lost at trial. *See* Krueger Decl. at ¶ 29. This financial risk could easily total tens, if not hundreds, of thousands of dollars. Cottrell Decl. at ¶ 117.

1

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this Motion and award Class Counsel fees of $2,000,000.00, costs of $44,575.02, and enhancement awards in the amount of $7,500.00 to Named Plaintiff Viceral and $1,000.00 to Named Plaintiff Krueger.

Date: December 8, 2016                    Respectfully submitted,

                                          */s/ Nicole N. Coon*
                                          NICOLE N. COON
                                          CAROLYN HUNT COTTRELL

                                          SCHNEIDER WALLACE
                                          COTTRELL KONECKY WOTKYNS LLP

                                          Attorneys for Plaintiffs and the Settlement
                                          California Class and FLSA Class

1

### **ATTESTATION PER LOCAL RULE 5-1(i)(3)**

2      The e-filing attorney hereby attests that concurrence in the filing of the document has been

3 obtained from each of the other signatories indicated by a conformed signature (/s/) within this e-filed

4 document.

5

6 Dated:  December 8, 2016                    /s/ *Nicole N. Coon*

7                                                        NICOLE N. COON

8                                                        SCHNEIDER WALLACE
                                                         COTTRELL KONECKY WOTKYNS LLP
9

10

11

### **CERTIFICATE OF SERVICE**

12      I hereby certify that on December 8, 2016, I electronically filed the foregoing document with

13 the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic

14 filing to all CM/ECF participants.

15

16 Dated:  December 8, 2016                    /s/ *Nicole N. Coon*

17                                                        NICOLE N. COON

18                                                        SCHNEIDER WALLACE
19                                                        COTTRELL KONECKY WOTKYNS LLP

20

21

22

23

24

25

26

27

28