UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR VICERAL, et al., | Case No. 15-cv-02198-EMC |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLMENT AND ATTORNEYS' FEES** |
| v. | |
| MISTRAS GROUP, INC., | Docket Nos. 86, 92 |
| Defendant. | |

## I.    INTRODUCTION

Plaintiffs Edgar Viceral and David Krueger brought this class and collective action against Defendant Mistras Group, Inc., alleging violations of the California Labor Code and the Fair Labor Standards Act (FLSA).  Docket No. 38 (First Amended Compl.) (FAC) at ¶ 1.  Plaintiffs seek to represent current and former non-exempt hourly employees who worked as examiners and technicians.  *Id.* at ¶ 13.  Plaintiffs allege that they were not paid for time spent in training or when traveling between designated meeting places and their work assignments, and that this failure to pay wages was violated the overtime requirement of the Fair Labor Standards Act (FLSA) and various California Labor Code provisions.  *Id.* at ¶¶ 32-33, 37.  After the parties reached a settlement, this Court granted preliminary approval of a class action settlement for the California claims, and final approval of a FLSA collective action settlement.  Docket No. 83.  Now pending before the Court are Plaintiffs' motions for attorneys' fees in the amount of $2,000,000, or 1/3 of the total settlement fund, Docket No. 86, and for final approval of the class action settlement, Docket No. 92.  The Court **GRANTS** the motions but reduces counsel's requested fees.

## II.    FACTUAL & PROCEDURAL HISTORY

The factual background of this case is set forth in the Court's prior order granting

**United States District Court**
For the Northern District of California

1  preliminary approval of the parties' settlement.

2     Under the Settlement Agreement, Mistras has agreed to pay a "Gross Settlement Amount"

3  of $6,000,000 to settle the claims at issue.  Docket No. 70-2 (Settlement Agreement) at ¶ 30.  This

4  Gross Settlement Fund includes: (1) settlement awards to California class members who do not

5  exclude themselves from the case, (2) settlement awards to FLSA class members who opt in, (3) a

6  $20,000 PAGA settlement, $5,000 of which will go back to the California class members, (4)

7  Plaintiffs' counsel's fee award (up to 1/3 of the Gross Settlement Amount, or $2,000,000), (5)

8  Plaintiffs' counsel's expense award ($44,575.02), (6) service awards of $8,500 for the named

9  Plaintiffs ($7,500 for Viceral and $1,000 for Krueger), and (7) administration costs ($39,000).

10  Docket No. 97 at 2-3.  This leaves a Net Settlement Amount (including $5,000 from the PAGA

11  settlement) of $3,892,924.98.  *Id.*

12     The Net Settlement Amount is allocated by distributing 65% of the Net Settlement Amount

13  to the California Class and 35% to the FLSA Class.  Settlement Agreement at ¶ 53(b).  The

14  California Class includes "all current and former hourly, non-exempt Technicians, Inspectors and

15  Examiners employed by Defendants in California during the California Class Period."  *Id.* at ¶ 2.

16  The California Class Period is the period beginning April 10, 2011 through the date of final

17  approval.  *Id.* at ¶ 4.  There are approximately 1,336 California Class members.  Docket No. 92 at

18  1; Docket No. 97.  The FLSA Class includes "all current and former hourly, non-exempt

19  Technicians, Inspectors, and Examiners who were employed by Defendants in the United States

20  during the FLSA Class Period."  Settlement Agreement at ¶ 19. The FLSA Class Period is the

21  period beginning April 10, 2012 through the date of final approval.  *Id.* at ¶ 20.  There are

22  approximately 4,723 FLSA Class Members, including the 1,253 California Class members.

23  Saltzman Dec. at ¶ 8.

24     The settlement payments for each class member are calculated based on the number of

25  Individual Work Weeks (the number of weeks of employment for each class member, excluding

26  leaves of absence).  *Id.* at ¶¶ 26, 53(b).  It is expected that a California Class member will receive

27  approximately $24 per week worked (up to $1,248/year), while a FLSA class member will receive

28  approximately $5.06 per week worked (up to $263/year).  *Id.*  The average estimated payment for

**United States District Court**
For the Northern District of California

1  California Class members is $1,921.21, and the highest estimated payment is $6,101.17.

2  After the Court granted preliminary approval of the Rule 23 Class, the settlement

3  administrator mailed 1,324 Notice Packets to California Class members, out of which 9 were

4  returned as undeliverable.  The Settlement Administrator was also contacted by 24 additional

5  individuals who inquired about being part of the class. After review, class counsel determined that

6  12 of these should be included in the class; their Notice Packets were sent on January 26, 2017.

7  The settlement administrator has received 9 valid exclusion forms.  No objections to the proposed

8  settlement have been filed.  Docket No. 97.

9  **III.   DISCUSSION**

10  A.   Final Settlement Approval

11  In determining whether a settlement agreement is fair, adequate, and reasonable to all

12  concerned, a court typically considers the following factors:

13  (1) the strength of the plaintiff's case; (2) the risk, expense,
complexity, and likely duration of further litigation; (3) the risk of

14  maintaining class action status throughout the trial; (4) the amount
offered in settlement; (5) the extent of discovery completed and the

15  stage of the proceedings; (6) the experience and views of counsel;
(7) the presence of a governmental participant; and (8) the reaction

16  of the class members of the proposed settlement.

17  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

18  1.   The Amount Offered in Settlement in Light of the Strength of Plaintiffs' Case and

19  the Risk, Expense, and Complexity of Further Litigation

20  As the analysis of the first four factors is necessarily intertwined, the Court addresses them

21  together.  As discussed in detail in the Court's prior order granting preliminary approval of the

22  settlement, the settlement recovery represents a deep discount on the full verdict value of the

23  claims being released.  Specifically, Mistras has agreed to pay $6,000,000, of which 65%

24  ($3,900,000) is to go to the California Class while 35% ($2,100,000) goes to the FLSA Class.

25  Docket No. 72 at 7.  By comparison, Plaintiffs estimate the California claims to have a verdict

26  value of $33,536,339 and the FLSA overtime claim to have a verdict value of $40,356,450.  *Id.*

27  The California class, in other words, is receiving 11.6% of the full verdict value of the claims

28  being released, while the FLSA class is receiving just 5.2% of the full verdict value.  In total, the

3

United States District Court
For the Northern District of California

Settlement Agreement is worth 8.1% of the full verdict value.  The Court previously concluded, however, that this steep markdown was reasonable in light of the weakness of Plaintiffs' case. The parties explain that Mistras had collected over 500 "individualized and non-cookie-cutter declarations" from employees in support of these defenses.  *Id.* at 14.  These declarations "generally and overwhelmingly stated" that the putative class members recorded all hours worked, were paid their standard and/or overtime rates, never worked unrecorded hours, were never instructed to work off the clock, recorded all mandatory online training, were paid for all such training, and were paid overtime for all overtime recorded.  *Id.* at 14-15.  At hearing, the parties clarified that the declarations specifically refuted key elements of Plaintiffs claims.  Furthermore, counsel for Plaintiffs stated at the hearing that their own investigation, after receiving the class list, bore out many of Mistras's claims and, at best, confirmed substantial variability in the experiences of the employees.  This concession makes it evident that Plaintiffs faced serious risks in litigating the merits of their claims; it also suggests they may have faced evidentiary problems in maintaining class certification.  *See Churchill Vill.*, 361 F.3d at 575 (noting that "the risk of maintaining class action status throughout the trial" is one of the factors to be considered in evaluating the reasonableness of a settlement).

For the same reason, the Court approved the allocation of $20,000 to settle the PAGA claim, or 0.15% of its total value of $12,952,000.  While the Court noted "substantial concern" about the dramatic reduction, it concluded that the amount was reasonable "under the unusual and peculiar circumstances of this case where Plaintiffs face a substantial risk of recovering nothing on either the PAGA or class claims."  Docket No. 72 at 15.  This reasoning still applies.  The first four *Churchill Village* factors thus weigh in favor of settlement approval.

2.      The Extent of Discovery Completed and the Stage of the Proceedings

While this settlement was reached quite early in the proceedings – indeed, before any substantive motions were filed – the parties explain that the proposed settlement was the result of "full and complete arm's length negotiations" following "extensive discovery (both formal and informal)."  Docket No. 92 at 9.  Accordingly, the parties assert that at the time of settlement, both parties were "fully informed in regard to all aspects of the case."  *Id.* at 10.  This factor therefore

**United States District Court**
For the Northern District of California

favors final approval.

        3.      The Experience and Views of Counsel

Both Class Counsel and counsel for the Defendant have substantial experience with complex employment litigation, and counsel for both parties asserts that the settlement is a fair and reasonable resolution to the parties' dispute. This factor therefore favors final approval.

        4.      Class Member Reaction

The final factor examines class members' response to the proposed settlement. As noted above, only 9 class members out of a class of over 1,300 individuals have opted out, and there have been no objections. This factor therefore favors approval and, in sum, the Court finds that under the *Churchill Village* rubric, the settlement is fair and adequate. Accordingly, the Court **GRANTS** Plaintiffs' motion for final approval of the class action settlement.

B.    Motion for Attorneys' Fees

Plaintiffs' counsel requests a fee award of $2,000,000, or 33% of the Gross Settlement Fund, in addition to $44,575.02 in expenses. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The Ninth Circuit has explained that, when calculating attorneys' fees as a percentage of a common settlement fund, 25% of the fund is the presumptively reasonable "benchmark." *See id.* Because counsel seeks a departure from the benchmark, the Court must "provid[e] adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* "Factors courts consider in determining the reasonableness of a percentage-of-recovery award include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at *3 (N.D. Cal. Mar. 31, 2015).

Class counsel argues that there are sufficient "special circumstances" present in this case to justify a significant upward departure from the presumptively reasonable 25% benchmark. First, counsel points to "excellent monetary results" secured by the settlement. Docket No. 86-1 at 11-

12. But as noted above, the actual amount recovered represents a substantial discount on the actual value of the claims. Second, Class counsel discusses at some length the high level of risk associated with the litigation. *Id.* at 13-16. Counsel essentially restates the reasons for the Court's approval of a discounted settlement: namely the considerable strength of Mistras's defense and the weight of the evidence contradicting Plaintiffs' claims. But as the Court recognized in its prior Order, the weak strength of Plaintiffs' case should not constitute a "special circumstance" justifying enhancement of the fee award. To the contrary, "this rationale would have the perverse effect of rewarding counsel for taking on weak or otherwise dubious cases. Under this reasoning, the worse the case, the higher the risk, and thus, the higher the acceptable fee multiplier." Docket No. 72 at 16. As stated in the order granting preliminary approval, the Court will "not countenance such a 'no lose' proposition." *Id.* Finally, counsel states in general terms that their skill and quality of work, along with the contingent nature of the fee and the positive reaction of the class members to the settlement, justify the upward departure, but these factors are present in nearly every class action settlement, and do not warrant special treatment here.

A lodestar cross-check further supports a reduction in the reduced fee. Class Counsel's asserted lodestar is $1,329,869.00, based on a total of 2,240.65 billed hours. Docket No. 86-1 at 3-9. Counsel's requested fee, therefore, represents slightly more than a 50% multiplier over and above their lodestar rate. As noted above, the recovery in this case was far from remarkable, and it is therefore not clear why such a significant multiplier would be justified. Even more problematically, however, the lodestar itself is based on what appear to be an excessive number of hours. As noted, the parties in this case had not yet filed <u>any</u> substantive motions when they reached the settlement. Despite that fact, Class Counsel has expended nearly 2,500 billed hours. The Court finds that this is an unreasonably high figure. For example, Class Counsel spent 408.55 hours on "administrative communications" between class counsel and their staff "to facilitate the progression of the litigation." There is no explanation for why so many hours—significantly more than were spent on drafting pleadings or engaging in settlement discussions, and only slightly less than were spent on discovery—were required for such communications. When asked at hearing, Counsel stated only that the case required a significant amount of class outreach. But in their fee

United States District Court
For the Northern District of California

1    motion, Counsel states that it spent 255.60 hours on class outreach separate and apart from the

2    408.55 hours spent on administrative communications.  Further, in the interval between the filing

3    of their fee motion, on December 8, 2016, and the filing on February 1, 2017, of their updated

4    declaration in advance of hearing, Counsel billed an additional 237 hours on the case.  *Compare*

5    Docket No. 86 *with* Docket No. 100.  The only significant filing during that period was the motion

6    for final approval, along with declarations in support thereof.  Counsel does not explain how it

7    billed so many hours during that period.

8           For these reasons, the Court concludes that even a fee in line with the benchmark of 25

9    percent would be excessive.  Such a fee, at $1,500,000, would still represent nearly a 13 percent

10   enhancement over the already-high lodestar.  The Court therefore, in its discretion, concludes that

11   the lodestar method, rather than the common fund method, is the correct approach for determining

12   fees in this case.  *See Bluetooth*, 654 F.3d at 942.  The Ninth Circuit has explained that a district

13   court may, in awarding fees based on a lodestar calculation, "impose a small reduction, no greater

14   than 10 percent – a 'haircut' – a based on its exercise of discretion and without a more specific

15   explanation."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  The Court

16   finds that such a 10 percent "haircut" is warranted here to account for the high number of hours

17   billed.  Accordingly, the Court will reduce Counsel's requested lodestar of $1,329,869.00 by

18   $132,986.90, resulting in a fee award of $1,196,882.10.  These reductions are further warranted

19   because of the relatively small recovery for the class in this case.  Here, Counsel will still be fairly

20   compensated for the hours reasonably spent on this case, while the class will receive over

21   $800,000 more than it would have given Counsel's requested fee.

22   C.     <u>Counsel's Costs</u>

23          Counsel requests an additional $44,575.02 for taxable costs and other litigation related

24   expenses.  Counsel's expenses include filing fees, mediation, legal research, depositions, postage,

25   and travel expenses.  Docket No. 87 ¶¶ 104-112.  The Court finds that these expenses are

26   reasonable, and thus grants counsel's request for costs.

27   D.     <u>Service Payments</u>

28          Lastly, Plaintiffs request incentive awards of $7,500 for named Plaintiff Edgar Viceral, and

$1,000 for Named Plaintiff David Krueger.  The reason for the difference in the awards is that Viceral, unlike Krueger, has given a full personal release of all claims against Mistras.  "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."  *Harris v. Vector Mktg. Corp.*, Case No. C-08-5198-EMC, 2012 U.S. Dist. LEXIS 13797, at *18 (N.D. Cal. Feb. 6, 2012) (citation omitted).  As this Court has recognized, "[s]everal courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount."  *Id.* at *20.

While $5,000 is the presumptively reasonable amount for an incentive award, the Court finds that $7,500 is reasonable for Viceral in this case.  Counsel asserts that the two plaintiffs have spent of 250 hours helping prepare for the case, which is an unusually high degree of participation.  In addition, because this is an employment case, the named plaintiffs exposed themselves to the potential risk of future discrimination.  Viceral has stated that he believes his participation in this suit has already hurt him in the pursuit of further employment.  Docket No. 86-1 at 23.  The Court therefore approves the requested incentive payments.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions for final approval and for attorneys' fees, and awards fees in the amount of $1,196,882.10 and costs in the amount of $44,575.02.

This order disposes of Docket Nos. 86 and 92.

**IT IS SO ORDERED**.

Dated: February 17, 2017

_____
EDWARD M. CHEN
United States District Judge